

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

Case No.: 0:13-cv-60066-CIV-COHN-SELTZER

ABRAHAM INETIANBOR,

      **Plaintiff,**

vs.

CASH CALL, INC.,

      **Defendant.**

_____/

## PLAINTIFF MOTION OPPOSING DEFENDANT'S MOTION TO COMPEL ARBITRATIONAND DISMISS OR STAY CASE, AND SUPPORTING MEMORANDUM OF LAW

Plaintiff Abraham Inetianbor, *pro se* hereby submits his Opposition to defendants Cash Call, Inc.'s (Cash Call) Motion to Compel Arbitration and Dismiss or Stay Case, and Supporting Memorandum of Law. This Opposition is based on numerous grounds recognized in case law indicating defendants' Motion should be DENIED:

**1**. Chapter 559 of the Florida Statutes shows that the marketing, making and collection of consumer loans by Cash Call make Cash Call subject to the provisions of the Florida Consumer Credit and Protection Act. Notice Dismissal of this case as filed by the defendant previously in state court was denied before defendant moved this case to federal court.

**2**. Cash Call and Western Sky Financial ("Western Sky") are completely separate entities. The parties' agreement together specifically states that "*'the Bank'* (Western Sky Financial) and Cash Call agree they are independent contractors to each other in performing their respective obligations [under the agreement.]" So the defendant's motion to compel arbitration (*to a tribal court*) and dismiss, is simply another scheme to avoid facing justice.

1

**3.** In contrast to the defendant's claim, Cash Call *can and does* appear in U.S. Courts as a *defendant* [1] in case actions similar to (and) or mostly like this case that is before this court; regardless of the so called "agreement" or contract, which included "arbitration" agreement. *See*, Maryland commissioner of Financial Regulations vs. *Cash Call, Inc*. (on November 8, 2012 a Final Order was issued and required Cash Call to cease and desist from engaging in credit business services with Maryland consumers, and ordered to pay Civil penalties (**which included deceptive lending practices**) in the amount of $5,651,000.00.)

---

[1] *State of West Virginia ex rel. McGraw v. Cash Call, Inc.,* Case No. 08-C-1964 (Sept. 10, 2012) the Judge agreed that "the lending program established by Cash Call is a sham intended to make improper use of federal preemption in order to *unlawfully* evade West Virginia's lender licensing and usury laws. And the Court found that Cash Call made loans significantly exceeding the state interest rate cap of 18%, and awarded 4X the assessed interest ($10M)" plus other relief to 292 West Virginia Consumers affected by the **unlawful practices of Cash Call**.

**Also see**: Another final judgment against the defendant **in California:** *THE PEOPLE OF THE STATE OF CALIFORNIA vs. CASHCALL, INC., A CALIFORNIA CORPORATION (BC 420 115 AUG 24, 2009)*

**4.** The defendant's request for "*third party*" arbitration is a *false attempt* to make plaintiff appear at a **Cheyenne River Sioux Tribal Court**, which has no jurisdiction on this action and completely biased by the defendant. Plaintiff is a citizen of the United Sates; plaintiff does not reside on the Cheyenne reservation and did not obtain the loan on the Cheyenne reservation ground. The defendant's motion is simply an attempt to obtain a tribal court order (*in defendant's favor*) through "*Western Sky arbitration*" and illegally garnish plaintiff's wages [2]. *Notice* this is not a payday loan, rather a consumer loan that required a consumer credit assessment. *Also Notice* that the loan has been legally **paid in full and in excess** by plaintiff.

---

[2] On 3/7/12, the **Federal Trade Commission** released that it expanded its case against *Western Sky Financial, LLC* charging that *"it sought to unfairly and deceptively manipulate the legal system and force debt-burdened consumers throughout the country to travel to South Dakota and appear before a tribal court that did not have jurisdiction over their cases."*

**5**. Western Sky Financial violated Federal Trade Commissions' Credit Practices Rule where the company and its owner Martin A. Webb pitch unsecured consumer loans to Florida consumers and consumers all over the country by mail, radio, television and the Internet; and also violated the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693, et seq. by requiring authorization for electronic payments from consumers bank account as a *condition of obtaining loans*.

**6**. A binding loan agreement is one that can be *legally enforced*, thus "binding" each party to adhere to the agreement. The defendant and Western Sky cannot legally enforce the said "agreement" in this court because; using the "agreement" as a reference:

**(i)** Defendant is asking plaintiff for *139.31% interest rate* to consider the loan as paid in full, which violates the Florida usury laws; a*ttached as:* **Exhibit A, page 1.**

**(ii)** Defendant is requesting "arbitration" at a *Cheyenne River Sioux Tribal Court in South Dakota*, which has no jurisdiction over this action or over the plaintiff. *Also* **Exhibit A, page 3 & 4**

**(iii)** Western Sky (*being sued by the FTC for illegal lending practices in the U.S, but not a defendant in this action*) locate themselves on Native American reservations in an attempt to "evade state and federal consumer protection laws" and Cash Call uses them to "skirt the law" but simultaneously claim to be legally doing business in Florida and the United States.

**7**. Unlike Western Sky, (*abusing both the United States and Cheyenne Tribal laws*) defendant and loan note holder (Cash Call) is a California based company *registered to do business in the state of Florida and in the United States thereby agreeing to the laws and statutes.* Due to the facts, violations listed in this motion by plaintiff and The United States Supreme Court recognition (*id at 20 below*), the deceptive electronic agreement ("agreement"), which included acceptance to "arbitration" at a Cheyenne River Sioux Tribal Court, is null and void [3].

---

[3] You don't disregard Florida State and the United States Laws by operating consumer lending in the United States to United States citizens without permission or a license and expect the bogus "agreement" to be binding on the same. *Also notice* the said "Arbitration" is mostly used for consumers who defaulted on their loans. *Plaintiff legally made all payments as agreed on time and never defaulted. Plaintiff paid in full and in excess*.

**8**. The so called agreement or contract is a sham because Western Sky Financial, which defendant claims to be *the "loan agreement" provider* has no credibility. And in an effort to enforce the so called "agreement", Western Sky (and Cash Call, defendant in this action) has *repeatedly* and ***willfully*** violated a list of U.S laws [4] and this is the same phony contract/agreement the defendant is claiming was signed by the plaintiff and the basis for the defendant's motion.

---

[4] **Under federal law**, the government can directly require employers to garnish wages for debts it is owed without a court order. But *private creditors must obtain a court order* before garnishing a debtor's wages. This is why the FTC complaint against Western Sky Financial (***the "agreement" provider as claimed by the defendant***) charges western sky with violating the FTC Act in enforcing the so called "agreement" by:

***"(i) misrepresenting to employers that Western Sky is legally authorized to garnish an employee's wages, without first obtaining a court order;***
 *(ii) falsely representing to employers that Western Sky have notified consumers about the pending garnishment and have given them an opportunity to dispute the debt; and*
*(iii) unfairly disclosing the existence and the amounts of consumers' supposed debts to employers and co-workers without the consumers' knowledge or consent."*

**9**. According to the Federal Trade Commission (FTC), "Mandatory Arbitration" is a term used by ***Predatory lenders like Cash Call***, who adds languages as such to a loan contract making it almost impossible for a borrower to take future legal action for fraud or misrepresentation. This is why the Consumer Credit and Protection Act provide protection and a safety net for abused borrowers from predatory lenders like Cash Call.

**10**. The argument that Western Sky is the "tribal lender" has no merit because Western Sky is not listed as a defendant in this action and plaintiff did not go into the reservation to apply for a consumer loan. For example, in the case of businesses such as ***Native American-owned casinos, which are located mostly on tribal land, consumers are aware of the company's tribal ownership and the business activity is geographically contained***.

4

**11**. However, in the context of Internet lending, this argument has less force than it has in the past. This loan was obtained online and Internet tribal lenders, by contrast, offer their products online to consumers anywhere in the United States, many of whom are completely unaware of the company's tribal ownership. To make matters worse, tribal lenders like Western Sky organize under *"rent-a-tribe"* schemes, where existing ***nontribal lenders like Cash Call*** "affiliates" with tribes to defraud and evade US laws including Florida state usury laws.

**12**. The "scheme" entailed Cash Call's entry into a Marketing Agreement (the "Agreement") with Western Sky Financial. The Agreement provided that ***"Cash Call would market loans to consumers as an agent. Western Sky would then approve and directly fund the loans. Three business days later, Cash Call would, pursuant to the Agreement, purchase the loan from Western Sky and become the owner of the loan and (or) note. "***

**13.** Cash Call has used the same excuse of ***"Arbitration", "Not the Lender" and "can't be sued"*** to scare away abused consumers that intend to litigate against Cash Call for so many years now. Notice that consumers are becoming more aware of the scheme and Judges across the United States have recently been provided with evidence that shows Cash Calls agreement with Western Sky ("the bank") and ***agreed that Cash Call is in fact with no question the lender*** [5].

---

[5] **Exhibit B** *also attached*, is a direct copy from the defendant's (cash call) website claiming to be the lender: **("Please note that your loan will be underwritten and funded by Cash Call, Inc.")**

See *State of West Virginia ex rel. McGraw v. Cash Call, Inc.*, Case No. 08-C-1964 (Sept. 10, 2012) the Judge agreed that "the lending program established by Cash Call is a sham intended to make improper use of federal preemption in order to *unlawfully* evade West Virginia's lender licensing and usury laws. (A final judgment against Cash Call (on *phase I*) was entered for **$15,000,000.00** and defendant asked to report the consumer accounts as paid in full.)

**14**. Cash Call's overall involvement with these loans rendered it the *de facto lender* of the loans because **Cash Call performed duties on these loans that can ONLY be performed by an actual lender** (*including handling, servicing and collection*) who also evaluates and bears the **total risk** and burden of the loan from the inception (*including receiving the first payment*). This is why the terms remain the same to favor Cash Call (*three business days later "agreement")* after purchasing the loan from Western Sky (the bank). The "three business day" rule is evidenced in the dates provided in the defendant's motion to compel arbitration.

**15**. Cash Call is a non-bank entity and does not have certain license/benefit provided by the FDIA [6], as certain national banks that are located in states like South Dakota does. For example, in *Colorado ex rel. Salazar v. Ace Cash Express, Inc.*, 188 F. Supp. 2d 1282 (D. Colo. 2002), the plaintiff alleged that the defendant was an unlicensed supervised lender **charging excessive and improper fees in violation of state law**. The defendant removed the action on the grounds that it operated as *an agent* for a national bank and therefore the claims were completely preempted by the National Bank Act ("NBA"), 12 U.S.C. § 85.7 *Id. The district court found that removal was improper because the "defendant was a separate entity from the bank and the plaintiff alleged no claims against the bank."*

---

[6] The National Bank Act ("NBA") uses language almost identical to § 27 of the FDIA to allow national banks to charge interest rates permitted in their home state on loans made in other states. Cash Call is a non-bank entity and *Western Sky is also a non-bank entity despite the illegal operation with cash call (Notice).*

**16**. The FTC Act "was enacted to protect unsophisticated consumers (the public), not only *'reasonable consumers'* who could otherwise protect themselves in the marketplace." The public includes the ignorant, the unthinking, and the credulous. *Jeter, 760 F.2d at 1172.* And the fact that a false and deceptive statement in an "agreement" maybe obviously false to those who are trained and experienced does not change its character nor take away its power to deceive the less experienced.

6

**17**. The defendants argued that cash call acted as "servicers" for the loan made by Western Sky of Cheyenne River Sioux Tribe thereby giving the Tribe arbitration jurisdiction over this action. ***Also see***, in *In re Community Bank of Northern Virginia et al.*, 418 F.3d 277 (3d Cir. 2005), the plaintiffs brought a class action against a non-bank entity for originating "bogus" loans and charging illegal fees. *Id.* at 285. ***The defendant was involved in an alleged conspiracy with a state- chartered bank and a nationally-chartered bank to avoid state usury laws. Id. at 284.*** The banks, however, were not named in the original complaint. *The Third Circuit held that the complaint only asserted claims against the non-bank defendant and because the non-bank defendant was a completely separate entity from the two banks, the state law usury claims could not be preempted by the NBA or FDIA. Id. at 297.*

**18**. The defendant's motion claims cash call and western sky share the same "agreement" that was accepted by the plaintiff.  Notice that Cash Call is a California based company (non-tribal) registered to do business in the state of Florida and this action is solely against Cash Call. The totality of the Complaint and the amended complaint in this action shows that the plaintiff suit is directed against a single, specific entity violating a host of state laws including the Florida state usury law—that entity is Cash Call, not Western Sky Financial. **Besides, Western Sky does not accept any loan payments from consumers because they are not the lender. If asked why, Western Sky will tell you to make ALL payments (*first through last*) to, the "owners of the loan in California (cash call)."**

**19**. Cash Call has a duty by law to be fair, ethical and truthful in lending. Not deceptive, manipulating and violating by creating deceitful "agreements". However, there is no duty resting upon a citizen to suspect the honesty of those with whom he transacts business. This standard is consistent with the norms that courts have traditionally applied in consumer protection law. "***Laws are made to protect the trusting as well as the suspicious.*" *See* United States vs. National Financial Services, Inc., 98 F.3d 131, 136 (4th Cir., 1996); *See* *also Federal Trade Commission vs. Standard Education Society, 302 U.S. 112, 116 (1937).*

**20**. Finally, because unconscionability is a reason for refusing to enforce contracts ("agreement") generally, *it is also a valid reason for refusing to enforce an arbitration agreement under Code of Civil Procedure section 1281.* The United States Supreme Court recognized that, "*generally applicable contract defenses, such as fraud, duress, or unconscionability* may be applied to *invalidate arbitration agreements*. . . .*"* Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 1656, (emphasis added).

With this motion opposing the defendant's motion filed on Jan. 24, 2013; plaintiff, Abraham Inetianbor, hereby respectfully request that the court DENY the defendant's "*Motion to Compel Arbitration and Dismiss or Stay Case, and Supporting Memorandum of Law.*" **Notice** Defendant has previously filed a Motion to *dismiss* this case in state court and the motion to dismiss was DENIED by the court. Plaintiff is hopeful for the same justifiable result in this court.

**RESPECTFULLY Submitted,**

Date: **JANUARY 28, 2013**

By: _____

**Abraham Inetianbor**
**4271 NW 5th Street, # 247**
**Plantation, FL 33317**
**(954) 616 8291**

*[ Plaintiff ]*

8

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the forgoing was filed via the clerk office and served as indicated below on January 28, 2013 on all counsel or parties of record on the following Service List.

_____

Abraham Inetianbor

**SERVICE LIST**

**Abraham Inetianbor** *(pro se plaintiff)*
**4271 NW 5th Street, # 247**
**Plantation, FL 33317**
**(954) 616 8291**

**Akerman Senterfitt** *(attorney for defendant)*
**(by certified mail)**
**1 S.E. Third Avenue, Suite 2500**
**Miami, FL 33131**
**(305) 374 5600**

9

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

Case No.: 0:13-cv-60066-CIV-COHN-SELTZER

ABRAHAM INETIANBOR,

       **Plaintiff,**

vs.

CASH CALL, INC.,

       **Defendant.**

_____/

# [PROPOSED] ORDER

It is hereby, ORDERED, that defendant's Motion to Compel Arbitration, is DENIED.

ORDERED AND ADJUDGED as follows:
That, Defendant's "Motion to Compel Arbitration and Dismiss or Stay Case, and Supporting Memorandum of Law" is hereby DENIED.

DONE AND ORDERED in Fort Lauderdale, Florida this _____ day of _____, 2013.

 

                                   _____
                                   JAMES I. COHN
                            UNITED STATES DISTRICT JUDGE

Copies to:
Counsel for Record

Akerman Senterfitt, *attorney for defendant*
1 S.E. Third Avenue, Suite 2500
Miami, FL 33131

# EXHIBIT A

Case No.: 0:13-cv-60066-CIV-COHN-SELTZER

JAN 2 5 2012

#32282

# WESTERN SKY CONSUMER LOAN AGREEMENT

| Loan No.: | 5179133 | Date of Note: | January 05, 2011 |
|---|---|---|---|
| | | Expected Funding Date: | January 05, 2011 |
| Lender: | Western Sky Financial, LLC | Borrower: | ABRAHAM INETIANBOR |
| Address: | P.O. Box 370<br>Timber Lake, SD 57656 | Address: | 4271 NW 5TH ST<br>PLANTATION, FL 33317 |

**This Loan Agreement is subject solely to the exclusive laws and jurisdiction of the Cheyenne River Sioux Tribe, Cheyenne River Indian Reservation.** By executing this Loan Agreement, you, the borrower, hereby acknowledge and consent to be bound to the terms of this Loan Agreement, consent to the sole subject matter and personal jurisdiction of the Cheyenne River Sioux Tribal Court, and further agree that no other state or federal law or regulation shall apply to this Loan Agreement, its enforcement or interpretation.

In this Loan Agreement, the words "you" and "your" mean the person signing as a borrower. "We," "us," "our," and "Lender" mean Western Sky Financial, LLC, a lender authorized by the laws of the Cheyenne River Sioux Tribal Nation and the Indian Commerce Clause of the Constitution of the United States of America, and any subsequent holder of this Note ("Western Sky").

TRUTH IN LENDING DISCLOSURES: The disclosures below are provided to you so that you may compare the cost of this loan to other loan products you might obtain in the United States. Our inclusion of these disclosures does not mean that we consent to application of state or federal law to us, to the loan, or this Loan Agreement.

## TRUTH IN LENDING ACT DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE<br><br>*The cost of your credit as a yearly rate* | FINANCE CHARGE<br><br>*The dollar amount the credit will cost you* | AMOUNT FINANCED<br><br>*The amount of credit provided to you* | TOTAL OF PAYMENTS<br><br>*The amount you will have paid after all payments are made as scheduled* |
|---|---|---|---|
| 139.31 % | $8,499.82 | $2,525.00 | $11,024.82 |

| PAYMENT SCHEDULE |
|---|
| One payment of $263.25 on February 01, 2011. |
| 35 monthly payments of $298.94 beginning on March 01, 2011. |
| One payment of $298.67 on February 01, 2014. |

JAN 2 5 2012
#32282

**Late Charge:**   If a payment is more than 15 days late, you will be charged $29.00.

**Prepayment:**   If you pay off this loan early, you will not have to pay any penalty.

Please see the remainder of this document for additional information about nonpayment, default and any required repayment in full before the scheduled date.

| ITEMIZATION OF AMOUNT FINANCED | |
| --- | --- |
| Amount Financed: | $2,525.00 |
| Amount Paid to Borrower Directly: | $2,525.00 |
| Prepaid Finance Charge/Origination Fee: | $75.00 |

You promise to pay to the order of Western Sky or any subsequent holder of this Note the sum of **$2,600.00**, together with interest calculated at **135.00 %** per annum and any outstanding charges or late fees, until the full amount of this Note is paid. You promise to repay this loan by making, at a minimum, the payments described on the payment schedule listed above.

Payments are to be applied first to any outstanding charges or late fees, then to earned interest and finally to principal. The payment schedule described above may change in the event you do not make all payments as scheduled or in the event you accrue any fees.

Interest is calculated on a 360/360 simple interest basis. This means that interest is calculated by dividing the annual Interest Rate by 360, multiplying that number by the outstanding principal balance, and multiplying that number by the number of days the principal balance is outstanding.

You may prepay all or any part of the principal without penalty.

If you fail to make any payment due hereunder, the holder of this Note shall have the right, after a 30-day grace period, to declare this note to be immediately due and payable. If you file for an assignment for the benefit of creditors, or for bankruptcy, the holder of this Note shall have the right to declare this Note to be immediately due and payable.

Except as may be provided in the "Arbitration" section of this Note, if we are required to employ an attorney at law to collect any amounts due hereunder, you will be required to pay the reasonable fees of such attorney to protect our interest or to take any other action required to collect the amounts due hereunder.

The Prepaid Finance Charge disclosed above is fully earned upon loan origination and is not subject to rebate upon prepayment or acceleration of this Note.

**LATE FEES.** You will be subject to a late fee of $29 if you fail to make your payment within 15 days of the due date. We can collect any late fees immediately via Electronic Funds Transfer (EFT) from your bank account.

**INSUFFICIENT FUNDS.** You will be subject to a fee of $29 if any payment you make is returned by your bank for insufficient funds.

**E-SIGN/ELECTRONIC COMMUNICATIONS.** Although federal law does not apply to this Agreement, this Note is in original format an electronic document fully compliant with the

JAN 25 2012
# 32282

Electronic Signatures in Global and National Commerce Act (E-SIGN) and other applicable laws and regulations, and the one, true original Note is retained electronically by us. All other versions hereof, whether electronic or in tangible format, constitute facsimiles or reproductions only. You understand that you have previously consented to receive all communications from us, including but not limited to all required disclosures, electronically.

**CREDIT REPORTS.** You agree that we may obtain credit reports on you on an ongoing basis as long as this loan remains in effect. You also authorize us to report information concerning this account to credit bureaus and anyone else we believe in good faith has a legitimate need for such information. Late payments, missed payments, or other defaults on this account may be reflected in your credit report.

**CALL MONITORING/RECORDING.** You understand that, from time to time, we may monitor or record telephone calls between us for quality assurance purposes. You expressly consent to have your calls monitored or recorded.

**TELEPHONE CALLS.** You hereby agree that in the event we need to contact you to discuss your account or the repayment of your loan, we may telephone you at any number, including any cell phone number provided, and that we may leave an autodialed or prerecorded message or use other technology to make that contact or to communicate to you the status of your account.

**VERIFICATION.** You authorize us to verify all of the information you have provided in obtaining approval of this Loan.

**GOVERNING LAW.** This Agreement is governed by the Indian Commerce Clause of the Constitution of the United States of America and the laws of the Cheyenne River Sioux Tribe. We do not have a presence in South Dakota or any other states of the United States. Neither this Agreement nor Lender is subject to the laws of any state of the United States of America.

**ASSIGNMENT.** We may assign or transfer this Loan Agreement or any of our rights under it at any time to any party.

## WAIVER OF JURY TRIAL AND ARBITRATION.

**PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.** Unless you exercise your right to opt-out of arbitration in the manner described below, any dispute you have with Western Sky or anyone else under this loan agreement will be resolved by binding arbitration. Arbitration replaces the right to go to court, including the right to have a jury, to engage in discovery (except as may be provided in the arbitration rules), and to participate in a class action or similar proceeding. In Arbitration, a dispute is resolved by an arbitrator instead of a judge or jury. Arbitration procedures are simpler and more limited than court procedures. Any Arbitration will be limited to the dispute between yourself and the holder of the Note and will not be part of a class-wide or consolidated Arbitration proceeding.

**Agreement to Arbitrate.** You agree that any Dispute, except as provided below, will be resolved by Arbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement.

**Arbitration Defined.** Arbitration is a means of having an independent third party resolve a Dispute. A "Dispute" is any controversy or claim between you and Western Sky or the holder of the Note. The term Dispute is to be given its broadest possible meaning and includes, without limitation, all claims or demands (whether past, present, or future, including events that occurred prior to the opening of this Account), based on any legal or equitable theory (tort, contract, or otherwise), and regardless of the type of relief sought (i.e. money, injunctive relief, or declaratory relief). A Dispute includes, by way of example and without limitation, any claim based upon

JAN 25 2012
# 32282

marketing or solicitations to obtain the loan and the handling or servicing of my account whether such Dispute is based on a tribal, federal or state constitution, statute, ordinance, regulation, or common law, and including any issue concerning the validity, enforceability, or scope of this loan or the Arbitration agreement. For purposes of this Arbitration agreement, the term "the holder" shall include Western Sky or the then-current note holder's employees, officers, directors, attorneys, affiliated companies, predecessors, and assigns, as well as any marketing, servicing, and collection representatives and agents.

**Choice of Arbitrator.** Any party to a dispute, including related third parties, may send the other party written notice by certified mail return receipt requested at the address appearing at the top of this Loan Agreement of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed. Arbitration shall be conducted in the Cheyenne River Sioux Tribal Nation by your choice of either (i) a Tribal Elder, or (ii) a panel of three (3) members of the Tribal Council, and shall be conducted in accordance with the Cheyenne River Sioux Tribal Nation's consumer dispute rules and the terms of this Agreement. You may appear at Arbitration via telephone or video conference, and you will not be required to travel to the Cheyenne River Sioux Tribal Nation. The party receiving notice of Arbitration will respond in writing by certified mail return receipt requested within twenty (20) days. You understand that if you demand Arbitration, you must inform us of your demand of the Arbitrator you have selected. You also understand that if you fail to notify us, then we have the right to select the Arbitrator.

**Cost of Arbitration.** We will pay the filing fee and any costs or fees charged by the arbitrator regardless of which party initiates the Arbitration. Except where otherwise provided by the law of the Cheyenne River Sioux Tribal Nation, each party will be responsible for its own attorneys' fees and other expenses. Unless prohibited by law, the arbitrator may award fees, costs, and reasonable attorneys' fees to the party who substantially prevails in the Arbitration.

**Waiver of Rights.** YOU HEREBY AGREE THAT YOU ARE WAIVING YOUR RIGHT TO A JURY TRIAL, TO HAVE A COURT DECIDE YOUR DISPUTE, TO PARTICIPATE IN A CLASS ACTION LAWSUIT, AND TO CERTAIN DISCOVERY AND OTHER PROCEDURES THAT ARE AVAILABLE IN A LAWSUIT. The arbitrator has the ability to award all remedies available by statute, at law, or in equity to the prevailing party, except that the parties agree that the arbitrator has no authority to conduct class-wide proceedings and will be restricted to resolving the individual disputes between the parties. The validity, effect, and enforceability of this waiver of class action lawsuit and class-wide Arbitration is to be determined solely by a court of competent jurisdiction located within the Cheyenne Rivers Sioux Tribal Nation, and not by the arbitrator. If the court refuses to enforce the class-wide Arbitration waiver, or if the arbitrator fails or refuses to enforce the waiver of class-wide Arbitration, the parties agree that the Dispute will proceed in tribal court and will be decided by a tribal court judge, sitting without a jury, under applicable court rules and procedures.

**Applicable Law and Judicial Review.** THIS ARBITRATION PROVISION IS MADE PURSUANT TO A TRANSACTION INVOLVING THE INDIAN COMMERCE CLAUSE OF THE CONSTITUTION OF THE UNITED STATES OF AMERICA, AND SHALL BE GOVERNED BY THE LAW OF THE CHEYENNE RIVER SIOUX TRIBE. The arbitrator will apply the laws of the Cheyenne River Sioux Tribal Nation and the terms of this Agreement. The arbitrator must apply the terms of this Arbitration agreement, including without limitation the waiver of class-wide Arbitration. The arbitrator will make written findings and the arbitrator's award may be filed with any court having jurisdiction. The Arbitration award will be supported by substantial evidence and must be consistent with this Agreement and applicable law or may be set aside by a court upon judicial review.

**Other Provisions.** This Arbitration provision will survive: (i) termination or changes in this Agreement, the Account, or the relationship between us concerning the Account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of my Note, or any amounts owed on my account, to any other person or entity. This Arbitration provision benefits and is binding upon you, your respective heirs, successors and assigns. It also benefits and is binding upon us, our successors and assigns, and related third parties. The Arbitration Provision continues

JAN 2 5 2012
#322282

in full force and effect, even if your obligations have been paid or discharged through bankruptcy. The Arbitration Provision survives any termination, amendment, expiration, or performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing. If any of this Arbitration Provision is held invalid, the remainder shall remain in effect

**Right to Opt Out.** If you do not wish your account to be subject to this Arbitration Agreement, you must advise us in writing at P.O. Box 370, Timber Lake, South Dakota, 57565, or via e-mail at info@westernsky.com. You must clearly print or type your name and account number and state that you reject Arbitration. You must give written notice; it is not sufficient to telephone us. We must receive your letter or e-mail within sixty (60) days after the date your loan funds or your rejection of Arbitration will not be effective. In the event you opt out of Arbitration, any disputes hereunder shall nonetheless be governed under the laws of the Cheyenne River Sioux Tribal Nation.

**THIS LOAN CARRIES A VERY HIGH INTEREST RATE. YOU MAY BE ABLE TO OBTAIN CREDIT UNDER MORE FAVORABLE TERMS ELSEWHERE. EVEN THOUGH THE TERM OF THE LOAN IS 37 MONTHS, WE STRONGLY ENCOURAGE YOU TO PAY OFF THE LOAN AS SOON AS POSSIBLE. YOU HAVE THE RIGHT TO PAY OFF ALL OR ANY PORTION OF THE LOAN AT ANY TIME WITHOUT INCURRING ANY PENALTY. YOU WILL, HOWEVER, BE REQUIRED TO PAY ANY AND ALL INTEREST THAT HAS ACCRUED FROM THE FUNDING DATE UNTIL THE PAYOFF DATE.**

CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS AGREEMENT BEFORE YOU SIGN IT. YOU ARE ENTITLED TO A COPY OF THIS AGREEMENT.

| | |
|---|---|
| ✓ | YOU HAVE READ AND UNDERSTAND THE ARBITRATION SECTION OF THIS NOTE AND AGREE TO BE BOUND BY THE TERMS AND CONDITIONS OF THAT SECTION. |
| ✓ | **YOU HAVE READ ALL OF THE TERMS AND CONDITIONS OF THIS PROMISSORY NOTE AND DISCLOSURE STATEMENT AND AGREE TO BE BOUND THERETO. YOU UNDERSTAND AND AGREE THAT YOUR EXECUTION OF THIS NOTE SHALL HAVE THE SAME LEGAL FORCE AND EFFECT AS A PAPER CONTRACT.** |

**CONSUMER COMPLAINTS** - If you have a complaint about our loan, please let us know. You can contact us at P.O. Box 370, Timber Lake, South Dakota, 57656, telephone (877) 860-2274.

## ELECTRONIC FUNDS AUTHORIZATION AND DISCLOSURE

You hereby authorize us to initiate electronic funds transfers ("EFTs") for withdrawal of your scheduled loan payment from your checking account on or about the FIRST day of each month. You further authorize us to adjust this withdrawal to reflect any additional fees, charges or credits to your account. We will notify you 10 days prior to any given transfer if the amount to be transferred varies by more than $50 from your regular payment amount. You also authorize us to withdraw funds from your account on additional days throughout the month in the event you are delinquent on your loan payments. You understand that this authorization and the services undertaken in no way alters or lessens your obligations under the Loan Agreement. You understand that you can cancel this authorization at any time (including prior to your first payment due date) by sending written notification to us. Cancellations must be received at least three business days prior to the applicable due date. This EFT debit authorization will remain in full force and effect until the earlier of the following occurs: (i) you satisfy all of your payment obligations under this Loan

Agreement or (ii) you cancel this authorization.

JAN 2 5 2012

#32282

In addition, you hereby authorize us and our agents to initiate a wire transfer credit to your bank account to disburse the proceeds of this Loan. You acknowledge that the origination of the wire transfer to my bank account must comply with applicable provisions of tribal law.

| ✔ | YOU UNDERSTAND OUR PAYMENT COLLECTION PROCEDURE AND AUTHORIZE ELECTRONIC DEBITS FROM YOUR BANK ACCOUNT. |
|---|---|

Click here to print out a copy of this document for your records.

# EXHIBIT B

Case No.: 0:13-cv-60066-CIV-COHN-SELTZER

For a CashCall's Mortgage Division Loan
Click here.

HOME     ABOUT US     HOW IT WORKS     CURRENT RATES     CONTACT US

# California locals, helping Californians

Founded in 2003, CashCall, Inc. has grown to become one of the nation's premier consumer finance lenders. Headquartered in Anaheim, California, the company employs over 1200 lending professionals, each dedicated to providing exceptional customer service. CashCall has been able to simplify and streamline the loan process, through the seamless coordination of online and offline services to make the process faster, easier and hassle-free.

CashCall Personal Loans offers high-interest-bearing, unsecured term loans to qualified borrowers who typically use the loans for one-time purchases and debt consolidation. These loans of up to $25,000 are processed entirely over the Internet, phone and fax, and funds are wired into the borrower's bank account typically within 24 hours. CashCall Personal Loans are a good alternative to Payday Loans for borrowers. While interest rates are high, they are typically much lower than those of payday lenders, and CashCall Personal Loans have the potential to help customers rebuild their credit score by making payments on time.

Apply Now

   

All loans made pursuant to California Department of Corporations Finance Lenders Law License #603-8780. NMLS #38512.
Fair Lending Policy | Privacy Policy | Terms of Use | Responsible Lending | Careers | Help
© 2013 CashCall, Inc. All Rights Reserved.

For a CashCall's Mortgage Division Loan
Click here

HOME     ABOUT US     HOW IT WORKS     CURRENT RATES     CONTACT US

# It's as easy as 1-2-

## Step 1: APPLY

It's Simple! You can call:

# 1-866-590-CASH *or*

We'll call you. Just fill out this simple form:

First Name

Last Name

Email Address

Telephone Number

Submit

By clicking the Submit button, I expressly consent to receiving any live or prerecorded telephone call, including to my wireless phone, regarding loans options for CashCall.

*or*

Click here to:

_____

# Apply Now



## Step 2: QUALIFY (Try our faxless option)

At CashCall, we do our best to make it easy for people just like you to obtain an unsecured personal loan. To get started you must meet the following requirements to qualify for an Unsecured Personal Loan. You must be able to send us the following information:

> Statement of an active bank account
> Proof of Employment
> Provide proof that you are at least 21 years of age with a valid form of ID, such as a driver's license

## Step 3: APPROVED!

Get funded - CashCall unsecured personal loans are fast! In fact, you could get your money as soon



as the next business day, and the money will be deposited directly into your personal bank account  so it is easy and convenient too. You do not need to go anywhere - just pick up the phone or log onto the website. It is that easy, 1-2-Money!

# Click to Apply Now or call 1-866-590-CASH

   

All loans made pursuant to California Department of Corporations Finance Lenders Law License #603-8780. NMLS #38512.

Fair Lending Policy | Privacy Policy | Terms of Use | Responsible Lending | Careers | Help

© 2013 CashCall, Inc. All Rights Reserved.

For a CashCall's Mortgage Division Loan
Click here

HOME     ABOUT US     HOW IT WORKS     CURRENT RATES     CONTACT US

# Get
# Thousands
# in your Checking
# in a day!

Just complete our short online application,
and receive an answer in minutes. It doesn't get any easier than this!

**Apply Now**



Apply NOW!
or call us at
**1-866-590-**
Or
We'll call you. Just fill
out this simple form:

**First Name**

**Last Name**

**Email Address**

**Telephone Number**

**Submit**

By clicking the Submit button, I
expressly consent to receiving any live
or prerecorded telephone call,
including to my wireless phone,
regarding loans options for CashCall.

### How Does

Work?

Just complete our short online
application, and receive an
answer in minutes. It doesn't
get any easier than this!
More

$2,600 Loan

$5,075 Loan

$10,000 Loan

$25,000 Loan

**Our Products**
More

It only takes minutes to get your
free Credit Score. A complete
application is required.
Apply Now!

Frequently
Asked Questions
More

## What do our Clients have to say?

" ... You guys have been an answer to my prayers.
Without CashCall, I would not have been able to fix
my car and get back to work. I would recommend
CashCall to anyone..."

Sarah W. Newport Beach, CA
More

# Click to Apply Now or call 1-866-590-






All loans made pursuant to California Department of Corporations Finance Lenders Law License #603-8780. NMLS #38512.

Fair Lending Policy | Privacy Policy | Terms of Use | Responsible Lending | Careers | Help

© 2013 CashCall, Inc. All Rights Reserved.

For a CashCall's Mortgage Division Loan
Click here 

HOME    ABOUT US    HOW IT WORKS    CURRENT RATES    CONTACT US

**Home State**

Please Select Your Home State:   California

PLEASE NOTE: A bank account is required to obtain a loan from CashCall.

You have selected California  as your home state.
Please note that your loan will be underwritten and funded by CashCall, Inc.

Next >






All loans made pursuant to California Department of Corporations Finance Lenders Law License #603-8780. NMLS #38512.
Fair Lending Policy | Privacy Policy | Terms of Use | Responsible Lending | Careers | Help
© 2013 CashCall, Inc. All Rights Reserved.