UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-60066-CIV-COHN/SELTZER

ABRAHAM INETIANBOR,

     Plaintiff,

v.

CASHCALL, INC.,

     Defendant.

_____/

## ORDER GRANTING PLAINTIFF'S MOTION TO REOPEN CASE

**THIS CAUSE** is before the Court upon Plaintiff's Notice of Compliance with Order Compelling Arbitration and Report Regarding Status of the Case [DE 36] ("Plaintiff's Notice"), and Plaintiff's Motion to Reopen Case [DE 37].  The Court has considered the notice and the motion, the parties' responses and replies, the record in this case, and is otherwise fully advised in the premises.

### I. BACKGROUND

On January 5, 2011, Plaintiff Abraham Inetianbor entered into a consumer loan agreement with Western Sky Financial, LLC, for $2,525.00, with an annual interest rate of 135%.  DE 16-2 at 3-4.  Defendant CashCall, Inc. ("CashCall"), is the servicer, handler, and collector on the loan.  DE 16 at 2.  Plaintiff claims that he has paid off the loan in full, but that CashCall has continued to report to credit bureaus that he has upcoming or late payments.  DE 1-3 at 2.

On July 12, 2012, Plaintiff brought suit in the Seventeenth Judicial Circuit Court, Broward County, Florida, alleging that CashCall had defamed Plaintiff's character by

misrepresenting his creditworthiness to credit reporting agencies.  See DE 1-2 at 3-4.
CashCall removed the action to this Court on January 11, 2013.  DE 1 at 2-3.  On
January 24, 2013, CashCall filed a Motion to Compel Arbitration and Dismiss or Stay
Case [DE 16].  The subject loan agreement requires that all disputes arising out of the
agreement "be resolved by Arbitration, which shall be conducted by the Cheyenne River
Sioux Tribal Nation by an authorized representative in accordance with its consumer
dispute rules and the terms of this Agreement."  DE 16-2 at 5. The Court granted the
motion on February 15, 2013, and directed the parties to submit the claims presented in
this action to arbitration.  See DE 33 at 8.

In his Motion to Reopen Case, Plaintiff represents that he attempted to submit
the case for arbitration to the Cheyenne River Sioux Tribal Nation ("the tribe").
However, the tribe, through Judge Mona R. Demery, responded with a letter dated
March 8, 2013, stating that it "does not authorize Arbitration as defined by the American
Arbitration Association ("AAA") here on the Cheyenne River Sioux Reservation located
in Eagle Butte, SD 57625."  DE 37 at 5.  Rather, the tribe only has a mediation
program.  Id.  Thus, because the arbitrator named in the agreement appears to be
unavailable, Plaintiff asserts that the arbitration agreement is void.  Accordingly, he
seeks to reopen the case before this Court.  CashCall opposes the motion.

## II. LEGAL STANDARD

The unavailability of an arbitrator named in an arbitration agreement does not
necessarily void the agreement.  Pursuant to Section 5 of the Federal Arbitration Act
("FAA"), the Court may appoint an arbitrator "if for any [ ] reason there shall be a lapse
in the naming of an arbitrator" under the terms of the arbitration agreement.  9 U.S.C.

§ 5.  However, "if the choice of forum is an integral part of the agreement to arbitrate, rather than 'an ancillary logistical concern,' [then] the failure of the chosen forum [will] preclude arbitration."  Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217, 1222 (11th Cir. 2000) (citing Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 742 F. Supp. 1359, 1364 (N.D. Ill. 1990)).  In Brown, the subject arbitration agreement provided that the parties' disputes would be "resolved by binding arbitration under the Code of Procedure of the National Arbitration Forum ("NAF") . . . ."  211 F.3d at 1220.  However, by the time the plaintiff's claims arose, the NAF had dissolved.  Id. at 1222.  The court held that, while the decision to use NAF law implied that the NAF was the chosen forum, there was no evidence to suggest that the forum was an integral part of the agreement to arbitrate.  Id.; see also Zechman 742 F. Supp. at 1365 (finding that the choice of forum was not integral to the agreement in part because the forum was not explicitly named in the agreement).

The Ninth Circuit came to a similar conclusion in Reddam v. KPMG, LLP, 457 F.3d 1054, 1060-61 (9th Cir. 2006), finding that the parties implicitly chose to arbitrate in a certain forum by agreeing that the rules of that forum would apply to their arbitration.  The forum refused to arbitrate the parties' claims.  As in Brown, the court held that the forum's unavailability was not sufficient to render the agreement unenforceable.  In so holding, however, the court explained that it does not "[treat] the selection of a specific forum as exclusive of all other fora, *unless the parties have expressly stated that it was*."  457 F.3d at 1061 (emphasis added).  Therefore, Brown and Reddam stand for the proposition that where an arbitration agreement merely selects the rules of a specific forum, and does not specify the forum itself, the

3

agreement will not fail based on the unavailability of that forum.  Carideo v. Dell, Inc.,

No. C06-1772JLR, 2009 U.S. Dist. LEXIS 104600, at *14 (W.D. Wa. Oct. 26, 2009)

(citing Reddam, 457 F.3d at 1059-1061).  On the other hand, if the agreement includes

"an express statement designating a particular arbitral forum to administer arbitration,"

courts have generally found the forum selection to be integral to the arbitration

agreement.  See Clerk v. Cash Cent. of Utah, LLC, No. 09-04964, 2011 U.S. Dist.

LEXIS 95494, at *14-15 (E.D. Pa. Aug. 25, 2011) (citing Gutfreund v. Weiner, 68 F.3d

554, 556-561 (2d Cir. 1995); and Carideo, 2011 U.S. Dist. LEXIS 104600, at *4); see

also Branch v. Sickert, No. 2:10-CV-128-RWS, 2011 U.S. Dist. LEXIS 19392, at *16

(N.D. Ga. Feb. 28 2011) (analyzing Brown and Reddam, and finding that the aribtral

forum was not integral to the subject agreement because it was not "specifically or

exclusively chosen as the forum.").

Other courts have framed this issue as hinging on whether the parties' "dominant

intent" was to arbitrate — and thus the designation of the arbitrator was merely a side

issue — or whether the specification of the arbitrator was "as important a consideration

as the agreement to arbitrate itself."  Khan v. Dell, Inc., 669 F.3d 350, 356 (3d Cir.

2012) (citing Brown, 211 F.3d at 1222); see also Linea Naviera de Cabotaje, C.A. v.

Mar Caribe de Navegacion, C.A., 169 F. Supp. 2d 1341, 1347 (M.D. Fla. 2001) (finding

an arbitration agreement enforceable because "[t]he dominant intent [. . . ] was to

arbitrate, with the machinery of selection of the arbitrators subordinate and incidental.")

(quoting Lory Fabrics, Inc. v. Dress Rehearsal, Inc., 78 A.D.2d 262, 268 (N.Y. App. Div.

1980)).

Ultimately, arbitration agreements are governed by principles of contract law.

4

"Even though there is [a] presumption in favor of arbitration, '[t]he courts are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties.'" Doe v. Princess Cruise Lines, Ltd., 657 F.3d 1204, 1214 (11th Cir. 2011) (quoting Goldberg v. Bear, Stearns & Co., 912 F.2d 1418, 1419-20 (11th Cir. 1990)).  Thus, while § 5 applies when there is a 'lapse' in the naming of an arbitrator, it does not operate to force the parties to arbitrate before one forum when they have explicitly agreed to arbitrate before a different forum.  See Gutfreund v. Weiner, 68 F.3d 554, 561 (2d Cir. 1995).

### III. ANALYSIS

Here, Plaintiff has made a showing that the arbitration forum specified in the subject arbitration agreement is not available.  CashCall has not offered any evidence in rebuttal.  Instead, CashCall argues that the Court should compel arbitration before a different forum, such as the AAA or JAMS, Inc.  CashCall further asserts that Plaintiff should not be allowed to reopen the case because he did not comply with the procedural requirements of the arbitration agreement.  Both of these arguments are without merit.

### A. The Choice of Forum was Integral to the Agreement.

First, CashCall cites to Brown, and argues that the Court is required by § 5 of the FAA to appoint a substitute arbitrator.  The Court disagrees.  In this case, unlike in Brown, there is ample evidence in the loan agreement and the arbitration provisions that the selection of the tribe as arbitrator was integral to the parties' agreement to arbitrate.  At the very beginning of the loan agreement, it states that:

5

> **This Loan Agreement is subject solely to the exclusive laws and jurisdiction of the Cheyenne River Sioux Tribe, Cheyenne River Indian Reservation.**  By executing this Loan Agreement, you, the borrower, hereby acknowledge and consent to be bound to the terms of this Loan Agreement, consent to the sole subject matter and personal jurisdiction of the Cheyenne River Sioux Tribal Court, and further agree that no other state or federal law or regulation shall apply to this Loan Agreement.

DE 16-2 at 3 (emphasis in original).  Later, under the section titled 'Agreement to Arbitrate,' it provides that:

> You agree that any Dispute, except as provided below, will be resolved by Arbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement.

Id. at 5.  Additionally, under the 'Choice of Arbitrator' provision, it says that:

> Any party to a dispute . . . may send the other party written notice by certified mail return receipt requested at the address appearing at the top of this Loan Agreement of their intent to arbitrate and setting forth the subject of the dispute . . . .  Arbitration shall be conducted in the Cheyenne River Sioux Tribal Nation by your choice of either (i) a Tribal Elder, or (ii) a panel of three (3) members of the Tribal Council, and shall be conducted in accordance with the Cheyenne River Sioux Tribal Nation's consumer dispute rules and the terms of this Agreement.  You may appear at Arbitration via telephone or video conference, and you will not be required to travel to the Cheyenne River Sioux Tribal Nation.  The party receiving notice of Arbitration will respond in writing by certified mail return receipt requested within twenty (20) days.  You understand that if you demand Arbitration, you must inform us of your demand of the Arbitrator you have selected.  You also understand that if you fail to notify us, then we have the right to select the Arbitrator.

Id. at 6.  Finally, under 'Applicable Law and Judicial Review,' it states that:

> THIS ARBITRATION PROVISION IS MADE PURSUANT TO A TRANSACTION INVOLVING THE INDIAN COMMERCE CLAUSE OF THE CONSTITUTION OF THE UNITED STATES OF AMERICA, AND SHALL BE GOVERNED BY THE LAW OF THE CHEYENNE RIVER SIOUX TRIBE.

Id.  Thus, taken together, these provisions show that (1) the entire loan agreement,

6

including the arbitration provisions, is subject to the sole subject-matter jurisdiction of the tribe; (2) for purposes of the agreement, Plaintiff is subject to the sole personal jurisdiction of the tribe; (3) disputes shall be resolved by arbitration conducted by the tribe; (4) in selecting their arbitrator, the parties may choose either a Tribal Elder or a panel of three members of the Tribal Council; and (5) arbitration will be conducted pursuant to tribal laws and consumer dispute rules.  Based on these factors, it is clear that the choice of the tribal forum was integral to the parties' agreement to arbitrate.

In contrast to the arbitration agreements in Brown and Zechman, the instant agreement does not merely designate the applicable law for arbitration.  Rather, it specifically names the arbitral forum and details whom the parties may select as their arbitrator(s).  Further, unlike the subject provision in Branch, the instant agreement makes clear that it is to be governed *solely* by tribal law and that Plaintiff can consent *only* to the personal jurisdiction of the tribe.  Moreover, the language of the agreement is mandatory, not permissive, stating that arbitration "*shall* be conducted by the Cheyenne River Sioux Tribal Nation."  DE 16-2 at 5 (emphases added); cf. Cash Cent. of Utah, 2011 U.S. Dist. LEXIS 95494, at *18 (finding that the forum was not 'integral' in part because the language of the arbitration clause was permissive, providing that claims "'may be filed' at an NAF office").  Given the repeated, specific, and exclusive references to the tribe's role throughout the arbitration agreement, the Court concludes that the choice of arbitrator was as important a consideration as the agreement to arbitrate itself.  Therefore, § 5 of the FAA does not apply in this case, and the unavailability of the designated arbitrator will void the arbitration agreement.

7

**B. CashCall's Procedural Arguments are Unavailing.**

Next, CashCall argues, in its Response to Plaintiff's Notice [DE 39], that Plaintiff has not properly sought arbitration in accordance with the loan agreement. Specifically, CashCall objects to Plaintiff's 'ex parte communication' with the tribal court, and contends that such communication violated CashCall's right to respond to the arbitration demand within twenty days.  This argument is without merit.  The agreement provides that the party receiving notice of arbitration has twenty days to respond. DE 16-2 at 6.  It also requires that the party demanding arbitration inform the other party of which arbitrator he has selected.  Id.  It does not state that the initiating party must wait for the other party's response before attempting to submit its claims to the arbitrator.  Rather, it appears that Plaintiff was attempting to comply with the Court's Order directing the parties "to submit the claims presented in the instant action to arbitration."  DE 33 at 8.

CashCall also contends that Plaintiff failed to send the letter by certified mail, and that he did not send it to the address located on the agreement.  The address in the agreement is "P.O. Box 37, Timber Lake, SD 57656."  See DE 16-2 at 3.  The heading on Plaintiff's letter lists the intended address as "1600 South Douglass Road, Anaheim, CA 98206," which CashCall asserts is a general mail address for CashCall. DE 36 at 5.  CashCall asserts that Plaintiff sent the letter by regular mail and that, as of March 14, 2013, it had not received the letter at either address.  Plaintiff responds that, while the letter listed CashCall's California address in its heading, the envelope was addressed to the South Dakota location.  Neither party has submitted a copy of the envelope or presents any other evidence on this point.  However, in light of Plaintiff's

8

showing that the tribe does not conduct arbitration — and CashCall's complete failure to offer any evidence to the contrary[1] — the Court concludes that Plaintiff's compliance or lack thereof with this procedural requirement is moot.  Accordingly, the Court will grant Plaintiff's motion.

## IV. CONCLUSION

Therefore, for the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion to Reopen Case [DE 37] is **GRANTED**.  The stay in this case is **LIFTED** and the Clerk of Court is directed to **REOPEN** this case.  The Court will enter a separate Order setting the trial and calendar call dates.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 1st day of April, 2013.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF

Abraham Intetianbor, *pro se*
4271 NW 5th Street, #247
Plantation, FL 33317

---

[1] In fact, CashCall represents that, in March 2011 — two months after Plaintiff signed his loan agreement — CashCall amended its 'Choice of Arbitrator' provision to remove the Tribal Elder and Tribal Council options.  The amended version permits the initiating party to choose from either JAMS or AAA.  DE 39 at 4.