FILED by ___ D.C.

APR 2 9 2013

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – FT. LAUD.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

Case No.: 0:13-cv-60066-CIV-COHN-SELTZER

ABRAHAM INETIANBOR,

      **Plaintiff,**

vs.

CASH CALL, INC.,

      **Defendant.**

_____/

## PLAINTIFF'S OPPOSITION TO DEFENDANT CASHCALL, INC.'S RENEWED MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY CASE, AND SUPPORTING MEMORANDUM OF LAW [Doc #53]

Plaintiff Abraham Inetianbor, hereby file his opposition to *defendant cash call, Inc. 's, renewed motion to compel arbitration and dismiss or stay case, and supporting memorandum of law* [Doc #53 (*motion*)].

## INTRODUCTION

1.  It is amazing to see a company clearly "skirting" the laws of the United States and still have the COURAGE to continue to mislead the court of law in order to stay in business illegally. Defendant must think this is a joke or some form of competition or so. Plaintiff has no interest whatsoever in this imaginary game that the defendant is playing. Plaintiff is only in this court for one reason, and it is to seek justice.

2.  If this was all about money, then there would be no monetary award that can compensate for

1

the mental anguish the defendant has caused plaintiff. The loyal citizens of this great nation simply cannot afford another "Bernie Madoff." The U.S. Constitution guarantees the right to a jury trial for civil litigants in this court, but the defendant's goal is to rob plaintiff his rights through a pre-litigation contractual waivers of jury trial. After a careful review of the cited laws and Exhibits provided hereon, plaintiff respectfully prays the court to deny the defendant's motion.

## ARBITRATION *CLAUSE* AND *INTENTIONAL* FABRICATIONS

**3.** Defendant seeks to exclude plaintiff from his constitutional right to a jury trial and to be heard in this Court. The "original" loan agreement clearly states that plaintiff has a ***"choice between a Tribal Elder OR a panel of three members of the Tribal Council and shall be conducted in accordance with the Cheyenne River Sioux Tribal Nation Consumer Dispute Rules and the Terms of this agreement." See* Choice of Arbitrator** *the loan original agreement*, attached hereon as **Exhibit A**.

**4.** If the "original" loan agreement was not ***unconscionable***, why would the defendant go out of their way to *intentionally mislead* this court, by persuading the court to compel arbitration using the new agreement; and then **writing FAKE QUOTES, FORGED SENTENCES (Exhibit B)** with a more **"HUMANE and CONSCIONABLE TERM",** which the defendant claimed was directly from the new agreement?  It is quite clear that the defendant's sole purpose is to **shield their ongoing pattern of unfair and unlawful practices; their dominion over consumers from discovery and litigation in this Court before a jury.**

**5.** After plaintiff's compliance with the court's order, and *motion to reopen case* was filed, the

2

defendant made a **BOLD CLAIM to this court by claiming Cash Call/Western Sky have a NEW AGREEMENT that was released two months (March of 2011) after plaintiff's loan origination**; and that the new agreement is no longer *exclusive* to the Tribe, but rather makes provision for AAA and JAMS as claimed on both Docs #39 and #43. The defendant went further to **DIRECTLY QUOTE** a paragraph from the so called new agreement in order to persuade the court into believing the existence of AAA and JAMS, and could have easily mislead the court AGAIN into compelling arbitration through AAA or JAMS. *See* **Exhibit B.**

6.   Fortunately, plaintiff was able to obtain copies of the new agreement from similar victims, who have agreed to testify or submit an affidavit if need be. **In the new agreement, there is NO "AAA" and there is NO "JAMS" arbitration provision.** The only major change to the *choice of arbitrator* is **the REMOVAL of a Tribal Elder, which the defendant is now claiming to have submitted arbitration to; so the only CHOICE left in the new agreement is the panel of three members of the Tribal Council, which was originally selected by the plaintiff.** *See* a copy of the **NEW Agreement** attached hereon as **Exhibit C.**

7.   Defendant even took it a step further and claimed the new agreement made provision for an arbitrator either at the **Tribal land or WITHIN THIRTY miles** from where the consumer lives as long as it is in accordance with the Tribal law due to the defendant's **"SOVERIGN status or IMMUNITY."** Now COMPARE **Exhibits A, B, and C**. This is a clear sign of deception (*fraud*), INTENTIONAL malicious act of BAD FAITH, which in itself is a legitimate reason to deny the defendant's motion immediately. This is completely unacceptable and a disgrace.

8.   Arbitration agreements are matters of contract law, and a court interpreting such an

3

agreement should consider the intent of the parties. *See* Allstar Homes, Inc., d/b/a/ Best Value Mobile Homes v. Waters, 1997 WL 723103(Ala. 1997); Allied-Bruce Terminix Companies v. Dobson, 513 U.S. 265 (1995). The Federal Arbitration Act (FAA) **does not require parties to arbitrate a dispute that they did not agree to submit to arbitration**. 9 USC.' 1-16. The FAA does not make all arbitration *clauses* in whatever writing enforceable; rather, it makes arbitration *agreements* enforceable. According to the United States Supreme Court in First Options of Chicago v. Kaplan, 514 U.S. 938, 943-44, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985, 993 (1995), the determination of whether the parties agreed to arbitrate their disputes should be judged by the "*ordinary state-law principles that govern the formation of contracts.*"

**9.** The laws of the great Cheyenne River Sioux Tribe only applies to members of the Tribe and not the plaintiff who is a US Citizen in the state of Florida, and equally does not apply to the defendant in this case, who is a California Corporation and considered a citizen of the state of California; diversity jurisdiction is currently codified at 28 U.S.C. § 1332. **The loan did not originate from the Tribe, and neither plaintiff nor the defendant live or conduct businesses on the reservation; as such the law of the Tribe does not apply** nor does it govern the bogus loan agreement.

**10.** Besides, the 118 day delay in filling defendant's first motion to compel arbitration after service of the summons and complaint; and defendant's repeated failures to respond to plaintiff's claims as promised rather filling several other motions in between, are all clear ACTS OF BAD FAITH or WILLFULL MISCONDUCT **justifying a finding of waiver of the right to arbitrate by defendant pursuant to Code of Civil Procedure** regardless of the enforceability of the

4

company's dispute resolution policy[1]. Almost 300 days since the original complaint was filed,

defendant is again requesting arbitration.

---

[1] Code of Civil Procedure Section confers authority on the Court to deny a petition or motion to arbitrate on a finding of waiver by the petitioner of these rights. Additionally, as held by the California Supreme Court in Engalla v. Permanente Medical Group, Inc. (1997) 15 Cal.4th 951, at 983-984, **the bad faith or willful misconduct of a party may constitute a waiver justifying a refusal to compel arbitration, including but not limited to actions that indicate a pattern of delay by the petitioning party that rises to a level of misfeasance.**

## THE LOAN AGREEMENT LACKS MUTUALLITY

**11.** Plaintiff clearly complied with the courts order as requested by the defendant and the letter

from the Tribal court clearly stated that there was no provision for arbitration; same as the letter

obtained by Cash Call. *Notice* the case being referenced by the defendant (**Doc #53-4**) was

originally filed in the Tribal court by members of the Tribe, who later agreed, not due to a court

order or any other obligation, rather *mutually* agreed to go to an arbitrator and mutually were

both involved in the process and later brought the case back to the Tribal court for an award

proceeding.

**12.** "Arbitration is the process by which the parties to a dispute submit their differences to the

judgment of an *impartial person or group appointed by mutual consent or statutory provision.*"

Defendant solely drafted the loan agreement in which plaintiff had no input. The agreement also

states that defendant is **solely responsible for paying the arbitration fee *regardless* of who**

initiates the arbitration. *Notice* **that the plaintiff also has NO SAY as to the "FEES."** Plaintiff is also not made aware of the fees paid because the payment process is informal, private and ***not*** regulated.

13. The *Assignment* part of the agreement reads: "We may assign or transfer this loan agreement or any of our rights under it at any time to any party." *Also notice* the one-sidedness of what is supposed to be an *agreement*. **The purpose of a signature is to show *"mutuality and assent,"*** which are required for a contract or an agreement to be binding. But *notice* that the **defendant DID NOT SIGN the said agreement** or even electronically accept the said agreement just as plaintiff was asked to. *See* Electronic Signature pages of the agreement attached hereon as **Exhibit A**. There is clearly no mutuality and no "*agreement*."

14. Federal Arbitration Act (FAA) does not govern every contract containing an arbitration agreement. In order for the FAA to govern the agreement: (1) there must be a written *agreement* calling for arbitration and (2) the contract or agreement must relate to a transaction involving interstate commerce. Maxis, Inc., v. Sciacca, 598 So.2d 1376, Alabama 1992. The agreement issued by the defendant, does not meet that first requirement ***because the defendant is not a signatory to the agreement containing the arbitration clause***, and the defendant has also claimed on several occasion to this court that they are not the creditor but just a "*servicer of a note.*" Neither are they the debtor. Because Cash Call is not a party to the *agreement* claiming to have arbitration provision, Cash Call simply has no standing to seek enforcement of the arbitration provisions.

6

15. The arbitration clause allows Cash Call to unilaterally choose the pool of arbitrators. The loan agreement provides that the plaintiff shall provide defendant with its choice of arbitrator *from the list of which the defendant has provided for the arbitration.* **And the defendant handles the rest of the process without plaintiff's consent, including payments.** This allows for creation of a very one-sided arbitration process. Under the plain meaning of the agreement, Cash Call can select any of the arbitrators it wishes, as long as the arbitrators are licensed to practice law. This term is substantively unconscionable. *See Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1003 (9th Cir. 2010) (*finding an arbitrator selection process substantively unconscionable where the employer hand-selected a pool of five arbitrators that it had specially trained, from which the plaintiff could choose its arbitrator*).

16. There is clearly no mutuality in this loan agreement, and the court should find such action *unconscionable.* Mutuality of obligation means both parties are required to perform in accordance with their agreement. **If one party reserves the SINGLE option or right to choose, cancel, or enforce any part of an agreement, then the purported agreement lacks mutuality. Absent mutuality of obligation, there is no agreement.** This means either party can call off what appears to be an agreement. Florida case law has examples of **courts finding agreements do not exist in the absence of mutuality of obligation.**

17. In the recent case of *Law-Yue v. Miami River, L.L.C.*, the court found that buyers properly terminated a "contract" and were entitled to return of their deposit. The contract provided that the developer would build a condominium **"in substantial accordance (in sellers opinion)"** with the plans and specifications kept in sellers office. The court found that the developer had absolute discretion as to what not to build and therefore there was no *mutuality of obligation.*

7

**The purchaser, therefore, would not know what to enforce; giving the purchaser the right to cancel and get the deposit.**

**18.** Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce." Also, enacted in 1973, The Florida Deceptive and Unfair Trade Practices Act (DUTPA) was drafted in broad terms to encompass a wide range of unfair or deceptive practices by individuals and companies. **The Florida Supreme Court has defined "unfair" practices to include conduct that "offends public policy and that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."** The Court has defined deceptive conduct as "representation[s], omission[s], or practice[s] that [are] likely to mislead the consumer"; just like the defendant's loan agreements.

**19.** Florida case law is replete with examples of businesses that have been held to account for deceptive or unfair trade practices. Misrepresenting a lease transaction as a sale transaction, Cummings v. Warren Henry Motors, Inc., 648 So. 2d 1230 (Fla. 4th DCA 1995); *also see* **a case of a company just like the defendant**, using a business name similar to an established business so as to benefit from the other business's reputation and marketing. Contemporary Restaurant Concepts, Ltd. v. Las Tapas-Jacksonville, Inc., 753 F. Supp. 1560 (M.D. Fla. 1991); **Cash Call and Western Sky have no permission whatsoever from the Tribe to use their name and laws to run a business.** *Also see* a business taking steps to deceive a consumer into believing that a car was new, when it fact it was used. Tuckish v. Pompano Motor Co., 337 F. Supp. 2d 1313 (S.D. Fla. 2004).

8

20. The said agreement has proven to be unconscionable, and unconscionability and *Fraud* is also a reason for refusing to enforce contracts ("agreement") generally; *it is also a valid reason for refusing to enforce an arbitration agreement under Code of Civil Procedure.* The United States Supreme Court recognized that, "*generally applicable contract defenses, such as fraud, duress, or unconscionability* may be applied to *invalidate arbitration agreements. . . .*" Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 1656, (emphasis added).

## **VERIFIABLE FACTS**

21. Plaintiff might not have all the "BIG IMPRESSIVE" words to use, but the truth remains the truth and will not Change. Since the start of this action in July 2012, the defendant has filed four motions for extension of time in order to RESPOND to plaintiff's complaints and none of those promises to respond have been honored. Instead it's all a calculated attempt by the defendant, who would do anything to avoid facing justice, to buy time and come up with another tactics to mislead the court in a different direction.

22. If Cash Call and its subsidiaries were *literally set up as a tribal corporation* and *if the lender was the tribe itself,* that's when it is entitled to sovereign immunity, *not* when a SINGLE member of a Tribe (*Martin Webb*) agrees to be listed as an officer in his best friend's (Paul Reddam) corporation. Cash Call *was literally set up as a California State corporation. See* **Exhibit F.** The court ordered (**Doc #47**) that "*discovery shall commence upon service of the Second Amended Complaint, as no Scheduling Conference will be held.*" Plaintiff is in compliance with this order and continues to be; Discovery is ongoing; *See* **Exhibit D** attached.

23.  Defendant has failed to prove its relationship with the Tribe, which is in non-existence; and why they are immune to the laws of the United States. **This cannot be proved by a bogus loan agreement that was single handedly written by Cash Call. Plaintiff was honored to receive a call from the Chairman's office that showed complete disgust for the actions of the defendant.** The Cheyenne River Sioux Tribal Chairman **Kevin Keckler Sr.** said the defendant's lending operation is not related to the tribe. "He operates his own business outside the tribe." If the defendant is truly immune to the United States laws and operates under the "**governing laws of the Tribe**", Cash Call / Western Sky should have absolutely no problem obtaining a simple *legitimate* **letter of immunity from the Tribe**.

24.  WS Funding, LLC (*the company that defendant claims **buys the loan notes** being serviced by Cash Call*), is owned by **Paul J. Reddam,** who also owns Cash Call; and Cash Call claims to be **the servicer of the note.** Also see **Doc #55-1** of Cash Call acknowledging WS Funding, LLC as its subsidiary. "*Delbert Services Corporation,*" which is also owned by **Paul J. Reddam** is a company that acts as the "*collection agency*" who **buys the delinquent account** from Cash Call, Inc. *See* **Exhibit E** attached. Western Sky Financial, LLC, *the supposed lender*, is also a name being used by Cash Call to Skirt the law.

25.  ***WS Funding, LLC*** simply stands for **Western Sky Funding, LLC.** According to the Tribe, there is no Western Sky on their reservation and Western Sky is not even allowed to conduct *lending business* at the reservation or ANYWHERE in the state of South Dakota. And the defendant confirmed this when it claimed they *have no presence in South Dakota.* Truth is, WS Funding, LLC, Delbert Services Corporation, Western Sky Financial, LLC; it's all aliases

10

for Cash Call, Inc. **There are phone numbers listed to reach Western Sky and Cash Call, but those numbers are ONLY answered by one company named CASH CALL, INC.; yes the defendant.**

## CONCLUSION

26.   The *Choice of Arbitrator* in the agreement reads: "*Any party to a dispute, including related third parties, may send the other party written notice by certified mail return receipt requested at the address appearing at the top of this agreement of their intent to arbitrate.*" Plaintiff has no access to the said address. It's a P.O.Box that only the defendant has access to in South Dakota. When plaintiff complied with the court's order to arbitrate, he sent the defendant his intent letter by certified mail to the above address (**Exhibit H**), but when defendant sent their intent to arbitrate, it was by *regular mail* (**Exhibit H** pg2) to plaintiff's home address.

27.   Even if they followed the said agreement, they would have to send a certified mail to the P.O.Box listed on the agreement, which plaintiff clearly has no access to. It's obvious that they can't follow the same bogus *agreement* they created because it's so one-sided to benefit the defendant only, and this court should find this and other actions unconscionable. The agreement states that The Cheyenne River Sioux Tribal law governs the agreement. *The choice of law by the defendant,* which plaintiff is completely ignorant on, also shows no mutuality in the agreement and is *unconscionable.*

28.   Courts have generally refused to enforce the waiver of right to a jury trial because the courts agreed that the party opposing the waiver, either for relative bargaining power of the parties' involved; or for financial reasons, the opposing party usually have no choice at the time of the

11

agreement, **but to sign or accept the waiver or the entire contract as written by the provider**. Also the business acumen of the party opposing the waiver is a factor to consider as to if the opposing party was aware at the time of the agreement, the conspicuousness of the *waiver* in the agreement. **Plaintiff was not well-versed because the *negotiability* of the agreement terms and negotiations between the parties concerning *the jury trial waiver* was in non-existence.**

39.   Defendant's unwillingness to corporate with the court's order, be honest and upfront in this matter, has continue to impede the progress of this case. And defendant's **habit of continuing to mislead the court is now costing both the tax payers and the plaintiff unnecessary legal fees and time that could be directed towards the betterment of our society**. Over 200,000 similar consumer complaints for a company this size; hundreds of pending government agencies investigations and lawsuits; and multiple jury verdicts in which all the victims have similar arbitration agreements as the plaintiff in a United States court against the defendant cannot be wrong.

30.   There is way too much discovery to be had in this case for a justifiable outcome and arbitration is not the forum for such. Besides, the defendant now has the sole obligation and burden to show this court why the terms of the loan agreement is governed solely by the laws of the Cheyenne River Sioux Tribe and why Cash Call, Inc. / Western Sky Financial, LLC and all its subsidiaries are immune to the laws of the United States of America; upon which law the defendant business was established. The court did the right thing by reopening this case and should proceed as ordered. **This action belongs in this Court; and this was affirmed when the defendant choose to move this case from County Court to this Court for the sole purpose of jurisdiction.**

31.  Notice that despite the New Agreement making provision for ONLY ONE choice of

arbitrator (*three members of the Tribal Council*), the agreement still reads: **"*you must inform us*

*of your demand of the Arbitrator you have selected.*"** How does someone select when there's

only one choice? Defendant must have forgot to change this part of the agreement to *match*

because they were too busy misleading another court of law after they have been accused of

"*buying*" individual *Tribal Elders*.

32.  Finally, defendant also claimed the new agreement became available in March 2011 (*See*

Doc #39) when in fact it was created around June/July of 2011. S*ee* date on the *New Agreement*

(**Exhibit C**) and compare to an agreement from May of 2011 attached hereon as **Exhibit G.** The

May 2011 agreement, which was printed out yesterday directly from another victim's online

account with Cash Call, is the same as the plaintiff's agreement from Jan. 2011 (**Exhibit A**).

Defendant needs to take a stand and stop changing and fabricating their loan agreements every

few months in order to favor each case filed against them in a court of law as this.

WHEREFORE, Plaintiff RESPECTFULLY prays the court to DENY the defendant's renewed

motion to compel arbitration *Doc #53*.

**RESPECTFULLY Submitted,**

Date: **April 29, 2013**

By: _____

**Abraham Inetianbor**
**4271 NW 5th Street, # 247**
**Plantation, FL 33317**
**(954) 616 8291**
**[ Plaintiff *pro se]***

13

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the forgoing was filed via the clerk office and served as indicated below on April 29, 2013 on all counsel or parties of record on the following Service List.

Abraham Inetianbor

**SERVICE LIST**

**Abraham Inetianbor** *(pro se plaintiff)*
**4271 NW 5th Street, # 247**
**Plantation, FL 33317**
**(954) 616 8291**


**Akerman Senterfitt** *(attorney for defendant)*
**(by USPS mail)**
**1 S.E. Third Avenue, Suite 2500**
**Miami, FL 33131**
**(305) 374 5600**

# EXHIBIT A

**Case No.: 0:13-cv-60066-CIV-COHN-SELTZER**

Case 0:13-cv-60066-JIC   Document 56   Entered on FLSD Docket 04/29/2013   Page 16 of 63
Case 0:13-cv-60066-JIC   Document 53-1   Entered on FLSD Docket 04/23/2013   Page 6 of 11

Page 2 of 7

# WESTERN SKY CONSUMER LOAN AGREEMENT

| Loan No.: | 5179133 | Date of Note: | January 05, 2011 |
|---|---|---|---|
| | | Expected Funding Date: | January 05, 2011 |
| Lender: | Western Sky Financial, LLC | Borrower: | ABRAHAM INETIANBOR |
| Address: | P.O. Box 370<br>Timber Lake, SD 57656 | Address: | 4271 NW 5TH ST<br>PLANTATION, FL 33317 |

**This Loan Agreement is subject solely to the exclusive laws and jurisdiction of the Cheyenne River Sioux Tribe, Cheyenne River Indian Reservation.** By executing this Loan Agreement, you, the borrower, hereby acknowledge and consent to be bound to the terms of this Loan Agreement, consent to the sole subject matter and personal jurisdiction of the Cheyenne River Sioux Tribal Court, and further agree that no other state or federal law or regulation shall apply to this Loan Agreement, its enforcement or interpretation.

In this Loan Agreement, the words "you" and "your" mean the person signing as a borrower. "We," "us," "our," and "Lender" mean Western Sky Financial, LLC, a lender authorized by the laws of the Cheyenne River Sioux Tribal Nation and the Indian Commerce Clause of the Constitution of the United States of America, and any subsequent holder of this Note ("Western Sky").

TRUTH IN LENDING DISCLOSURES: The disclosures below are provided to you so that you may compare the cost of this loan to other loan products you might obtain in the United States. Our inclusion of these disclosures does not mean that we consent to application of state or federal law to us, to the loan, or this Loan Agreement.

## TRUTH IN LENDING ACT DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you | The amount you will have paid after all payments are made as scheduled |
| **139.31 %** | **$8,499.82** | **$2,525.00** | **$11,024.82** |

| PAYMENT SCHEDULE |
|---|
| One payment of $263.25 on February 01, 2011. |
| 35 monthly payments of $298.94 beginning on March 01, 2011. |
| One payment of $298.67 on February 01, 2014. |

Case 0:13-cv-60066-JIC   Document 56   Entered on FLSD Docket 04/29/2013   Page 17 of 63
Case 0:13-cv-60066-JIC   Document 53-1   Entered on FLSD Docket 04/23/2013   Page 7 of 11

Page 3 of 7

**Late Charge:**   If a payment is more than 15 days late, you will be charged $29.00.

**Prepayment:**   If you pay off this loan early, you will not have to pay any penalty.

Please see the remainder of this document for additional information about nonpayment, default and any required repayment in full before the scheduled date.

| ITEMIZATION OF AMOUNT FINANCED | |
|---|---|
| Amount Financed: | $2,525.00 |
| Amount Paid to Borrower Directly: | $2,525.00 |
| Prepaid Finance Charge/Origination Fee: | $75.00 |

You promise to pay to the order of Western Sky or any subsequent holder of this Note the sum of **$2,600.00**, together with interest calculated at **135.00 %** per annum and any outstanding charges or late fees, until the full amount of this Note is paid. You promise to repay this loan by making, at a minimum, the payments described on the payment schedule listed above.

Payments will be applied first to any outstanding charges or late fees, then to earned interest and finally to principal. The payment schedule described above may change in the event you do not make all payments as scheduled or in the event you accrue any fees.

Interest is calculated on a 360/360 simple interest basis. This means that interest is calculated by dividing the annual Interest Rate by 360, multiplying that number by the outstanding principal balance, and multiplying that number by the number of days the principal balance is outstanding.

You may prepay all or any part of the principal without penalty.

If you fail to make any payment due hereunder, the holder of this Note shall have the right, after a 30-day grace period, to declare this note to be immediately due and payable. If you file for an assignment for the benefit of creditors, or for bankruptcy, the holder of this Note shall have the right to declare this Note to be immediately due and payable.

Except as may be provided in the "Arbitration" section of this Note, if we are required to employ an attorney at law to collect any amounts due hereunder, you will be required to pay the reasonable fees of such attorney to protect our interest or to take any other action required to collect the amounts due hereunder.

The Prepaid Finance Charge disclosed above is fully earned upon loan origination and is not subject to rebate upon prepayment or acceleration of this Note.

**LATE FEES.** You will be subject to a late fee of $29 if you fail to make your payment within 15 days of the due date. We can collect any late fees immediately via Electronic Funds Transfer (EFT) from your bank account.

**INSUFFICIENT FUNDS.** You will be subject to a fee of $29 if any payment you make is returned by your bank for insufficient funds.

**E-SIGN/ELECTRONIC COMMUNICATIONS.** Although federal law does not apply to this Agreement, this Note is in original format an electronic document fully compliant with the

Case 0:13-cv-60066-JIC Document 56 Entered on FLSD Docket 04/29/2013 Page 18 of 63
Case 0:13-cv-60066-JIC Document 53-1 Entered on FLSD Docket 04/23/2013 Page 8 of 11

Page 4 of 7

Electronic Signatures in Global and National Commerce Act (E-SIGN) and other applicable laws and regulations, and the one, true original Note is retained electronically by us. All other versions hereof, whether electronic or in tangible format, constitute facsimiles or reproductions only. You understand that you have previously consented to receive all communications from us, including but not limited to all required disclosures, electronically.

**CREDIT REPORTS.** You agree that we may obtain credit reports on you on an ongoing basis as long as this loan remains in effect. You also authorize us to report information concerning this account to credit bureaus and anyone else we believe in good faith has a legitimate need for such information. Late payments, missed payments, or other defaults on this account may be reflected in your credit report.

**CALL MONITORING/RECORDING.** You understand that, from time to time, we may monitor or record telephone calls between us for quality assurance purposes. You expressly consent to have your calls monitored or recorded.

**TELEPHONE CALLS.** You hereby agree that in the event we need to contact you to discuss your account or the repayment of your loan, we may telephone you at any number, including any cell phone number provided, and that we may leave an autodialed or prerecorded message or use other technology to make that contact or to communicate to you the status of your account.

**VERIFICATION.** You authorize us to verify all of the information you have provided in obtaining approval of this Loan.

**GOVERNING LAW.** This Agreement is governed by the Indian Commerce Clause of the Constitution of the United States of America and the laws of the Cheyenne River Sioux Tribe. We do not have a presence in South Dakota or any other states of the United States. Neither this Agreement nor Lender is subject to the laws of any state of the United States of America.

**ASSIGNMENT.** We may assign or transfer this Loan Agreement or any of our rights under it at any time to any party.

**WAIVER OF JURY TRIAL AND ARBITRATION.**

**PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.** Unless you exercise your right to opt-out of arbitration in the manner described below, any dispute you have with Western Sky or anyone else under this loan agreement will be resolved by binding arbitration. Arbitration replaces the right to go to court, including the right to have a jury, to engage in discovery (except as may be provided in the arbitration rules), and to participate in a class action or similar proceeding. In Arbitration, a dispute is resolved by an arbitrator instead of a judge or jury. Arbitration procedures are simpler and more limited than court procedures. Any Arbitration will be limited to the dispute between yourself and the holder of the Note and will not be part of a class-wide or consolidated Arbitration proceeding.

**Agreement to Arbitrate.** You agree that any Dispute, except as provided below, will be resolved by Arbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement.

**Arbitration Defined.** Arbitration is a means of having an independent third party resolve a Dispute. A "Dispute" is any controversy or claim between you and Western Sky or the holder of the Note. The term Dispute is to be given its broadest possible meaning and includes, without limitation, all claims or demands (whether past, present, or future, including events that occurred prior to the opening of this Account), based on any legal or equitable theory (tort, contract, or otherwise), and regardless of the type of relief sought (i.e. money, injunctive relief, or declaratory relief). A Dispute includes, by way of example and without limitation, any claim based upon

Case 0:13-cv-60066-JIC   Document 56   Entered on FLSD Docket 04/29/2013   Page 19 of 63
Case 0:13-cv-60066-JIC   Document 53-1   Entered on FLSD Docket 04/23/2013   Page 9 of 11

Page 5 of 7

marketing or solicitations to obtain the loan and the handling or servicing of my account whether such Dispute is based on a tribal, federal or state constitution, statute, ordinance, regulation, or common law, and including any issue concerning the validity, enforceability, or scope of this loan or the Arbitration agreement. For purposes of this Arbitration agreement, the term "the holder" shall include Western Sky or the then-current note holder's employees, officers, directors, attorneys, affiliated companies, predecessors, and assigns, as well as any marketing, servicing, and collection representatives and agents.

**Choice of Arbitrator.** Any party to a dispute, including related third parties, may send the other party written notice by certified mail return receipt requested at the address appearing at the top of this Loan Agreement of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed. Arbitration shall be conducted in the Cheyenne River Sioux Tribal Nation by your choice of either (i) a Tribal Elder, or (ii) a panel of three (3) members of the Tribal Council, and shall be conducted in accordance with the Cheyenne River Sioux Tribal Nation's consumer dispute rules and the terms of this Agreement. You may appear at Arbitration via telephone or video conference, and you will not be required to travel to the Cheyenne River Sioux Tribal Nation. The party receiving notice of Arbitration will respond in writing by certified mail return receipt requested within twenty (20) days. You understand that if you demand Arbitration, you must inform us of your demand of the Arbitrator you have selected. You also understand that if you fail to notify us, then we have the right to select the Arbitrator.

**Cost of Arbitration.** We will pay the filing fee and any costs or fees charged by the arbitrator regardless of which party initiates the Arbitration. Except where otherwise provided by the law of the Cheyenne River Sioux Tribal Nation, each party will be responsible for its own attorneys' fees and other expenses. Unless prohibited by law, the arbitrator may award fees, costs, and reasonable attorneys' fees to the party who substantially prevails in the Arbitration.

**Waiver of Rights.** YOU HEREBY AGREE THAT YOU ARE WAIVING YOUR RIGHT TO A JURY TRIAL, TO HAVE A COURT DECIDE YOUR DISPUTE, TO PARTICIPATE IN A CLASS ACTION LAWSUIT, AND TO CERTAIN DISCOVERY AND OTHER PROCEDURES THAT ARE AVAILABLE IN A LAWSUIT. The arbitrator has the ability to award all remedies available by statute, at law, or in equity to the prevailing party, except that the parties agree that the arbitrator has no authority to conduct class-wide proceedings and will be restricted to resolving the individual disputes between the parties. The validity, effect, and enforceability of this waiver of class action lawsuit and class-wide Arbitration is to be determined solely by a court of competent jurisdiction located within the Cheyenne Rivers Sioux Tribal Nation, and not by the arbitrator. If the court refuses to enforce the class-wide Arbitration waiver, or if the arbitrator fails or refuses to enforce the waiver of class-wide Arbitration, the parties agree that the Dispute will proceed in tribal court and will be decided by a tribal court judge, sitting without a jury, under applicable court rules and procedures.

**Applicable Law and Judicial Review.** THIS ARBITRATION PROVISION IS MADE PURSUANT TO A TRANSACTION INVOLVING THE INDIAN COMMERCE CLAUSE OF THE CONSTITUTION OF THE UNITED STATES OF AMERICA, AND SHALL BE GOVERNED BY THE LAW OF THE CHEYENNE RIVER SIOUX TRIBE. The arbitrator will apply the laws of the Cheyenne River Sioux Tribal Nation and the terms of this Agreement. The arbitrator must apply the terms of this Arbitration agreement, including without limitation the waiver of class-wide Arbitration. The arbitrator will make written findings and the arbitrator's award may be filed with any court having jurisdiction. The Arbitration award will be supported by substantial evidence and must be consistent with this Agreement and applicable law or may be set aside by a court upon judicial review.

**Other Provisions.** This Arbitration provision will survive: (i) termination or changes in this Agreement, the Account, or the relationship between us concerning the Account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of my Note, or any amounts owed on my account, to any other person or entity. This Arbitration provision benefits and is binding upon you, your respective heirs, successors and assigns. It also benefits and is binding upon us, our successors and assigns, and related third parties. The Arbitration Provision continues

Case 0:13-cv-60066-JIC   Document 56   Entered on FLSD Docket 04/29/2013   Page 20 of 63
Case 0:13-cv-60066-JIC   Document 53-1   Entered on FLSD Docket 04/23/2013   Page 10 of 11

Page 6 of 7

in full force and effect, even if your obligations have been paid or discharged through bankruptcy. The Arbitration Provision survives any termination, amendment, expiration, or performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing. If any of this Arbitration Provision is held invalid, the remainder shall remain in effect

**Right to Opt Out.** If you do not wish your account to be subject to this Arbitration Agreement, you must advise us in writing at P.O. Box 370, Timber Lake, South Dakota, 57565, or via e-mail at info@westernsky.com. You must clearly print or type your name and account number and state that you reject Arbitration. You must give written notice; it is not sufficient to telephone us. We must receive your letter or e-mail within sixty (60) days after the date your loan funds or your rejection of Arbitration will not be effective. In the event you opt out of Arbitration, any disputes hereunder shall nonetheless be governed under the laws of the Cheyenne River Sioux Tribal Nation.

**THIS LOAN CARRIES A VERY HIGH INTEREST RATE. YOU MAY BE ABLE TO OBTAIN CREDIT UNDER MORE FAVORABLE TERMS ELSEWHERE. EVEN THOUGH THE TERM OF THE LOAN IS 37 MONTHS, WE STRONGLY ENCOURAGE YOU TO PAY OFF THE LOAN AS SOON AS POSSIBLE. YOU HAVE THE RIGHT TO PAY OFF ALL OR ANY PORTION OF THE LOAN AT ANY TIME WITHOUT INCURRING ANY PENALTY. YOU WILL, HOWEVER, BE REQUIRED TO PAY ANY AND ALL INTEREST THAT HAS ACCRUED FROM THE FUNDING DATE UNTIL THE PAYOFF DATE.**

CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS AGREEMENT BEFORE YOU SIGN IT. YOU ARE ENTITLED TO A COPY OF THIS AGREEMENT.

| | |
|---|---|
| ✓ | YOU HAVE READ AND UNDERSTAND THE ARBITRATION SECTION OF THIS NOTE AND AGREE TO BE BOUND BY THE TERMS AND CONDITIONS OF THAT SECTION. |
| ✓ | **YOU HAVE READ ALL OF THE TERMS AND CONDITIONS OF THIS PROMISSORY NOTE AND DISCLOSURE STATEMENT AND AGREE TO BE BOUND THERETO. YOU UNDERSTAND AND AGREE THAT YOUR EXECUTION OF THIS NOTE SHALL HAVE THE SAME LEGAL FORCE AND EFFECT AS A PAPER CONTRACT.** |

**CONSUMER COMPLAINTS** - If you have a complaint about our loan, please let us know. You can contact us at P.O. Box 370, Timber Lake, South Dakota, 57656, telephone (877) 860-2274.

### ELECTRONIC FUNDS AUTHORIZATION AND DISCLOSURE

You hereby authorize us to initiate electronic funds transfers ("EFTs") for withdrawal of your scheduled loan payment from your checking account on or about the FIRST day of each month. You further authorize us to adjust this withdrawal to reflect any additional fees, charges or credits to your account. We will notify you 10 days prior to any given transfer if the amount to be transferred varies by more than $50 from your regular payment amount. You also authorize us to withdraw funds from your account on additional days throughout the month in the event you are delinquent on your loan payments. You understand that this authorization and the services undertaken in no way alters or lessens your obligations under the Loan Agreement. You understand that you can cancel this authorization at any time (including prior to your first payment due date) by sending written notification to us. Cancellations must be received at least three business days prior to the applicable due date. This EFT debit authorization will remain in full force and effect until the earlier of the following occurs: (i) you satisfy all of your payment obligations under this Loan

Agreement or (ii) you cancel this authorization.

In addition, you hereby authorize us and our agents to initiate a wire transfer credit to your bank account to disburse the proceeds of this Loan. You acknowledge that the origination of the wire transfer to my bank account must comply with applicable provisions of tribal law.

| ☑ | YOU UNDERSTAND OUR PAYMENT COLLECTION PROCEDURE AND AUTHORIZE ELECTRONIC DEBITS FROM YOUR BANK ACCOUNT. |
|---|---|

Click here to print out a copy of this document for your records.

# EXHIBIT B

**Case No.: 0:13-cv-60066-CIV-COHN-SELTZER**

Chambers. *See Plaintiff's Notice*, Exhibit B. CashCall has the contractual right to respond to Inetianbor's arbitration demand; moreover, it is wholly improper for Inetianbor to initiate what appears to be *ex parte* communications with the decisional body.

In any event, there are three ways this problem could be resolved:

*First*:    The parties can determine whether three members of the Tribal Council are available to conduct the arbitration, which is the option that Inetianbor appears to have tried to select. *See Plaintiff's Notice* at Exhibit A.

*Second*:    The parties can determine whether a single Tribal Elder is available for arbitration, which is an alternative specified in the Loan Agreement's "Choice of Arbitrator" provision. *See* Doc 16-2, pg. 6.

*Third*:    CashCall will agree that the matter can be referred to JAMS or the AAA if Inetianbor chooses. Western Sky changed its arbitration provision in March 2011 – just two months after Inetianbor entered into his Loan Agreement, *see id.* at Doc 16-2, pg. 3 – to include JAMS and the AAA as express arbitration options selectable by the borrower, with a third option being an organization agreed to by the parties. That version of the "Choice of Arbitrator" provision reads:

> **Choice of Arbitrator.** Any party to a dispute, including a Holder or its related third parties, may send the other party written notice by certified mail return receipt requested at the address appearing at the top of this Agreement of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed. Regardless of who demands arbitration, you shall have the right to select any of the following arbitration organizations to administer the arbitration: the American Arbitration Association (1-800-778-7879) http://www.adr.org; JAMS (1-800-352-5267) http://www.jamsadr.com; or an arbitration organization agreed upon by you and the other parties to the Dispute. The arbitration will be governed by the chosen arbitration organization's rules and procedures applicable to consumer disputes, to the extent that those rules and procedures do not contradict either the law of the Cheyenne River Sioux Tribe or the express terms of this Agreement to Arbitrate, including the limitations on the Arbitrator below. The party receiving notice of Arbitration will respond in writing by certified mail return receipt requested within twenty (20) days. You understand that if you demand Arbitration, you

PLEASE SEE NEXT PAGE



must inform us of your demand and of the arbitration organization you have selected. You also understand that if you fail to notify us, then we have the right to select the arbitration organization. Any arbitration under this Agreement may be conducted either on tribal land or within thirty miles of your residence, at your choice, provided that this accommodation for you shall not be construed in any way (a) as a relinquishment or waiver of the Cheyenne River Sioux Tribe's sovereign status or immunity, or (b) to allow for the application of any law other than the law of the Cheyenne River Sioux Tribe of Indians to this Agreement.

Even though this provision is not applicable to Inetianbor's Loan Agreement, CashCall is willing to agree with Inetianbor to arbitrate under the terms of this provision.

CashCall, however, is _not_ willing to allow Inetianbor to evade his arbitration commitment, especially through the improper tactics he has chosen. CashCall notes that, under Inetianbor's Loan Agreement's "Choice of Arbitrator" provision, CashCall now has the unilateral right to choose the manner of arbitration because Inetianbor's notification is inadequate (as well as improper). *See* Doc 16-2, pg. 6 ("You also understand that if you fail to notify us, then we have the right to select the Arbitrator." (emphasis added)). CashCall is not exercising that right at this time in the hopes that a mutually-agreeable solution can be reached; however, CashCall reserves the right to do so in the event Inetianbor will not agree to an arbitrator.

### III. CONCLUSION

In sum, *Plaintiff's Notice of Compliance with Order Compelling Arbitration and Report Regarding the Status of the Case* fails to show "compliance with the order compelling arbitration." Accordingly, Inetianbor's request that the Court allow him to evade his arbitration commitment and litigate his claims should be rejected.

# EXHIBIT C

**Case No.: 0:13-cv-60066-CIV-COHN-SELTZER**

# WESTERN SKY CONSUMER LOAN AGREEMENT

| Loan No.: | ▓▓▓▓▓ | Date of Note: | July 19, 2011 |
|---|---|---|---|
| | | Expected Funding Date: | July 19, 2011 |
| Lender: | Western Sky Financial, LLC | Borrower: | ▓▓▓▓▓▓ |
| Address: | P.O. Box 370 Timber Lake, SD 57656 | Address: | ▓▓▓▓▓▓ |

**This Loan Agreement is subject solely to the exclusive laws and jurisdiction of the Cheyenne River Sioux Tribe, Cheyenne River Indian Reservation.** By executing this Loan Agreement, you, the borrower, hereby acknowledge and consent to be bound to the terms of this Loan Agreement, consent to the sole subject matter and personal jurisdiction of the Cheyenne River Sioux Tribal Court, and that no other state or federal law or regulation shall apply to this Loan Agreement, its enforcement or interpretation.

You further agree that you have executed the Loan Agreement as if you were physically present within the exterior boundaries of the Cheyenne River Indian Reservation, a sovereign Native American Tribal Nation; and that this Loan Agreement is fully performed within the exterior boundaries of the Cheyenne River Indian Reservation, a sovereign Native American Tribal Nation.

In this Loan Agreement, the words "you" and "your" mean the person signing as a borrower. "We," "us," "our," and "Lender" mean Western Sky Financial, LLC, a lender authorized by the laws of the Cheyenne River Sioux Tribal Nation and the Indian Commerce Clause of the Constitution of the United States of America, and any subsequent holder of this Note ("Western Sky").

TRUTH IN LENDING DISCLOSURES: The disclosures below are provided to you so that you may compare the cost of this loan to other loan products you might obtain in the United States. Our inclusion of these disclosures does not mean that we consent to application of state or federal law to us, to the loan, or this Loan Agreement.

## TRUTH IN LENDING ACT DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE *The cost of your credit as a yearly rate* | FINANCE CHARGE *The dollar amount the credit will cost you* | AMOUNT FINANCED *The amount of credit provided to you* | TOTAL OF PAYMENTS *The amount you will have paid after all payments are made as scheduled* |
|---|---|---|---|
| 139.13 % | $11,441.37 | $2,525.00 | $13,966.37 |

| PAYMENT SCHEDULE |
|---|
| One payment of $126.75 on August 01, 2011. |
| 47 monthly payments of $294.46 beginning on September 01, 2011. |

**Late Charge:**  If a payment is more than 15 days late, you will be charged $29.00.

**Prepayment:**  If you pay off this loan early, you will not have to pay any penalty.

Please see the remainder of this document for additional information about nonpayment, default and any required repayment in full before the scheduled date.

| ITEMIZATION OF AMOUNT FINANCED | |
|---|---|
| Amount Financed: | $2,525.00 |
| Amount Paid to Borrower Directly: | $2,525.00 |
| Prepaid Finance Charge/Origination Fee: | $75.00 |

You promise to pay to the order of Western Sky or any subsequent holder of this Note the sum of **$2,600.00**, together with interest calculated at **135.00 %** per annum and any outstanding charges or late fees, until the full amount of this Note is paid. You promise to repay this loan by making, at a minimum, the payments described on the payment schedule listed above.

Payments will be applied first to any outstanding charges or late fees, then to earned interest and finally to principal. The payment schedule described above may change in the event you do not make all payments as scheduled or in the event you accrue any fees.

Interest is calculated on a 360/360 simple interest basis. This means that interest is calculated by dividing the annual Interest Rate by 360, multiplying that number by the outstanding principal balance, and multiplying that number by the number of days the principal balance is outstanding.

You may prepay all or any part of the principal without penalty.

If you fail to make any payment due hereunder, the holder of this Note shall have the right, after a 30-day grace period, to declare this note to be immediately due and payable. If you file for an assignment for the benefit of creditors, or for bankruptcy, the holder of this Note shall have the right to declare this Note to be immediately due and payable.

Except as may be provided in the "Arbitration" section of this Note, if we are required to employ an attorney at law to collect any amounts due hereunder, you will be required to pay the reasonable fees of such attorney to protect our interest or to take any other action required to collect the amounts due hereunder.

The Prepayment charge of 1000% above is 10% of amount to loan origination and is not subject to rebate upon prepayment or acceleration of this Note.

**LATE FEES.** You will be subject to a late fee of $29.00 if you fail to make your payment within 15 days of the due date. We can collect any late fees immediately via Electronic Funds Transfer (EFT) from your bank account.

**INSUFFICIENT FUNDS.** You will be subject to a fee of $29.00 if any payment you make is returned by your bank for insufficient funds.

**E-SIGN/ELECTRONIC COMMUNICATIONS.** Although federal law does not apply to this Agreement, this Note is in original format an electronic document fully compliant with the Electronic Signatures in Global and National Commerce Act (E-SIGN) and other applicable laws and regulations, and the one, true original Note is retained electronically by us. All other versions hereof, whether electronic or in tangible format, constitute facsimiles or reproductions only. You understand that you have previously consented to receive all communications from us, including but not limited to all required disclosures, electronically.

**CREDIT REPORTS.** You agree that we may obtain credit reports on you on an ongoing basis as long as this loan remains in effect. You also authorize us to report information concerning this account to credit bureaus and anyone else we believe in good faith has a legitimate need for such information. Late payments, missed payments, or other defaults on this account may be reflected in your credit report.

**CALL MONITORING/RECORDING.** You understand that, from time to time, we may monitor or record telephone calls between us for quality assurance purposes. You expressly consent to have your calls monitored or recorded.

**TELEPHONE CALLS.** You hereby agree that in the event we need to contact you to discuss your account or the repayment of your loan, we may telephone you at any number, including any cell phone number provided, and that we may leave an autodialed or prerecorded message or use other technology to make that contact or to communicate to you the status of your account.

**VERIFICATION.** You authorize us to verify all of the information you have provided in obtaining approval of this Loan.

**GOVERNING LAW.** This Agreement is governed by the Indian Commerce Clause of the Constitution of the United States of America and the laws of the Cheyenne River Sioux Tribe. We do not have a presence in South Dakota or any other states of the United States. Neither this Agreement nor Lender is subject to the laws of any state of the United States of America. By executing this Agreement, you hereby expressly agree that this Agreement is executed and performed solely within the exterior boundaries of the Cheyenne River Indian Reservation, a sovereign Native American Tribal Nation. You also expressly agree that this Agreement shall be subject to and construed in accordance with the provisions of the laws of the Cheyenne River Sioux Tribe, and that no United States state or federal law applies to this Agreement. You agree that by entering into this Agreement you are voluntarily availing yourself of the laws of the Cheyenne River Sioux Tribe, a sovereign Native American Tribal Nation, and that your execution of this Agreement is made as if you were physically present within the exterior boundaries of the Cheyenne River Indian Reservation, a sovereign Native American Tribal Nation.

**ASSIGNMENT.** We may assign or transfer this Loan Agreement or any of our rights under it at any time to any party.

**WAIVER OF JURY TRIAL AND ARBITRATION.**

**PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.** Unless you exercise your right to opt-out of arbitration in the manner described below, any dispute you have with Western Sky or anyone else under this loan agreement will be resolved by binding arbitration. Arbitration replaces the right to go to court, including the right to have a jury, to engage in discovery (except as may be provided in the arbitration rules), and to participate in a class action or similar proceeding. In Arbitration, a dispute is resolved by an arbitrator instead of a judge or jury. Arbitration procedures are simpler and more limited than court procedures. Any Arbitration will be limited to the dispute between yourself and the holder of the Note and will not be part of a class-wide or consolidated Arbitration proceeding.

**Agreement to Arbitrate.** You agree that any Dispute, except as provided below, will be resolved by Arbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement.

**Arbitration Defined.** Arbitration is a means of having an independent third party resolve a Dispute. A "Dispute" is any controversy or claim between you and Western Sky or the holder or servicer of the Note. The term Dispute is to be given its broadest possible meaning and includes, without limitation, all claims or demands (whether past, present, or future, including events that occurred prior to the opening of this Account), based on any legal or equitable theory (tort, contract, or otherwise), and regardless of the type of relief sought (i.e. money, injunctive relief, or declaratory relief). A Dispute includes, by way of example and without limitation, any claim based upon marketing or solicitations to obtain the loan and the handling or servicing of my account whether such Dispute is based on a tribal, federal or state constitution, statute, ordinance, regulation, or common law, and including any issue concerning the validity, enforceability, or scope of this loan or the Arbitration agreement. For purposes of this Arbitration agreement, the term "the holder" shall include Western Sky or the then-current note holder's employees, officers, directors, attorneys, affiliated companies, predecessors, and assigns, as well as any marketing, servicing, and collection representatives and agents.

**Choice of Arbitrator.** Any party to a dispute, including related third parties, may send the other party written notice by certified mail return receipt requested at the address appearing at the top of this Loan Agreement of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed. Arbitration shall be conducted in the Cheyenne River Sioux Tribal Nation by a panel of three Tribal Elders and shall be conducted in accordance with the Cheyenne River Sioux Tribal Nation's consumer rules and the terms of this Agreement. You may appear at Arbitration via telephone or video conference, and you will not be required to travel to the Cheyenne River Sioux Tribal Nation. The party receiving notice of Arbitration will respond in writing by certified mail return receipt requested within twenty (20) days. You understand that if you demand Arbitration, you must inform us of your demand of the Arbitrator you have selected. You also understand that if you fail to notify us, then we have the right to select the Arbitrator.

**Cost of Arbitration.** We will pay the filing fee and any costs or fees charged by the arbitrator regardless of which party initiates the Arbitration. Except where otherwise provided by the law of the Cheyenne River Sioux Tribal Nation, each party will be responsible for its own attorneys' fees and other expenses. Unless prohibited by law, the arbitrator may award fees, costs, and reasonable attorneys' fees to the party who substantially prevails in the Arbitration.

**Waiver of Rights.** YOU HEREBY AGREE THAT YOU ARE WAIVING YOUR RIGHT TO A JURY TRIAL, TO HAVE A COURT DECIDE YOUR DISPUTE, TO PARTICIPATE IN A CLASS ACTION LAWSUIT, AND TO CERTAIN DISCOVERY AND OTHER PROCEDURES THAT ARE AVAILABLE IN A LAWSUIT. The arbitrator has the ability to award all remedies available by statute, at law, or in equity to the prevailing party, except that the parties agree that the arbitrator has no authority to conduct class-wide proceedings and will be restricted to resolving the individual disputes between the parties. The validity, effect, and enforceability of this waiver of class action lawsuit and class-wide Arbitration is to be determined solely by a court of competent jurisdiction located within the Cheyenne Rivers Sioux Tribal Nation, and not by the arbitrator. If the court refuses to enforce the class-wide Arbitration waiver, or if the arbitrator fails or refuses to enforce the waiver of class-wide Arbitration, the parties agree that the Dispute will proceed in tribal court and will be decided by a tribal court judge, sitting without a jury, under applicable court rules and procedures.

**Applicable Law and Judicial Review.** THIS ARBITRATION PROVISION IS MADE PURSUANT TO A TRANSACTION INVOLVING THE INDIAN COMMERCE CLAUSE OF THE CONSTITUTION OF THE UNITED STATES OF AMERICA, AND SHALL BE GOVERNED BY THE LAW OF THE CHEYENNE RIVER SIOUX TRIBE. The arbitrator will apply the laws of the Cheyenne River Sioux Tribal Nation and the terms of this Agreement. The arbitrator must apply the terms of this Arbitration agreement, including without limitation the waiver of class-wide Arbitration. The arbitrator will make written findings and the arbitrator's award may be filed in the Cheyenne River Sioux Tribal Court, which has jurisdiction in this matter. The Arbitration award will be supported by substantial evidence and must be consistent with this Agreement and applicable law or may be set aside by a court upon judicial review.

**Small Claims Exception.** All parties, including related third parties, shall retain the right to seek adjudication in a small claims tribunal in the Cheyenne River Sioux Tribal Small Claims Court for disputes within the scope of such tribunal's jurisdiction. Any dispute, which cannot be adjudicated within the jurisdiction of a small claims tribunal, shall be resolved by binding arbitration. Any appeal of a judgment from a small claims tribunal shall be resolved by binding arbitration.

**Other Provisions.** This Arbitration provision will survive: (i) termination or changes in this Agreement, the Account, or the relationship between us concerning the Account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of my Note, or any amounts owed on my account, to any other person or entity. This Arbitration provision benefits and is binding upon you, your respective heirs, successors and assigns. It also benefits and is binding upon us, our successors and assigns, and related third parties. The Arbitration Provision continues in full force and effect, even if your obligations have been paid or discharged through bankruptcy. The Arbitration Provision survives any termination, amendment, expiration, or performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing. If any of this Arbitration Provision is held invalid, the remainder shall remain in effect

**Right to Opt Out.** If you do not wish your account to be subject to this Arbitration Agreement, you must advise us in writing at P.O. Box 370, Timber Lake, South Dakota, 57565, or via e-mail at info@westernsky.com. You must clearly print or type your name and account number and state that you reject Arbitration. You must give written notice; it is not sufficient to telephone us. We must receive your letter or e-mail within sixty (60) days after the date your loan funds or your rejection of Arbitration will not be effective. In the event you opt out of Arbitration, any disputes hereunder shall nonetheless be governed under the laws of the Cheyenne River Sioux Tribal Nation.

**THIS LOAN CARRIES A VERY HIGH INTEREST RATE. YOU MAY BE ABLE TO OBTAIN CREDIT UNDER MORE FAVORABLE TERMS ELSEWHERE. EVEN THOUGH THE TERM OF THE LOAN IS 48 MONTHS, WE STRONGLY ENCOURAGE YOU TO PAY OFF THE LOAN AS SOON AS POSSIBLE. YOU HAVE THE RIGHT TO PAY OFF ALL OR ANY PORTION OF THE LOAN AT ANY TIME WITHOUT INCURRING ANY PENALTY. YOU WILL, HOWEVER, BE REQUIRED TO PAY ANY AND ALL INTEREST THAT HAS ACCRUED FROM THE FUNDING DATE UNTIL THE PAYOFF DATE.**

CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS AGREEMENT BEFORE YOU SIGN IT. YOU ARE ENTITLED TO A COPY OF THIS AGREEMENT.

| | |
|---|---|
| ☑ | YOU HAVE READ AND UNDERSTAND THE ARBITRATION SECTION OF THIS NOTE AND AGREE TO BE BOUND BY THE TERMS AND CONDITIONS OF THAT SECTION. |
| ☑ | **YOU HAVE READ ALL OF THE TERMS AND CONDITIONS OF THIS PROMISSORY NOTE AND DISCLOSURE STATEMENT AND AGREE TO BE BOUND THERETO. YOU UNDERSTAND AND AGREE THAT YOUR EXECUTION OF THIS NOTE SHALL HAVE THE SAME LEGAL FORCE AND EFFECT AS A PAPER CONTRACT.** |

**CONSUMER COMPLAINTS** - If you have a complaint about our loan, please let us know. You can contact us at P.O. Box 370, Timber Lake, South Dakota, 57656, telephone (877) 860-2274.

### ELECTRONIC FUNDS AUTHORIZATION AND DISCLOSURE

You hereby authorize us to initiate electronic funds transfers ("EFTs") for withdrawal of your scheduled loan payment from your checking account on or about the FIRST day of each month. You further authorize us to adjust this withdrawal to reflect any additional fees, charges or credits to your account. We will notify you 10 days prior to any given transfer if the amount to be transferred varies by more than $50 from your regular payment amount. You also authorize us to withdraw funds from your account on additional days throughout the month in the event you are delinquent on your loan payments. You understand that this authorization and the services undertaken in no way alters or lessens your obligations under the Loan Agreement. You understand that you can cancel this authorization at any time (including prior to your first payment due date) by sending written notification to us. Cancellations must be received at least three business days prior to the applicable due date. This EFT debit authorization will remain in full force and effect until the earlier of the following occurs: (i) you satisfy all of your payment obligations under this Loan Agreement or (ii) you cancel this authorization.

In addition, you hereby authorize us and our agents to initiate a wire transfer credit to your bank account to disburse the proceeds of this Loan.

| | |
|---|---|
| ☑ | YOU UNDERSTAND OUR PAYMENT COLLECTION PROCEDURE AND AUTHORIZE ELECTRONIC DEBITS FROM YOUR BANK ACCOUNT. |

Click here to print out a copy of this document for your records.

# EXHIBIT D

**Case No.: 0:13-cv-60066-CIV-COHN-SELTZER**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

Case No.: 0:13-cv-60066-CIV-COHN-SELTZER

ABRAHAM INETIANBOR,

       **Plaintiff,**

vs.

CASH CALL, INC.,

       **Defendant.**

_____/

## PLAINTIFF ABRAHAM INETIANBOR'S INITIAL DISCLOSURES

**COMES NOW,** Plaintiff, Abraham Inetianbor and pursuant to Fed. R. Civ. P. 26(a)(1) provides the following initial disclosures:

**A.**     The name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information.

**PLAINTIFF AND SPOUSE:**

**Abraham Inetianbor**
4271 NW 5th Street, # 247
Plantation, FL 33317



4271 NW 5th Street, # 247
Plantation, FL 33317

1

**REPRESENTATIVES OF DEFENDANT:**

**Paul J. Reddam**

1600 South Douglass Road,

Anaheim, CA 92806

**Dan Baren**

1600 South Douglass Road,

Anaheim, CA 92806

**Elissa Chavez**

1600 South Douglass Road,

Anaheim, CA 92806

There may be other representatives of Cash Call that will be called if discovered during the

pendency of the lawsuit.

**DEFENDANT'S ATTORNEYS:**

**Andrew M. Shapiro**

1 S.E. Third Avenue, Suite 2500

Miami, FL 33131

**Christopher S. Carver**

1 S.E. Third Avenue, Suite 2500

Miami, FL 33131

**POTENTIAL WITNESSES:**

There may be other witnesses that will be called if discovered during the pendency of the

lawsuit.

2

**B.**     A copy of, or a description by category and location of, all documents, data compilations, and tangible things in the possession, custody, or control of the party that the disclosing party may use to support its claims or defenses, unless solely for impeachment;

**C.**     A computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of damages suffered;

**D.**     For inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.

A complete copy of all records, payments, and bills, including the detailed demand package has been provided to the defendant, along with a copy of the detailed narrative demand package. Discovery is ongoing.

None as to Plaintiff.

Submitted this 5th, day of April, 2013

By: _____

**Abraham Inetianbor**
**4271 NW 5th Street, # 247**
**Plantation, FL 33317**
**(954) 616 8291**

**[ Plaintiff *pro se]*

3

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the forgoing was served as indicated below on April 5, 2013 on all counsel or parties of record on the following Service List.

_Abraham Inetianbor_

Abraham Inetianbor

## SERVICE LIST

**Abraham Inetianbor** *(pro se plaintiff)*
**4271 NW 5th Street, # 247**
**Plantation, FL 33317**
**(954) 616 8291**

**Akerman Senterfitt** *(attorney for defendant)*
**(by USPS mail)**
**1 S.E. Third Avenue, Suite 2500**
**Miami, FL 33131**
**(305) 374 5600**

Sworn to before me this 5th day of April , 20013

JUDITH CAVANAGH
Notary Public. State of Florida
Commission# EE 195548
My comm. expires May 3, 2016

Notary Public

4

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

Case No.: 0:13-cv-60066-CIV-COHN-SELTZER

ABRAHAM INETIANBOR,

      **Plaintiff,**

vs.

CASH CALL, INC.,

      **Defendant.**

_____/

## PLAINTIFF'S REQUESTS FOR ADMISSIONS, INTERROGATORIES, AND FOR PRODUCTION OF DOCUMENTS

TO:  **DEFENDANTS** by and through their attorney of record, Andrew M. Shapiro and Christopher S. Carver, Plaintiff hereby requests, pursuant to Discovery Rules 33, 34, and 36, that the Defendant answer, under oath, the following requests for admissions, interrogatories, and motions for production within thirty (30) days of service of this request as required by law.

It is understood that the answers will contain the composite knowledge of the Defendant and any of the Defendant's representatives or agents. These interrogatories shall be deemed continuing, and if additional information should be discovered after originally answering them with respect to any of the matters inquired about, then it is expected that such information will be promptly revealed to the Plaintiff as required by law.

1

## DEFINITIONS

**1.** The term "person" as used in these Interrogatories means all individuals and entities, including any individual, firm, corporation, partnership, association, company, receiver, joint venture, estate, trust, or other form of entity, including the parties to this litigation and their officers, agents, employees and representatives.

**2.**      The term "document" as used in these interrogatories means any written, printed, typed, recorded, or graphic matter of every type and description, however and by whomever prepared, produced, reproduced, disseminated, or made, in your actual or constructive possession, custody, or control, including, but not limited to, all writings, letters, minutes, bulletins, correspondence, telegrams, memoranda, notes, instructions, literature, work assignments, notebooks, records, sales forms, agreements, contracts, notations of telephone or personal conversations or conferences, interoffice communications, microfilm, circulars, pamphlets, advertisements, catalogs, studies, notices, summaries, reports, books, invoices, graphs, photographs, drafts, data sheets, data compilations, computer data sheets, computer data compilations, work sheets, statistics, speeches and other writings, tape recordings, transcripts of tape recordings, phonograph records, data compilations from information which can be obtained or can be translated through detection into reasonably usable form, charts, minutes, checks, check stubs, delivery tickets, bills of lading, invoices, flow sheets, price lists, quotations, bulletins, permits, forms, data processing cards, data sheets, surveys, indexes, tapes, videotapes, film, periodicals, circulars, manuals, or any other tangible thing.

2

Additionally, the term "document" includes any and all information retained through computer references, and any and all other sources, including, but not limited to any database maintained by defendant or any of its subsidiaries.  This includes all documents and data existing in electronic form (in the broadest sense consistent with Fed. R. Civ. P. 34(a) or its state law equivalent, Nebraska Rules of Discovery 33 and 34), including e-mail, electronic peer-to-peer messages, word processing documents, spreadsheets, electronic slide presentations, databases, and other electronic data items, now existing or hereafter created, containing information that can reasonably be anticipated to be relevant to facts at issue in the litigation ("discoverable electronic information").

3.    The term "identify" as used in these Interrogatories means to set forth:

(a)    When used with referenced to a person, firm, or corporation;

(i)    The full name;

(ii)    The present or last known business address and if an individual;

(iii)    The present or last known home address; and

(iv)    The position and title, if any, and a description of his or her duties and responsibilities in connection with that position.

3

(b)      When used with reference to a document:

(i)      The date on the document and the date the document was prepared;

(ii)     The identity of person preparing the document and that person's name and address;

(iii)    The identity of the person for whom the document was prepared;

(iv)     The name and address of each person to whom it addressed;

(v)      A description of the document;

(vi)     the present location of the document; and

(vii)    the contents and subject matter of the document.

4.       As used in these requests, the terms "you", or "your", and "yours" refer to the individual defendant answering these Interrogatories and its officers, employees, agents, representatives, divisions, subdivisions, affiliated companies, parent companies, and any and all other persons acting or purporting to act on its behalf.

## REQUEST FOR ADMISSIONS

1.       REQUEST FOR ADMISSION      Please admit the plaintiff obtained a consumer loan of $2600.00 less $75.00 loan fee from the defendant in Jan. 2011, and the loan does not originate from the Cheyenne River Sioux Tribe and as such not governed by its laws.

**RESPONSE:**

4

**2.**      REQUEST FOR ADMISSION      Please admit the plaintiff made a total payment (*first to last*) of $3252.65, to no one else but the defendant which is the full principle plus about 30% interest rate paid between January 2011 and December 2011 without being late or in default.

**RESPONSE:**

**3.**      REQUEST FOR ADMISSION      Please admit the loan was reported to major credit bureaus including Equifax Information Services by the defendant as charged off, three late payments, and also reported the first date of default to be in December 2011.

**RESPONSE:**

**4.**      REQUEST FOR ADMISSION      Please admit that the plaintiff disputed this incorrect information several times with the credit bureaus who gave notice to the defendant of the dispute and defendant refusal to act accordingly as required by law.

**RESPONSE:**

**5.**      REQUEST FOR ADMISSION      Please admit the defendant's actions defamed plaintiff which in part caused plaintiff to be denied multiple loan applications including line of credit denial by chase and regions banks.

5

**RESPONSE:**

**6.**     REQUEST FOR ADMISSION    Please admit that the defendant has appeared, went

through trial, and found guilty of several counts in similar actions including usury in a United

States court regardless of the electronic agreement accepted by consumers just like the one being

exhibited by the defendant.

**RESPONSE:**

**7.**     REQUEST FOR ADMISSION    Please admit that plaintiff in good faith has made

several attempts before and after filing this action. And defendant misled the court into

compelling arbitration at the Cheyenne River Sioux Tribe and also attempted to mislead the court

into compelling a second arbitration by falsely creating a statement that did not exist in the "new

agreement" about AAA and JAMS.

**RESPONSE:**

**8.**     REQUEST FOR ADMISSION    Please admit that the plaintiff's claim is not barred by

the Statute of Limitations.

**RESPONSE:**

6

**9.**     REQUEST FOR ADMISSION    Please admit that the defendant is in a "rent-a-tribe"

scheme or agreement with Western Sky Financial, LLC to skirt the law and that the Cheyenne

River Sioux Tribe is in no way involved in the loan process as suggested by the defendant.

**RESPONSE:**


**10.**     REQUEST FOR ADMISSION    Please admit that the defendant and Paul J. Reddam in

his capacity as owner of Cash Call, Inc. but not listed as a defendant in this action, was fully

aware of plaintiff's willingness to resolve this issue out of court and instead choose to intimidate

plaintiff in order to prevent more future actions like this one.

**RESPONSE:**


## INTERROGATORIES


**1.**     INTERROGATORY    Please specify the following information even if Request for

Admission is made above:

a.     Name and phone number of all witnesses to the loan transaction and damages alleged in

Plaintiff's petition;

b.      Name and phone number of all employees of Cash Call, Inc. that were directly involved in the process of the loan from inception through on or about the date of the damages alleged in plaintiff's petition;

c.      Name and phone number of defendant's attorney on or about the date of the damages alleged in plaintiff's petition.

**ANSWER:**

**2.      INTERROGATORY**   Please provide the names and addresses of all witnesses the defendant expects to call at trial of this matter.

**ANSWER:**

**3.      INTERROGATORY**   Has the Defendant or its compensation insurer requested that the Plaintiff consult with or that the plaintiff's complaint be reviewed by a mediator or a third party?

**ANSWER:**

**4.      INTERROGATORY**   If the answer to the preceding Interrogatory is affirmative, please state:

8

(a)     The date of such review;

(b)     The nature of such review;

(c)     The name and address of the person or persons providing the review or conducting the

mediation.

**ANSWER:**

5.     INTERROGATORY   In the event you have denied any Request For Admission, please

set forth the name and phone number of all persons who have knowledge or provided

information relied upon for said denial and your basis for each denial.

**ANSWER:**

6.     INTERROGATORY    Please set forth the amount of each amount of damage request

which you have received concerning the Plaintiff's complaint since the date of this action.

**ANSWER:**

7.     INTERROGATORY    Please itemize the damages (*if any*) which have been

compensated and the date of compensation.

**ANSWER:**

9

**8.**    INTERROGATORY    If the defendant is denying payment of certain damages in connection with the claims made in the plaintiff's Petition, please list which damages defendant is refusing to pay.

**ANSWER:**

**9.**    INTERROGATORY    Please set forth a true and correct listing of all amounts (USD) paid by the Defendant to the Plaintiff in damages (*if any*) and the dates or periods for which such payments were made.

**ANSWER:**

**10.**    INTERROGATORY    Please provide a list of exhibits the defendant intends to offer at trial of this matter.

**ANSWER:**

**11.**    INTERROGATORY    Do you maintain any electronic documents in any way referencing the account or damages which are the subject of this litigation?

**ANSWER:**

## REQUEST FOR PRODUCTION

**1.**      REQUEST FOR PRODUCTION     Please produce to the plaintiff for review all agreement between defendant Cash Call, Inc., WS Funding, LLC and Western Sky Financial, LLC and Delbert Services Corporation.

**RESPONSE:**


**2.**      REQUEST FOR PRODUCTION   Please review the exhibit list for the Plaintiff and produce any documents relating to the following that is in your possession and not already on this list:

a.      All information including records, credit report reports, correspondence, and bills;

b.      Application for employment and pre and post-employment training of defendant's employees;

c.      All First reports of damages and disputes received from all credit bureaus;

d.      All of defendant's response to the credit bureaus dispute;

e.      All supporting documents provided in response to the dispute;

f.      Plaintiff's payment record preceding the filing date in question;

g.      Transcribed recorded statement of plaintiff;

11

h.      Employee personnel file.

**RESPONSE:**

**3.**     REQUEST FOR PRODUCTION     Please produce any videotapes or other surveillance taken of plaintiff in the above-referenced matter.

**RESPONSE:**

**4.**     REQUEST FOR PRODUCTION     Any and all memoranda, notes, reports, or other documents concerning the investigation of plaintiff's damages, which was written or compiled by someone not then acting on your behalf.

**RESPONSE:**

**5.**     REQUEST FOR PRODUCTION     Any and all electronic mail ("e-mail") containing discoverable electronic information and a copy of the defendant's new agreement, which makes provision for AAA and JAMS as claimed on both Doc #39 and #43 by the defendant.

**RESPONSE:**

**6.**     REQUEST FOR PRODUCTION     Any and all word processing files, computer

presentations (e.g., PowerPoint slides), stand-alone databases (e.g., Access), spreadsheets (e.g.,

Excel) containing discoverable electronic information.

**RESPONSE:**

**7.**     REQUEST FOR PRODUCTION     Any and all electronically stored research and/or

reference literature and materials containing discoverable electronic information.

**RESPONSE:**

**8.**     REQUEST FOR PRODUCTION     Any and all copies of defendant's electronic

document and data retention policy designed to ensure the retention of defendant's discoverable

electronic information.

**RESPONSE:**

Submitted On: **April 23, 2013**

By: _____

**Abraham Inetianbor**
**4271 NW 5th Street, # 247**
**Plantation, FL 33317**
**(954) 616 8291**
**[ Plaintiff *pro se*]**

13

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the forgoing was served as indicated below on April 23, 2013 on all counsel or parties of record on the following Service List.

_____

Abraham Inetianbor

## SERVICE LIST

**Abraham Inetianbor** *(pro se plaintiff)*
**4271 NW 5th Street, # 247**
**Plantation, FL 33317**
**(954) 616 8291**


**Akerman Senterfitt** *(attorney for defendant)*
**(by USPS mail)**
**1 S.E. Third Avenue, Suite 2500**
**Miami, FL 33131**
**(305) 374 5600**

14

# EXHIBIT E

Case No.: 0:13-cv-60066-CIV-COHN-SELTZER

# DELBERT SERVICES CORPORATION

## Business Entity Information

| Status: | Active | File Date: | 1/24/2008 |
|---|---|---|---|
| Type: | Domestic Corporation | Entity Number: | E0043592008-2 |
| Qualifying State: | NV | List of Officers Due: | 1/31/2014 |
| Managed By: | | Expiration Date: | |
| NV Business ID: | NV20081664954 | Business License Exp: | 1/31/2014 |

## Registered Agent Information

| Name: | NATIONAL REGISTERED AGENTS, INC. OF NV | Address 1: | 311 S DIVISION ST |
|---|---|---|---|
| Address 2: | | City: | CARSON CITY |
| State: | NV | Zip Code: | 89703 |
| Phone: | | Fax: | |
| Mailing Address 1: | | Mailing Address 2: | |
| Mailing City: | | Mailing State: | NV |
| Mailing Zip Code: | | | |
| Agent Type: | Commercial Registered Agent - Corporation | | |
| Jurisdiction: | NEVADA | Status: | Active |

## Financial Information

| No Par Share Count: | 0 | Capital Amount: | $ 120.00 |
|---|---|---|---|
| Par Share Count: | 12,000.00 | Par Share Value: | $ 0.01 |

## Officers

Include Inactive Officers

### President - CESAR GUZMAN

| Address 1: | 1600 S DOUGLASS RD STE 250 | Address 2: | |
|---|---|---|---|
| City: | ANAHEIM | State: | CA |
| Zip Code: | 92806 | Country: | USA |
| Status: | Active | Email: | |

### Director - J PAUL REDDAM

| Address 1: | 1600 S DOUGLASS RD STE 250 | Address 2: | |
|---|---|---|---|
| City: | ANAHEIM | State: | CA |
| Zip Code: | 92806 | Country: | USA |
| Status: | Active | Email: | |



The Official Website of the Office of Consumer Affairs & Business Regulation (OCABR)

**Consumer Affairs and Business Regulation**

Home    Business    Banking    Banking Legal Resources    Enforcement Actions    2013 DOB Enforcement Actions

CashCall, Inc., Anaheim, CA & WS Funding, LLC, Anaheim, CA - Cease Order

# CashCall, Inc., Anaheim, CA & WS Funding, LLC, Anaheim, CA - Cease Order

By the Division of Banks

### COMMONWEALTH OF MASSACHUSETTS

Suffolk, SS.

COMMISSIONER OF BANKS
SMALL LOAN LICENSING
Docket No. 2013-010

CEASE ORDER

**In the Matter of
CASHCALL, INC.
Anaheim, CaliforniaAnaheim, California**

**&**

**WS FUNDING, LLC
Anaheim, California**

The Commissioner of Banks (Commissioner) is charged with the administration of Massachusetts General Laws chapter 140, sections 96 through 114A, inclusive and applicable regulations found at 209 CMR 20.00 *et seq.*, and 209 CMR 26.00 *et seq.*, relating to the licensing and regulation of small loan companies. The Commissioner is also charged with the administration of Massachusetts General Laws chapter 93, sections 24 through 24G and the Division's regulation 209 CMR 18.00 *et seq.*, relating to the registration of third party loan servicers. Pursuant to the authority granted by Massachusetts General Laws chapter 140 and Massachusetts General Laws chapter 93, sections 24 through 24G, the Commissioner has reviewed information relative to the activities of CASHCALL, INC., (CashCall) located at 1600 South Douglas Road, Anaheim, California and its wholly owned subsidiary WS FUNDING, LLC (WS Funding) to determine if CashCall and WS Funding have engaged in the business of, or are about to engage in, acts or practices constituting violations of Massachusetts General Laws chapter 140, and Massachusetts General Laws chapter 93, sections 24 through 24G. Based upon such review, the Commissioner hereby issues the following CEASE ORDER as a result of the findings alleged herein.

### A. FINDINGS OF FACT

1. The Division of Banks (Division), through the Commissioner, has jurisdiction over the licensing and regulation of persons and entities engaged in the small loan company business in Massachusetts pursuant to Massachusetts General Laws chapter 140, sections 96 through 114A inclusive and its implementing regulation 209 CMR 20.00 *et seq.*

2. The Division also has jurisdiction over the registration and regulation of persons and entities engaged in the business of third party loan servicing in Massachusetts, pursuant to Massachusetts General Laws chapter 93, sections 24 through 24G inclusive and its implementing regulation 209 CMR 18.00 *et seq.*

3. CashCall is, and at all relevant times, has been a foreign corporation doing business in the Commonwealth of Massachusetts with a principal office located at 1600 South Douglas Road, Anaheim, California.

4. WS Funding is, and at all relevant times, has been a foreign corporation doing business in the Commonwealth of Massachusetts.

5. Based upon information and belief WS Funding is a wholly owned subsidiary of CashCall.

6. According to the Division's records, at all relevant times John P. Reddam was and is the sole director and 100% owner of CashCall.

7. Based upon information and belief, John P. Reddam was and is the sole member and 100% owner of WS Funding.

### I. Regulatory Background

8. On or about December 6, 2010, CashCall submitted a Massachusetts mortgage lender license application to the Division.



# EXHIBIT F

Case No.: 0:13-cv-60066-CIV-COHN-SELTZER

# FLORIDA DEPARTMENT OF STATE
# DIVISION OF CORPORATIONS

sunbiz

**No Events    No Name History**

Return to Search Results

Entity Name Search

Search

# Detail by Entity Name

## Foreign Profit Corporation

CASHCALL, INC.

## Filing Information

| | |
|---|---|
| **Document Number** | F03000003777 |
| **FEI/EIN Number** | 330890858 |
| **Date Filed** | 07/22/2003 |
| **State or Country** | CA |
| **Status** | ACTIVE |

## Principal Address

1600 S. DOUGLASS ROAD
ANAHEIM, CA 92806

Changed: 01/13/2009

## Mailing Address

1600 S. DOUGLASS ROAD
ANAHEIM, CA 92806

Changed: 01/13/2009

## Registered Agent Name & Address

NRAI SERVICES, INC.
1200 South Pine Island Road
Plantation, FL 33324

Address Changed: 02/11/2011

## Officer/Director Detail

**Name & Address**

Title PC

REDDAM, J. PAUL
1600 S. DOUGLASS ROAD
ANAHEIM, CA 92806

Title VP

Home | Contact us | Document Searches | E-Filing Services | Forms | Help |

Copyright © and Privacy Policies
State of Florida, Department of State

ANAHEIM, CA 92806

Title S

RON, RADZIMINSKY
1600 S. DOUGLASS
ANAHEIM, CA 92806

Title T

MEEKS, DELBERT O
1600 S. DOUGLASS ROAD
ANAHEIM, CA 92806

## **Annual Reports**

| Report Year | Filed Date |
|---|---|
| 2011 | 02/15/2011 |
| 2012 | 01/16/2012 |
| 2013 | 01/23/2013 |

## **Document Images**

| | |
|---|---|
| 01/23/2013 -- ANNUAL REPORT | View image in PDF format |
| 01/16/2012 -- ANNUAL REPORT | View image in PDF format |
| 02/15/2011 -- ANNUAL REPORT | View image in PDF format |
| 01/04/2010 -- ANNUAL REPORT | View image in PDF format |
| 01/13/2009 -- ANNUAL REPORT | View image in PDF format |
| 01/03/2008 -- ANNUAL REPORT | View image in PDF format |
| 04/26/2007 -- ANNUAL REPORT | View image in PDF format |
| 01/11/2006 -- ANNUAL REPORT | View image in PDF format |
| 10/13/2005 -- ANNUAL REPORT | View image in PDF format |
| 01/27/2005 -- ANNUAL REPORT | View image in PDF format |
| 03/22/2004 -- ANNUAL REPORT | View image in PDF format |
| 07/22/2003 -- Foreign Profit | View image in PDF format |

**No Events   No Name History**

Entity Name Search

Search

Return to Search Results

# EXHIBIT G

Case No.: 0:13-cv-60066-CIV-COHN-SELTZER

View Signed Document

**Sign Time:** Thursday, May 05, 2011 5:11 PM



## WESTERN SKY CONSUMER LOAN AGREEMENT

| Loan No.: | ████████ | Date of Note: | May 05, 2011 |
|---|---|---|---|
| | | Expected Funding Date: | May 06, 2011 |
| Lender: | Western Sky Financial, LLC | Borrower: | |
| Address: | P.O. Box 370 | Address: | ████████ |
| | Timber Lake, SD 57656 | | |

**This Loan Agreement is subject solely to the exclusive laws and jurisdiction of the Cheyenne River Sioux Tribe, Cheyenne River Indian Reservation.** By executing this Loan Agreement, you, the borrower, hereby acknowledge and consent to be bound to the terms of this Loan Agreement, consent to the sole subject matter and personal jurisdiction of the Cheyenne River Sioux Tribal Court, and further agree that no other state or federal law or regulation shall apply to this Loan Agreement, its enforcement or interpretation.

In this Loan Agreement, the words "you" and "your" mean the person signing as a borrower. "We," "us," "our," and "Lender" mean Western Sky Financial, LLC, a lender authorized by the laws of the Cheyenne River Sioux Tribal Nation and the Indian Commerce Clause of the Constitution of the United States of America, and any subsequent holder of this Note ("Western Sky").

TRUTH IN LENDING DISCLOSURES: The disclosures below are provided to you so that you may compare the cost of this loan to other loan products you might obtain in the United States. Our inclusion of these disclosures does not mean that we consent to application of state or federal law to us, to the loan, or this Loan Agreement.

## TRUTH IN LENDING ACT DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| *The cost of your credit as a yearly rate* | *The dollar amount the credit will cost you* | *The amount of credit provided to you* | *The amount you will have paid after all payments are made as scheduled* |
| **192.94 %** | **$3,136.79** | **$1,000.00** | **$4,136.79** |

## PAYMENT SCHEDULE

One payment of $130.00 on June 01, 2011.
23 monthly payments of $166.95 beginning on July 01, 2011.
One payment of $166.94 on June 01, 2013.

**Late Charge:** If a payment is more than 15 days late, you will be charged $29.00.

**Prepayment:** If you pay off this loan early, you will not have to pay any penalty.

> Please see the remainder of this document for additional information about nonpayment, default and any required repayment in full before the scheduled date.

## ITEMIZATION OF AMOUNT FINANCED

Amount Financed:                $1,000.00
Amount Paid to Borrower Directly:      $1,000.00
Prepaid Finance Charge/Origination Fee: $500.00

You promise to pay to the order of Western Sky or any subsequent holder of this Note the sum of **$1,500.00**, together with interest calculated at **120.00 %** per annum and any outstanding charges or late fees, until the full amount of this Note is paid. You promise to repay this loan by making, at a minimum, the payments described on the payment schedule listed above.

Payments will be applied first to any outstanding charges or late fees, then to earned interest and finally to principal. The payment schedule described above may change in the event you do not make all payments as scheduled or in the event you accrue any fees.

Interest is calculated on a 360/360 simple interest basis. This means that interest is calculated by dividing the annual Interest Rate by 360, multiplying that number by the outstanding principal balance, and multiplying that number by the number of days the principal balance is outstanding.

You may prepay all or any part of the principal without penalty.

If you fail to make any payment due hereunder, the holder of this Note shall have the right, after a 30-day grace period, to declare this note to be immediately due and payable. If you file for an assignment for the benefit of creditors, or for bankruptcy, the holder of this Note shall have the right to declare this Note to be immediately due and payable.

Except as may be provided in the "Arbitration" section of this Note, if we are required to employ an attorney at law to collect any amounts due hereunder, you will be required to pay the reasonable fees of such attorney to protect our interest or to take any other action required to collect the amounts due hereunder.

**As disclosed above, your loan amount is $1,500.00, but you will be receiving only $1,000.00 in loan proceeds. We will be retaining $500.00 as a Prepaid Finance Charge.**

The Prepaid Finance Charge is fully earned upon funding and is not subject to rebate upon prepayment or acceleration of this Note.

**LATE FEES.** You will be subject to a late fee of $29.00. if you fail to make your payment within 15 days of the due date. We can collect any late fees immediately via Electronic Funds Transfer (EFT) from your bank account.

**INSUFFICIENT FUNDS.** You will be subject to a fee of $29 if any payment you make is returned by your bank for insufficient funds.

**E-SIGN/ELECTRONIC COMMUNICATIONS.** Although federal law does not apply to this Agreement, this Note is in original format an electronic document fully compliant with the Electronic Signatures in Global and National Commerce Act (E-SIGN) and other applicable laws and regulations, and the one, true original Note is retained electronically by us. All other versions hereof, whether electronic or in tangible format, constitute facsimiles or reproductions only. You understand that you have previously consented to receive all communications from us, including but not limited to all required disclosures, electronically.

**CREDIT REPORTS.** You agree that we may obtain credit reports on you on an ongoing basis as long as this loan remains in effect. You also authorize us to report information concerning this account to credit bureaus and anyone else we believe in good faith has a legitimate need for such information. Late payments, missed payments, or other defaults on this account may be reflected in your credit report.

**CALL MONITORING/RECORDING.** You understand that, from time to time, we may monitor or record telephone calls between us for quality assurance purposes. You expressly consent to have your calls monitored or recorded.

**TELEPHONE CALLS.** You hereby agree that in the event we need to contact you to discuss your account or the repayment of your loan, we may telephone you at any number, including any cell phone number provided, and that we may leave an autodialed or prerecorded message or use other technology to make that contact or to communicate to you the status of your account.

**VERIFICATION.** You authorize us to verify all of the information you have provided in obtaining approval of this Loan.

**GOVERNING LAW.** This Agreement is governed by the Indian Commerce Clause of the Constitution of the United States of America and the laws of the Cheyenne River Sioux Tribe. We do not have a presence in South Dakota or any other states of the United States. Neither this Agreement nor Lender is subject to the laws of any state of the United States of America.

**ASSIGNMENT.** We may assign or transfer this Loan Agreement or any of our rights under it at any time to any party.

**WAIVER OF JURY TRIAL AND ARBITRATION.**
**PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.** Unless you exercise your right to opt-out of arbitration in the manner described below, any dispute you have with Western Sky or anyone else under this loan agreement will be resolved by binding arbitration. Arbitration replaces the right to go to court, including the right to have a jury, to engage in discovery (except as may be provided in the arbitration rules), and to participate in a class action or similar proceeding. In Arbitration, a dispute is resolved by an arbitrator instead of a judge or jury. Arbitration procedures are simpler and more limited than court procedures. Any Arbitration will be limited to the dispute between yourself and the holder of the Note and will not be part of a class-wide or consolidated Arbitration proceeding.

**Agreement to Arbitrate.** You agree that any Dispute, except as provided below, will be resolved by Arbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement.

**Arbitration Defined.** Arbitration is a means of having an independent third party resolve a Dispute. A "Dispute" is any controversy or claim between you and Western Sky or the holder of the Note. The term Dispute is to be given its broadest possible meaning and includes, without limitation, all claims or demands (whether past, present, or future, including events that occurred prior to the opening of this Account), based on any legal or equitable theory (tort, contract, or otherwise), and regardless of the type of relief sought (i.e. money, injunctive relief, or declaratory relief). A Dispute includes, by way of example and without limitation, any claim based upon marketing or solicitations to obtain the loan and the handling or servicing of my account whether such Dispute is based on a tribal, federal or state constitution, statute, ordinance, regulation, or common law, and including any issue concerning the validity, enforceability, or scope of this loan or the Arbitration agreement. For purposes of this Arbitration agreement, the term "the holder" shall include Western Sky or the then-current note holder's employees, officers, directors, attorneys, affiliated companies, predecessors, and assigns, as well as any marketing, servicing, and collection representatives and agents.

**Choice of Arbitrator.** Any party to a dispute, including related third parties, may send the other party written notice by certified mail return receipt requested at the address appearing at the top of this Loan Agreement of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed. Arbitration shall be conducted in the Cheyenne River Sioux Tribal Nation by your choice of either (i) a Tribal Elder, or (ii) a panel of three (3) members of the Tribal

Council, and shall be conducted in accordance with the Cheyenne River Sioux Tribal Nation's consumer dispute rules and the terms of this Agreement. You may appear at Arbitration via telephone or video conference, and you will not be required to travel to the Cheyenne River Sioux Tribal Nation. The party receiving notice of Arbitration will respond in writing by certified mail return receipt requested within twenty (20) days. You understand that if you demand Arbitration, you must inform us of your demand of the Arbitrator you have selected. You also understand that if you fail to notify us, then we have the right to select the Arbitrator.

**Cost of Arbitration.** We will pay the filing fee and any costs or fees charged by the arbitrator regardless of which party initiates the Arbitration. Except where otherwise provided by the law of the Cheyenne River Sioux Tribal Nation, each party will be responsible for its own attorneys' fees and other expenses. Unless prohibited by law, the arbitrator may award fees, costs, and reasonable attorneys' fees to the party who substantially prevails in the Arbitration.

**Waiver of Rights.** YOU HEREBY AGREE THAT YOU ARE WAIVING YOUR RIGHT TO A JURY TRIAL, TO HAVE A COURT DECIDE YOUR DISPUTE, TO PARTICIPATE IN A CLASS ACTION LAWSUIT, AND TO CERTAIN DISCOVERY AND OTHER PROCEDURES THAT ARE AVAILABLE IN A LAWSUIT. The arbitrator has the ability to award all remedies available by statute, at law, or in equity to the prevailing party, except that the parties agree that the arbitrator has no authority to conduct class-wide proceedings and will be restricted to resolving the individual disputes between the parties. The validity, effect, and enforceability of this waiver of class action lawsuit and class-wide Arbitration is to be determined solely by a court of competent jurisdiction located within the Cheyenne Rivers Sioux Tribal Nation, and not by the arbitrator. If the court refuses to enforce the class-wide Arbitration waiver, or if the arbitrator fails or refuses to enforce the waiver of class-wide Arbitration, the parties agree that the Dispute will proceed in tribal court and will be decided by a tribal court judge, sitting without a jury, under applicable court rules and procedures.

**Applicable Law and Judicial Review.** THIS ARBITRATION PROVISION IS MADE PURSUANT TO A TRANSACTION INVOLVING THE INDIAN COMMERCE CLAUSE OF THE CONSTITUTION OF THE UNITED STATES OF AMERICA, AND SHALL BE GOVERNED BY THE LAW OF THE CHEYENNE RIVER SIOUX TRIBE. The arbitrator will apply the laws of the Cheyenne River Sioux Tribal Nation and the terms of this Agreement. The arbitrator must apply the terms of this Arbitration agreement, including without limitation the waiver of class-wide Arbitration. The arbitrator will make written findings and the arbitrator's award may be filed in the Cheyenne River Sioux Tribal Court, which has jurisdiction in this matter. The Arbitration award will be supported by substantial evidence and must be consistent with this Agreement and applicable law or may be set aside by a court upon judicial review.

**Other Provisions.** This Arbitration provision will survive: (i) termination or changes in this Agreement, the Account, or the relationship between us concerning the Account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of my Note, or any amounts owed on my account, to any other person or entity. This Arbitration provision benefits and is binding upon you, your respective heirs, successors and assigns. It also benefits and is binding upon us, our successors and assigns, and related third parties. The Arbitration Provision continues in full force and effect, even if your obligations have been paid or discharged through bankruptcy. The Arbitration Provision survives any termination, amendment, expiration, or performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing. If any of this Arbitration Provision is held invalid, the remainder shall remain in effect.

**Right to Opt Out.** If you do not wish your account to be subject to this Arbitration Agreement, you must advise us in writing at P.O. Box 370, Timber Lake, South Dakota, 57565, or via e-mail at info@westernsky.com. You must clearly print or type your name and account number and state that you reject Arbitration. You must give written notice; it is not sufficient to telephone us. We must receive your letter or e-mail within sixty (60) days after the date your loan funds or your rejection of Arbitration will not be effective. In the event you opt out of Arbitration, any disputes hereunder shall nonetheless be governed under the laws of the Cheyenne River Sioux Tribal Nation.

**PLEASE NOTE: THIS LOAN CARRIES A VERY HIGH APR. YOU MAY BE ABLE TO OBTAIN CREDIT UNDER MORE FAVORABLE TERMS ELSEWHERE. EVEN THOUGH YOU RECEIVED $1,000 IN LOAN PROCEEDS, PLEASE BE AWARE THAT YOU WILL BE PAYING INTEREST ON THE ENTIRE LOAN AMOUNT OF $1,500.**

CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS AGREEMENT BEFORE YOU SIGN IT. YOU ARE ENTITLED TO A COPY OF THIS AGREEMENT.

☑   YOU HAVE READ AND UNDERSTAND THE ARBITRATION SECTION OF THIS NOTE AND AGREE TO
    BE BOUND BY THE TERMS AND CONDITIONS OF THAT SECTION.

☑   **YOU HAVE READ ALL OF THE TERMS AND CONDITIONS OF THIS PROMISSORY NOTE
    AND DISCLOSURE STATEMENT AND AGREE TO BE BOUND THERETO. YOU UNDERSTAND
    AND AGREE THAT YOUR EXECUTION OF THIS NOTE SHALL HAVE THE SAME LEGAL
    FORCE AND EFFECT AS A PAPER CONTRACT.**


**CONSUMER COMPLAINTS** - If you have a complaint about our loan, please let us know. You can contact us at P.O. Box 370, Timber Lake, South Dakota, 57656, telephone (877) 860-2274.


### ELECTRONIC FUNDS AUTHORIZATION AND DISCLOSURE

You hereby authorize us to initiate electronic funds transfers ("EFTs") for withdrawal of your scheduled loan payment from your checking account on or about the FIRST day of each month. You further authorize us to adjust this withdrawal to reflect any additional fees, charges or credits to your account. We will notify you 10 days prior to any given transfer if the amount to be transferred varies by more than $50 from your regular payment amount. You also authorize us to withdraw funds from your account on additional days throughout the month in the event you are delinquent on your loan payments. You understand that this authorization and the services undertaken in no way alters or lessens your obligations under the Loan Agreement. You understand that you can cancel this authorization at any time (including prior to your first payment due date) by sending written notification to us. Cancellations must be received at least three business days prior to the applicable due date. This EFT debit authorization will remain in full force and effect until the earlier of the following occurs: (i) you satisfy all of your payment obligations under this Loan Agreement or (ii) you cancel this authorization.

In addition, you hereby authorize us and our agents to initiate a wire transfer credit to your bank account to disburse the proceeds of this Loan.


☑   YOU UNDERSTAND OUR PAYMENT COLLECTION PROCEDURE AND AUTHORIZE ELECTRONIC
    DEBITS FROM YOUR BANK ACCOUNT.

Click here to print out a copy of this document for your records.

Loan Status

Make Payment with Credit Card

| | | |
|---|---|---|
| Due Amount: | $0.00 | |
| Due Date: | | |
| Loan ID: | 6104031 | |
| Loan Amount: | $1,500.00 | |
| Interest Rate: | 120.00 % | |
| Monthly Payment: | $166.95 | |
| Balance: | $1,025.82 | |

**Pending ACH Payments**
No Pending Payments

Today's Payoff Amount        $1,083.95

View Loan Document

| Entry Number | Entry Type | Entry Date | Principal Amount | Interest Payment | Fee Payment | Total Payment Amount |
|---|---|---|---|---|---|---|
| 1 | Payment Made | 6/5/2011 | $0.00 | $130.00 | $0.00 | $130.00 |
| 2 | Payment Made | 7/5/2011 | $16.95 | $150.00 | $0.00 | $166.95 |
| 3 | Payment Made | 8/5/2011 | $18.64 | $148.31 | $0.00 | $166.95 |
| 4 | Payment Made | 9/5/2011 | $20.51 | $146.44 | $0.00 | $166.95 |
| 5 | Payment Made | 10/5/2011 | $22.56 | $144.39 | $0.00 | $166.95 |
| 6 | Payment Made | 11/5/2011 | $24.82 | $142.13 | $0.00 | $166.95 |
| 7 | Payment Made | 12/5/2011 | $27.30 | $139.65 | $0.00 | $166.95 |
| 8 | Payment Made | 1/5/2012 | $30.03 | $136.92 | $0.00 | $166.95 |
| 9 | Payment Made | 2/5/2012 | $33.03 | $133.92 | $0.00 | $166.95 |
| 10 | Payment Made | 3/5/2012 | $36.33 | $130.62 | $0.00 | $166.95 |
| 11 | Payment Made | 4/5/2012 | $39.97 | $126.98 | $0.00 | $166.95 |
| 12 | Payment Made | 5/5/2012 | $43.96 | $122.99 | $0.00 | $166.95 |
| 13 | Payment Made | 6/5/2012 | $48.36 | $118.59 | $0.00 | $166.95 |
| 14 | Payment Made | 7/5/2012 | $53.20 | $113.75 | $0.00 | $166.95 |
| 15 | Payment Made | 8/5/2012 | $58.52 | $108.43 | $0.00 | $166.95 |
| 16 | Future Payment | 9/1/2012 | $64.37 | $102.58 | $0.00 | $166.95 |
| 17 | Future Payment | 10/1/2012 | $70.80 | $96.15 | $0.00 | $166.95 |
| 18....23 | ...... Future Payments ...... | ....... | ....... | ....... | ....... | ....... |
| 24 | Future Payment | 5/1/2013 | $137.98 | $28.97 | $0.00 | $166.95 |
| 25 | Future Payment | 6/1/2013 | $151.76 | $15.18 | $0.00 | $166.94 |

# EXHIBIT H

Case No.: 0:13-cv-60066-CIV-COHN-SELTZER

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
or on the front if space permits.

1. Article Addressed to:

CASH CALL / WESTERNSKY
P.O. BOX 370
TIMBER LAKE
SOUTH DAKOTA 57656

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____    □ Agent
                              □ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?   □ Yes
   If YES, enter delivery address below:        □ No

3. Service Type
□ Certified Mail    □ Express Mail
□ Registered        □ Return Receipt for Merchandise
□ Insured Mail      □ C.O.D.

4. Restricted Delivery? (Extra Fee)    □ Yes

2. Article Number
   (Transfer from service label)    7012 0470 0000 8882 1992

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540

**Akerman**

2660¹:1

**Akerman Senterfitt**
One Southeast Third Avenue
25th Floor
Miami, FL 33131

akerman.com

$00.860
US POSTAGE

Abraham Inetianbor
4271 NW 5th Street, #247
Plantation, FL 33317