UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-60066-CIV-COHN/SELTZER

ABRAHAM INETIANBOR,

    Plaintiff,

v.

CASHCALL, INC.,

    Defendant.
_____/

## ORDER COMPELLING ARBITRATION

**THIS CAUSE** is before the Court upon Defendant CashCall, Inc's Renewed Motion to Compel Arbitration and Dismiss or Stay Case [DE 53]. The Court has considered the motion, Plaintiff's response [DE 56], Defendant's reply [DE 57], the record in this case, and is otherwise fully advised in the premises.

### I. BACKGROUND

On January 5, 2011, Plaintiff Abraham Inetianbor entered into a consumer loan agreement with Western Sky Financial, LLC, for $2,525.00, with an annual interest rate of 135%. DE 16-2 at 3-4. Defendant CashCall, Inc. ("CashCall"), is the servicer, handler, and collector on the loan. DE 16 at 2. Plaintiff claims that he has paid off the loan in full, but that CashCall has continued to report to credit bureaus that he has upcoming or late payments. DE 1-3 at 2. On July 12, 2012, Plaintiff brought suit in the Seventeenth Judicial Circuit Court, Broward County, Florida, alleging that CashCall had defamed Plaintiff's character by misrepresenting his creditworthiness to credit reporting agencies. See DE 1-2 at 3-4. On December 17, 2012, Plaintiff filed an Amended

Complaint in state court.  CashCall then removed the action to this Court on January 11, 2013.  DE 1 at 2-3.  On January 24, 2013, CashCall responded to the Amended Complaint with a Motion to Compel Arbitration and Dismiss or Stay Case [DE 16].

The subject loan agreement requires that all disputes arising out of the agreement "be resolved by Arbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement."  DE 16-2 at 5.  The agreement further provides that

> Arbitration shall be conducted in the Cheyenne River Sioux Tribal Nation by your choice of either (i) a Tribal Elder, or (ii) a panel of three (3) members of the Tribal Council, and shall be conducted in accordance with the Cheyenne River Sioux Tribal Nation's consumer dispute rules and the terms of this Agreement.

Id. at 6.  On February 15, 2013, the Court issued an Order ("February 15 Order") granting the motion to compel, and directing the parties to submit the claims to arbitration.  See DE 33 at 8.

Then, on March 12, 2013, Plaintiff filed a Motion to Reopen Case [DE 37], in which he advised the Court that, subsequent to the February 15 Order, he attempted to submit the case for arbitration to the Cheyenne River Sioux Tribal Nation ("the tribe").  However, the tribe, through Judge Mona R. Demery, responded with a letter dated March 8, 2013, stating that "the Cheyenne River Sioux Tribe . . . does not authorize Arbitration as defined by the American Arbitration Association ("AAA") here on the Cheyenne River Sioux Reservation located in Eagle Butte, SD 57625."  DE 37 at 5.  Plaintiff argued that arbitration before the designated forum was unavailable, and requested that the Court reopen the case.  CashCall responded that arbitration could

still be conducted by tribe members on the reservation, but failed to clarify how this contention was consistent with the letter from the tribal court.  See DE 39.  The Court determined that Plaintiff had provided persuasive evidence that the arbitral forum designated in the loan agreement was unavailable, and that the choice of forum was integral to the agreement to arbitrate.  Accordingly, the Court granted Plaintiff's motion and reopened the case.  See DE 45.

In the instant motion, CashCall once again seeks to compel arbitration, and submits evidence that Robert Chasing Hawk, Sr., a Tribal Elder of the Cheyenne River Sioux Tribal Nation, has agreed to serve as arbitrator for the case and to apply tribal law.  See DE 57-1 at 2.  Plaintiff opposes the motion.

## II. LEGAL STANDARD

In considering a motion to compel arbitration, the Court looks first to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"), which governs the interpretation and enforceability of arbitration provisions.  See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983) (noting that the FAA "[creates] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.").  Section 2 of the FAA provides that

> "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

9 U.S.C. § 2.  Further, § 3 requires federal courts to stay proceedings when an issue in the proceeding is referable to arbitration; and § 4 directs courts to compel arbitration when one party has failed to comply with an agreement to arbitrate.  EEOC v. Waffle

3

House, Inc., 534 U.S. 279, 289 (2002) (citing 9 U.S.C. §§ 3-4).  Together, these provisions "manifest a liberal federal policy favoring arbitration agreements." EEOC, 534 U.S. at 829 (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991)).  Because of that policy, all doubts concerning the scope of an arbitration provision are resolved in favor of arbitration.  Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. Medpartners, Inc., 312 F.3d 1349, 1358 (11th Cir. 2002) (citing Moses H. Cone, 460 U.S. at 24-25).

The Court's role in deciding a dispute is quite limited when there is an agreement to arbitrate.  "[T]he threshold questions a district court must answer when determining whether a case may be properly referred to arbitration are: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the specific dispute falls within the scope of the agreement." Viamonte v. Biohealth Techs., No. 09-21522-CIV-GOLD/McALILEY, 2009 U.S. Dist. LEXIS 119200, *6 (S.D. Fla. Nov. 24, 2009).  A plaintiff challenging the enforcement of an arbitration agreement bears the burden to establish, by substantial evidence, any defense to the enforcement of the agreement.  See Bess v. Check Express, 294 F.3d 1298, 1306-07 (11th Cir. 2002).

### III. ANALYSIS

The Court previously resolved the threshold questions of arbitrability in the February 15 Order, finding as follows:

> The terms of the agreement are clear: all disputes between the borrower and the holder of the Note or the holder's servicer must be settled through arbitration.  In this suit, Plaintiff seeks damages from Cashcall, the servicer of the note, for actions related to Cashcall's servicing and collecting on the note.  Therefore, Plaintiff's claims fall within the scope of the arbitration provision.

<u>See</u> DE 33 at 6 (internal citations omitted).  In the present motion, CashCall argues that the only grounds for reopening the case was the unavailability of the arbitral forum.  CashCall asserts that because it has provided evidence that this action can be, and in fact has been, submitted to arbitration with the designated forum, the parties are bound to settle their claims at arbitration.  Upon review of the evidence the Court agrees.

First, CashCall submits a letter from Judge Demery, dated April 4, 2013, in which she states that:

> The [Cheyenne River Sioux Tribal] Court does not provide arbitration.  Arbitration, as in a contractual agreement, is permissible.  However, the Court does not involve itself in the hiring of the arbitrator or setting dates or time for the parties.  After there is an arbitration award, the parties may seek to confirm the award in Tribal Court.

DE 53-3 at 2.  Further, the record evidence shows that CashCall sent a demand for arbitration to Plaintiff via certified mail [DE's 53-1, 57-2]; that Plaintiff received the demand on May 3, 2013 [DE 57-2]; that Tribal Elder Robert Chasing Hawk, Sr., has agreed to arbitrate the case and is in the process of scheduling a hearing on preliminary matters [DE 57-1]; and that Plaintiff has been notified via email and phone call about the status of arbitration [DE 57-3].  Thus, the Court finds that CashCall has properly submitted this action to arbitration, and that the designated forum is available to conduct arbitration.

Plaintiff attempts to avoid arbitration on four grounds, each of which is unavailing.  First, Plaintiff objects to the loan agreement's choice-of-law provision which provides for the application of tribal law in disputes arising under the contract.  However, as the Court pointed out in the February 15 Order:

> [T]he Eleventh Circuit has summarized the case law regarding choice-of-

5

> law provisions in arbitration agreements as follows:
>
> (1) courts should apply a strong presumption in favor of enforcement of arbitration and choice clauses; (2) US statutory claims are arbitrable, unless Congress has specifically legislated otherwise; (3) choice-of-law clauses may be enforced even if the substantive law applied in arbitration potentially provides reduced remedies [ . . . ] than those available under US law, and (4) even if a contract expressly says that foreign law governs . . . courts should not invalidate an arbitration agreement at the arbitration-enforcement stage . . . . "
>
> Lindo v. NCL (Bahamas) Ltd., 652 F.3d 1257, 1269 (11th Cir. 2011). There is thus a strong presumption in favor of enforcing the jurisdictional clause of the Loan Agreement. As the party challenging the enforcement of an arbitration agreement, Plaintiff bears the burden of establishing the invalidity of the jurisdictional clause.

DE 33 at 7.  Plaintiff cites no authority and provides no evidence showing that the choice-of-law provision is invalid, and thus fails to meet his burden on this issue. Accordingly, the Court concludes that the choice-of-law provision is enforceable and Plaintiff's claims may be arbitrated pursuant to tribal law.

Second, Plaintiff contends that CashCall has repeatedly delayed the resolution of this case.  Plaintiff argues that such delays amount to bad faith and willful misconduct, thereby waiving CashCall's right to arbitrate.  This argument is without merit.  "A party claiming waiver of arbitration must demonstrate: 1) knowledge of an existing right to arbitrate and 2) active participation in litigation or other acts inconsistent with the right."  Ibis Lakes Homeowners Ass'n v. Ibis Isle Homeowners Ass'n, 102 So. 3d, 722, 731 (Fla. 4th DCA 2012) (quoting Inverrary Gardens Condo. I Ass'n v. Spender, 939 So. 2d 1159, 1161 (Fla. 4th DCA 2006)).  In light of the strong federal policy in favor of arbitration, "[a]ll doubts regarding waiver should be construed in favor of arbitration rather than against it."  Marine Envtl. Partners, Inc. v. Johnson, 863 So. 2d

423, 426 (Fla. 4th DCA 2003).  Here, Plaintiff fails to show that CashCall has actively participated in litigation in a way inconsistent with its right to arbitrate.  To the contrary, CashCall responded to Plaintiff's Amended Complaint with a Motion to Compel Arbitration and Dismiss or Stay Case, thirteen days after removing the action to this Court.  Moreover, CashCall did not participate in discovery prior to filing its motion to compel, and CashCall has repeatedly asserted its right to arbitrate.  See Ibis Lakes, 102 So. 3d at 731-32 (summarizing relevant case law finding that substantial participation in discovery may constitute waiver of arbitration).  Accordingly, the Court finds that CashCall has not waived arbitration.

      Third, Plaintiff argues that CashCall does not have standing to compel arbitration because it did not sign the loan agreement and is not a party thereto.  This assertion, however, is contradicted on the face of the agreement.  Under the section titled "Arbitration Defined," the agreement provides as follows:

> Arbitration is a means of having an independent third party resolve a Dispute.  A "Dispute" is any controversy or claim between you and Western Sky or the holder of the note. . . . For purposes of this Arbitration agreement, the term "the holder" shall include Western Sky . . . as well as any marketing, servicing, and collection representatives and agents.

DE 16-2 at 5-6.  Furthermore, under the "Choice of Arbitrator" section, it states that "Any party to a dispute, **including related third parties**, may send the other party written notice . . . of their intent to arbitrate . . . . "  Id. at 6 (emphasis added).  Thus, the arbitration provisions plainly contemplated that third parties, including servicers, could compel arbitration for disputes arising under the loan agreement.  CashCall, as servicer on the loan, therefore has standing to compel arbitration in this action.

      Finally, Plaintiff argues that the arbitration provision is unenforceable because it

7

is unconscionable. "The Supreme Court has recognized that 'generally applicable contract defenses, such as fraud, duress, or unconscionability may be applied to invalidate arbitration agreements.'" Jenkins v. First American Cash Advance of Gerogia, LLC, 400 F.3d 868, 875 (11th Cir. 2005) (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)). Here, Plaintiff contends that the arbitration provision is unconscionable because it allows CashCall to unilaterally choose the pool of arbitrators. In support, Plaintiff cites to Pokorny v. Quixtar, Inc., 601 F.3d 987, 1002-04 (9th Cir. 2010), in which the court found an arbitration selection process was unconscionable in part because the plaintiff was forced to choose its arbitrator from a list of arbitrators trained by the defendant, or pay a higher arbitration fee. The court in Quixtar was concerned that the use of arbitrators trained by the defendant would give the defendant an unfair advantage. Thus, by charging a higher fee for using arbitrators not affiliated with the defendant, the selection process encouraged the use of biased arbitrators. See id. at 1003. In the instant case, however, Plaintiff has not given the Court any reason to believe that the selection process would lead to a biased arbitrator. Unlike in Quixtar, there is no evidence that the tribal arbitrators were trained by or have any other connection with CashCall. Indeed, the letter from Mr. Hawk specifically states that he "[has] no preexisting relationship with either party in this case." DE 57-1 at 2. Hence, the Court finds that the arbitration selection process is not unconscionable, and will compel arbitration in accordance with the loan agreement.

### IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** as follows:

1.  Defendant CashCall, Inc's Renewed Motion to Compel Arbitration and Dismiss or Stay Case [DE 53] is **GRANTED**.  The parties are ordered to submit the claims presented in the instant action to arbitration.

2.  Pursuant to the FAA, 9 U.S.C. § 3, this case is **STAYED** until such arbitration has been had in accordance with the terms of the agreement.

3.  The parties are directed to file a status report with this Court upon the earliest of either 1) the completion of arbitration, or 2) November 18, 2013, to advise the Court regarding the status of the case.

4.  Any pending motions are **DENIED as moot**.  The Clerk of Court is directed to **CLOSE** this case for administrative purposes.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 17th day of May, 2013.

_____
JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF

Abraham Intetianbor, *pro se*
4271 NW 5th Street, #247
Plantation, FL 33317