UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-60066-CIV-COHN/SELTZER

ABRAHAM INETIANBOR,

    Plaintiff,

v.

CASHCALL, INC.,

    Defendant.
_____/

## ORDER DENYING MOTION FOR RECONSIDERATION

**THIS CAUSE** is before the Court upon Plaintiff's Motion to Reconsider and Report Regarding the Status of the Case [DE 61], and Plaintiff's Motion to Reopen Case [DE 62]. The Court has considered the motions, Defendant's responses [DE's 65, 66], Plaintiff's replies [DE's 67, 69], the record in this case, and is otherwise fully advised in the premises.

### I. BACKGROUND

On January 5, 2011, Plaintiff Abraham Inetianbor entered into a consumer loan agreement with Western Sky Financial, LLC ("Western Sky"), for $2,525.00, with an annual interest rate of 135%. DE 16-2 at 3-4. Defendant CashCall, Inc. ("CashCall"), is the servicer, handler, and collector on the loan. DE 16 at 2. Plaintiff claims that he has paid off the loan in full, but that CashCall has continued to report to credit bureaus that he has upcoming or late payments. DE 1-3 at 2. On July 12, 2012, Plaintiff brought suit in the Seventeenth Judicial Circuit Court, Broward County, Florida, alleging that CashCall had defamed Plaintiff's character by misrepresenting his creditworthiness to

credit reporting agencies.  See DE 1-2 at 3-4.  On December 17, 2012, Plaintiff filed an Amended Complaint in state court.  CashCall then removed the action to this Court on January 11, 2013.  DE 1 at 2-3.

The subject loan agreement requires that all disputes arising out of the agreement "be resolved by Arbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement."  DE 16-2 at 5.  The agreement further provides that

> Arbitration shall be conducted in the Cheyenne River Sioux Tribal Nation by your choice of either (i) a Tribal Elder, or (ii) a panel of three (3) members of the Tribal Council, and shall be conducted in accordance with the Cheyenne River Sioux Tribal Nation's consumer dispute rules and the terms of this Agreement.

Id. at 6.  Accordingly, on January 24, 2013, CashCall filed a Motion to Compel Arbitration and Dismiss or Stay Case [DE 16].  On February 15, 2013, the Court issued an Order ("February 15 Order") granting the motion to compel, and directing the parties to submit the claims to arbitration.  See DE 33 at 8.

Then, on March 12, 2013, Plaintiff filed a Motion to Reopen Case [DE 37], in which he advised the Court that, subsequent to the February 15 Order, he attempted to submit the case for arbitration to the Cheyenne River Sioux Tribal Nation ("the tribe"). However, the tribe, through Judge Mona R. Demery, responded with a letter dated March 8, 2013, stating that "the Cheyenne River Sioux Tribe . . . does not authorize Arbitration as defined by the American Arbitration Association ("AAA") here on the Cheyenne River Sioux Reservation located in Eagle Butte, SD 57625."  DE 37 at 5. Plaintiff argued that arbitration before the designated forum was unavailable, and

2

requested that the Court reopen the case.  CashCall responded that arbitration could still be conducted by tribe members on the reservation, but failed to clarify how this contention was consistent with the letter from the tribal court.  See DE 39.  The Court determined that Plaintiff had provided persuasive evidence that the arbitral forum designated in the loan agreement was unavailable, and that the choice of forum was integral to the agreement to arbitrate.  Thus, the Court granted Plaintiff's motion and reopened the case.  See DE 45.

On April 23, 2013, CashCall filed a Renewed Motion to Compel Arbitration and Dismiss or Stay Case [DE 53] ("Renewed Motion to Compel"), wherein it submitted evidence that the arbitral forum was in fact available.  CashCall attached a letter from Robert Chasing Hawk, Sr., a Tribal Elder of the Cheyenne River Sioux Tribal Nation, stating that he agreed to serve as arbitrator for the case, and that he "[has] no preexisting preexisting relationship with either party in this case."  See DE 57-1.  Based on this evidence, the Court granted the Renewed Motion to Compel on May 17, 2013. DE 59 ("May 17 Order").

In both of the motions presently before the Court, Plaintiff asks the Court to reconsider its May 17 Order and to reopen the case on the grounds that Mr. Chasing Hawk is biased in favor of CashCall.  CashCall opposes the relief sought.

## II. LEGAL STANDARDS

The May 17 Order was not a final order.  Therefore, pursuant to Federal Rule of Civil Procedure 54(b), it is subject to revision at any time before the entry of a final judgment.  See Fed. R. Civ. P. 54(b); Coty Inc. v. C Lenu, Inc., Case No. 10-21812-CIV-HUCK/O'SULLIVAN, 2011 U.S. Dist. LEXIS 14813, at *7 (S.D. Fla. Feb.

15, 2011) ("A district court, in its discretion, can modify or vacate a non-final order at any point prior to the entry of a final judgment."). While Rule 54(b) does not specify a standard for reconsideration, "the Advisory Committee Notes make clear that 'interlocutory judgments . . . are left subject to the complete power of the court rendering them to afford such relief as justice requires.'" Grupo Televisa v. Telemundo Communs. Group, Inc., Case. No. 04-20073-CIV, 2007 U.S. Dist. LEXIS 95914, at *3 (S.D. Fla. Oct. 11, 2007) (quoting Fed. R. Civ. P. 54(b), advisory committee's note).

Generally, the "purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Burger King Corp. v. Ashland Equities, Inc., 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002) (citing Z.K. Marine, Inc. v. M/V Archigetis, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992)). There are three major grounds that justify reconsideration: "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." Burger King, 181 F. Supp. 2d, at 1369. A motion for reconsideration should not be used to present authorities that were available at the time of the first decision, or to reiterate arguments previously made. Z.K. Marine, 808 F. Supp. at 1563; see also Reyher v. Equitable Life Assur. Soc., 900 F. Supp. 428, 430 (M.D. Fla. 1995) ("The Court will not reconsider when the motion . . . only relitigates what has already been found lacking."). Rather, the movant "must demonstrate why the court should reconsider its prior decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." Reyher, 900 F. Supp. at 430.

Here, Plaintiff asks the Court to reconsider an order compelling arbitration. As

the Court previously explained,

> The Court's role in deciding a dispute is quite limited when there is an agreement to arbitrate. "[T]he threshold questions a district court must answer when determining whether a case may be properly referred to arbitration are: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the specific dispute falls within the scope of the agreement." Viamonte v. Biohealth Techs., No. 09-21522-CIV-GOLD/McALILEY, 2009 U.S. Dist. LEXIS 119200, *6 (S.D. Fla. Nov. 24, 2009).

DE 59 at 4.  Therefore, in order to meet his burden for reconsideration, Plaintiff must show a change in controlling law, newly-available evidence, or a need to correct clear error that pertains to the threshold questions of arbitrability.

### III. ANALYSIS

Here, Plaintiff asserts that he has uncovered two new pieces of evidence that indicate that Mr. Chasing Hawk is biased toward CashCall.  First, Plaintiff claims that Mr. Chasing Hawk's daughter, Shannon Chasing Hawk, is employed by Western Sky.  Plaintiff has attached what he claims is a printout of Ms. Chasing Hawk's Facebook profile page, listing "Western Sky Financial" as her employer.  See DE 61 at 9.  He further alleges that Mr. Chasing Hawk has "10+ kids and every single one of them has either worked for, currently works at CashCall or one of its subsidiaries . . . or had illegally attempted to conduct an unsuccessful arbitration for the defendant."  DE 67 at 2 n.1.  Second, Plaintiff alleges that CashCall and Mr. Chasing Hawk have colluded in the initiation of arbitration proceedings.  Plaintiff attaches what he claims is an email chain between Mr. Chasing Hawk and an employee of Lakota Cash, LLC ("Lakota Cash"), a subsidiary of Western Sky, which purportedly shows that Lakota Cash prepared the letter for Mr. Chasing Hawk.  See id. at 7-8.  Plaintiff further claims that he called Mr.

5

Chasing Hawk, and that Mr. Chasing Hawk admitted during the phone call that CashCall had prepared the letter for him.  Plaintiff represents that he has tried calling Mr. Chasing Hawk again, but that he told Plaintiff that "I am not able to talk to you because *cash call* (sic) will get mad.  You have to call the attorney, sorry."  Id. at 3.

Plaintiff argues that, taken together, such facts show that there is "evident partiality . . . in the [arbitrator]," and that any arbitration proceedings will be corrupt. See DE 69 at 1-3 (citing 9 U.S.C. § 10(a)(2)).  However, even if the Court accepts Plaintiff's allegations as true, such allegations do not provide a basis for avoiding arbitration.  As outlined above, the Court's inquiry on a motion to compel arbitration is limited to determining the two threshold issues of arbitrability.  Here, Plaintiff fails to show how Mr. Chasing Hawk's alleged bias either invalidates the arbitration agreement, or places Plaintiff's claims outside the scope of the agreement.

Additionally, it is well-established that "reviews [of an arbitrator's alleged bias] are confined under the [FAA] to judicial decisions to confirm, modify, or vacate an arbitration award *after* a final arbitration decision has been made."  Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc., 203 F.R.D. 677, 687 (S.D. Fla. 2001) (emphasis in original); see also Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co., 304 F.3d 376, 490 (5th Cir. 2002) (holding that "where arbitrator bias is at issue, the FAA does not provide for removal of an arbitrator from service prior to an award, but only for potential vacatur of any award.").  Indeed, the section of the FAA cited by Plaintiff, § 10(a), provides the grounds for vacating an arbitration award, not for avoiding arbitration altogether.  See 9 U.S.C. § 10(a).  Accordingly, Plaintiff's bias argument is not relevant to whether arbitration was properly compelled.  Rather, this

argument is more properly raised on a motion to confirm, modify, or vacate an award after the parties have completed arbitration.  Therefore, because Plaintiff has failed to provide grounds for reconsideration of the May 17 Order, the motion will be denied.

## IV. CONCLUSION

Thus, for the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion to Reconsider and Report Regarding the Status of the Case [DE 61], and Plaintiff's Motion to Reopen Case [DE 62] are **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 20th day of June, 2013.

*[signature]*
JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF

Abraham Intetianbor, *pro se*
4271 NW 5th Street, #247
Plantation, FL 33317