**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 13-60066-CIV-COHN/SELTZER**

ABRAHAM INETIANBOR,                    )
                                       )
       Plaintiff,                 )
                                       )
v.                                     )
                                       )
CASHCALL, INC.,                        )
                                       )
       Defendant.                )
_____  )

**PLAINTIFF'S BRIEF IN SUPPORT OF RENEWED MOTION
FOR COURT TO RECONSIDER ITS ORDER REQUIRING ARBITRATION**

     Plaintiff, Abraham Inetianbor, through counsel, pursuant to Fed. R. Civ. P. 54(b) and Local Rule 7.1 hereby files his brief in support of his renewed motion requesting that this Court reconsider its Order dated May 17, 2013 (Docket No. 59), in which it granted Defendant's motion to compel arbitration and stayed the lawsuit.   A proposed order is attached as **Exhibit 1**.

## I.    INTRODUCTION.

     The Plaintiff, Abraham Inetianbor, acting *pro se*, sued Defendant, CashCall, Inc. on July 12, 2012 in State Court.  Mr. Inetianbor later amended his Complaint to include new claims for usury under Florida law, Fl. Stat. § 687.01 *et seq*., and for violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*.  Defendant removed the case to the United States District Court for the Southern District of Florida on January 11, 2013.  Plaintiff moved to remand the case to State Court.  Defendant filed a motion to compel arbitration based on an arbitration clause in the loan documents.  By Order dated February 15, 2013 (Docket No. 33), this Court entered an Order denying Plaintiff's motion to remand, and granting Defendant's motion to compel arbitration and to stay discovery.  The Court's decision was based on language in the loan agreement stating that

any dispute will be resolved by "Arbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules…." (See loan agreement, attached as Exhibit 3 to the Notice of Filing).

Plaintiff now moves for reconsideration of the Order compelling arbitration due to a number of facts that have come to light:

- The purported Tribal arbitration process set forth by the purported Western Sky loan agreement herein does not exist;

- The purported Tribal consumer dispute rules recited in the loan agreement do not exist;

- The purported option to arbitrate before three Tribal Council members does not exist;

- Neither the Tribe nor the Tribal Court conducts arbitration nor does the Tribe or its Court support the arbitration sought herein;

- CashCall and its lending partner Western Sky unilaterally chose the purported arbitrator, Mr. Robert Chasing Hawk, by Western Sky's President Martin "Butch" Webb contacting Mr. Chasing Hawk;

- Mr. Chasing Hawk's daughter works as a loan officer for Western Sky (clear grounds for a conflict and recusal under the rules and ethical standards of respected arbitration agencies);

- The May 1, 2013 letter Mr. Chasing Hawk purportedly wrote, in which he denied having any connections to Defendant, was ghostwritten by the Human Resources Manager for Western Sky with help from CashCall's in-house counsel;

- At the preliminary, first telephone hearing in the arbitration which occurred on June 21, 2013, Mr. Chasing Hawk admitted his daughter worked for Western Sky, admitted there were no Tribal rules, and threatened Mr. Inetianbor for raising these and other issues;

- Approximately a dozen States and the FTC have sued CashCall and/or Western Sky for illegal and usurious lending and have obtained cease-and-desist orders and penalties;

- Even under the Tribe's own law (which the loan agreement insists exclusively applies), the loans violate the Tribe's own criminal usury statute; and

- Plaintiff on July 3, 2013 filed in the arbitration an amended arbitration demand requesting an immediate hearing on Plaintiff's motion that the arbitrator recuse himself, end the arbitration for many of the reasons stated above, and provide other relief. It is now nearly two weeks later and the Plaintiff has heard nothing back from the arbitrator.

Based on these facts, this Court should reconsider its prior Order and re-open the case and should not require further proceedings in arbitration.

## II.    FACTUAL AND PROCEDURAL BACKGROUND.

The Plaintiff provides a detailed summary of the background proceedings in this case as it is necessary to demonstrate the injustice of Defendant's machinations to date.

### A. Original Florida State Court Proceedings.

The Plaintiff, Abraham Inetianbor, then acting *pro se*, filed his original Complaint against CashCall, Inc. on July 12, 2012 in the Broward County Court. (*See* Doc. 1-4, p. 4 of 63). The claim alleged "defamation" because "[t]he Defendant wants me to pay 135% interest rate on a loan that is legally paid off." (*Id.* p. 5 of 63). CashCall does not deny that Mr. Inetianbor actually paid back all that he was loaned and more.[1]

On October 19, 2012, Defendant filed a motion to dismiss or for more definite statement. (*Id.*, p. 13). Importantly, the motion did not include any motion to dismiss the complaint on grounds of any arbitration clause existing in the loan agreement. (*See id*.). This is despite the fact that CashCall was well aware at the time that the dispute arose out of a Western Sky loan agreement containing a purported arbitration clause.

On December 3, 2012, the Court denied the motion to dismiss but granted the motion for a more definite statement. (*Id.* at 46). Mr. Inetianbor filed his amended complaint on

---

[1] The loan agreement is dated January 5, 2011. (*See* Amended Arbitration Claim ¶ 10, filed herewith as Exhibit to Notice of Filing). Western Sky loaned him a net amount of $2,525. Mr. Inetianbor paid back approximately $3,252 – substantially more than he received. (*See id.* ¶ 11). In 2012, CashCall reported Mr. Inetianbor as late on his loan payments with an amount still owing. (*See* Doc. 1-4, p. 5 of 63). Plaintiff alleged "defamation of character," elaborating that because CashCall sent in derogatory information to Credit Reporting Agencies, his credit score went down. (*Id.*).

December 17, 2012.  (*Id.* at 47).[2]  It included a new claim for usury under Florida law.  (*Id.* at 48).[3] It also included a claim under the Fair Credit Reporting Act. (*Id.* at 48-49).

**B.  Removal to Federal Court.**

Defendant removed the case on January 11, 2013 to this Court.  The stated basis for removal was the addition of the Federal FCRA claim in the State Court Amended Complaint.

On January 14, 2013, Plaintiff filed a motion to remand the case to State Court.  (Docket No. 4).  On January 24, a scheduling conference was held before Magistrate Judge Seltzer. (Docket No. 15).

**C.  CashCall's Belated Motion to Compel Arbitration.**

On January 24, 2013 – more than six months after Plaintiff had originally brought the case – Defendant moved the Court to order arbitration under the Federal Arbitration Act and the purported arbitration provisions in the loan agreement.  (Docket No. 16).  Defendant also moved to stay discovery.  (Docket No. 18)  In moving to compel arbitration, Defendant argued that the matter was properly subject to arbitration because Mr. Inetianbor's loan agreement stated:  "You

---

[2] The Amended Complaint added details including that he made his last loan payment in or about December 2011. On December 16, 2011, CashCall threatened him that it would report negative information on his credit report unless he made more payments.  (*Id.* at 47).  He demanded that it remove the bad credit information – giving CashCall every opportunity to simply correct his credit report.  If it did that, he would not sue.  (*Id.* at 47-48).  His Equifax credit report reported late payments and a credit score 128 points lower than what a report from Experian showed (*i.e.*, the Equifax report with the negative CashCall information was a 592 credit score, while the Experian report was 720).  He received denial letters from Regions Bank and Chase Bank on applications for credit cards.  The banks denied him credit because of the derogatory information on his credit report from CashCall and his credit report was otherwise good.  (*Id.* at 47-48, *see* denial letters at 53-57).

[3] Plaintiff alleged that as of December 2011, he had paid back more than what he was loaned, paying back an amount with interest at 30%, about double the usury limit under Florida law.  (*Id.* at 48). Defendant sought to force him to pay over $11,000 on the loan.  When he refused, Defendant continued to press him to pay a purportedly generously reduced amount of about $2000 (above and beyond what he had already paid).  (*Id.* at 48).  (This is consistent with his credit report showing a claimed balance still due of $2,491.  *See* Doc. 1-4, p. 5 of 63).

agree that any Dispute, except as provided below, will be resolved by <u>Arbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement</u>." (Docket No. 16, p. 3, emphasis added).[4]

On January 28, 2013, Plaintiff filed an opposition to CashCall's arbitration motion arguing that CashCall and Western Sky were two different entities. Plaintiff also pointed to various other actions that had been brought against Western Sky and/or CashCall in other jurisdictions. (Docket 19).[5] Plaintiff also filed an opposition to CashCall's motion to stay discovery noting Defendant's 100-plus day delay (July 2012 through January 2013) to file its motion for arbitration. (*See* Docket No. 23, p. 2).

On February 1, 2013, Plaintiff filed a notice to Defendant that he would reduce his demand to settle the matter to $5,549.80. (Docket No. 25). In the filing, he explained the fear and fatigue caused by litigating the matter for months on end without the assistance of counsel. He described his situation with his family including his wife's medical condition, his young daughter and his own stress. (*Id.* p. 3). CashCall, however, ignored Plaintiff's offer and continued to litigate. On February 7, 2013, CashCall filed its reply brief in favor of its motion

---

[4] As argued below, however, there is, in fact, no arbitration "conducted" by the Tribe, the Tribe does not have any "authorized representatives" to do arbitration, and there are no "consumer dispute rules" to govern any arbitration. CashCall's January 24, 2013 filing also sought to head off a waiver argument by directing attention to the Amended Complaint as the "operative pleading" to efface the fact that Mr. Inetianbor had filed his original complaint many months before. (*See id.*, pp. 1-2).

[5] Defendant waived its right to request arbitration by waiting over six months to bring the motion when CashCall knew very well from the start that the dispute arose from a Western Sky loan. This is a valid basis in itself to deny the motion to arbitrate, since the courts have found that if a Defendant engages in filings, hearings and arguments on the merits in a case, and then only files its arbitration motion later, that Defendant waives its right to demand arbitration.

for arbitration in which it repeated the contractual language it claimed obligated the Court to order arbitration.  (Docket No. 26, at p. 3).

CashCall denied that it had waived arbitration,  asserting "there was no delay in moving to compel arbitration."  (Docket No. 26, pp. 8-10).  It explained that it first moved to dismiss and for a more definite statement because it could not "figure out" the basis for Plaintiff's claim; it argued that only after receiving the Amended Complaint, could CashCall realize that the dispute related to a Western Sky loan. (*See id.*).  In arguing such, CashCall failed to advise this Court that <u>it is immediately "assigned" every loan Western Sky makes;</u>[6] that it is the lending partner of Western Sky coast-to-coast; that it knew that Plaintiff's lawsuit arose out of a Western Sky loan, and that it and Western Sky have been subject to numerous lawsuits, agency investigations, and cease-and-desist orders in many jurisdictions. (See list of orders attached to the amended arbitration demand).  For example, the State of New Hampshire has found that Western Sky simply acts as a "front" for CashCall so that CashCall can disguise its usurious loans under the rubric of purported Tribal law and arbitration.  Thus, it appears that Defendant, for strategic reasons, tried to get out of the case for months without raising the arbitration clause, and then only after six months, did it move to arbitrate.[7]

---

[6] See New Hampshire Order dated June 5, 2013, at p. 4, attached as Exhibit 4 to the Notice of Filing.  Accordingly, the New Hampshire Banking Department found Western Sky to be "nothing more than a front to enable CashCall to evade licensure by state agencies and to exploit Indian Tribal Sovereign Immunity to shield its deceptive business practices…." *Id.*, p. 5.

[7] "'[W]aiver occurs when a party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate.'" *Ivax Corp. v. B. Braun of Am., Inc*., 286 F.3d 1309, 1315-16 (11th Cir. 2002) (quoting *Morewitz v. West of Engl. Ship Owners Mut. Prot. & Indem. Ass'n*, 62 F.3d 1356, 1366 (11th Cir. 1995)).  Here, Defendant filed motions and attended hearings for more than six months before moving for arbitration.  Only belatedly and after putting the *pro se* Plaintiff through incredible stress did CashCall then change strategy and insist on arbitration.  Now that the Court has been advised of the facts reflecting that CashCall

**D. February 15, 2013 Order Allowing Arbitration.**

By Order dated February 15, 2013 (Docket No. 33), this Court entered an Order denying Plaintiff's motion to remand, and granting Defendant's motion to compel arbitration and to stay discovery. The Court noted the loan agreement language stating that the Tribal Courts had sole jurisdiction. Order at p. 2. The Court also quoted the loan agreement stating that any dispute will be resolved by "Arbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules…." *Id.*[8]

**E. Plaintiff's Motion to Re-Open the Case.**

On March 12, 2013, Plaintiff filed a notice that he was complying with the Court's orders and he had submitted an arbitration demand. (Docket No. 36). Plaintiff noted that he had sought to exercise his option (provided for in the loan agreement) to have the arbitration be before three Tribal Council members, but he had learned from Mediator/Magistrate Mona Demery of the Tribal Court that in fact, the Tribe does not conduct arbitration. *Id.* (This in itself constitutes good grounds to deny arbitration: the purported agreement gave the consumer a right to arbitrate before three Tribal Council members; yet in fact, the Tribe did not authorize any such arbitration mechanism). His arbitration notice plainly stated that he sought to arbitrate before three Tribal Council members as his loan agreement provided. (Docket No. 36, at p. 5 of 7). He attached the letter from Mediator/Magistrate Demery dated March 8, 2013 and stating that the Tribe does not authorize arbitration. (*Id.*, p. 7).

---

knew from the outset that this was a Western Sky loan, the Court should deny arbitration on waiver grounds as well.

[8] In fact, contrary to what is stated in the loan agreement, the Tribal Court does not have subject matter jurisdiction; there are no consumer dispute rules; and the Tribe does not conduct arbitration. The Order did not address whether CashCall waived any right to demand arbitration due to the delay in seeking to arbitrate.

On March 12, Plaintiff also filed a motion to re-open the case based on those facts. (Docket No. 37).   On March 13, Plaintiff again filed a motion for leave to file a Second Amended Complaint.   (Docket No. 38).   On March 14, CashCall filed a notice in which it accused Plaintiff of proceeding improperly and suggested that if three Tribal Council members were not available, the parties could select one Tribal Elder or even select an arbitrator from the AAA or the JAMS arbitration agencies.  (Docket No. 39).[9]

On March 18, 2013, Plaintiff filed a Reply in which he described how CashCall had misrepresented his actions, and how CashCall representatives including Alissa Chavez and Dan Baren were involved. (Docket No. 42, p. 2).[10]  Plaintiff attached a copy of the Western Sky loan agreement.  (*Id.*, starting at p. 11 of 20).

On March 29, 2013, CashCall filed an opposition to Plaintiff's motion.  (Docket No. 43). CashCall now attempted to characterize the parties as essentially being in agreement that the AAA could be the arbitrator and cited case law to argue that even if arbitration was not possible under the loan agreement, the Court could order it to occur by some other means.

**F.   April 1, 2013 Order Re-Opening the Case.**

On April 1, 2013 (Docket No. 45), the Court granted Plaintiff's motion to reopen the case. The Court noted that Plaintiff attempted to submit the case for arbitration to the Tribe; however Mediator/Magistrate Demery responded with the letter dated March 8, 2013, stating that the Tribe "does not authorize Arbitration…."  Order, p. 2.  The Court noted that "if the choice of forum is an integral part of the agreement to arbitrate, rather than 'an ancillary logistical

---

[9] CashCall knew very well that the Tribe did not authorize arbitration.  The invitation to proceed before the AAA or JAMS appears to recognize this fact.

[10] In fact, Mr. Baren is CashCall's in-house counsel who was involved in drafting the letter the arbitrator, Mr. Chasing Hawk, sent as his own in which he claimed he had no conflict of interest.  See Amended Arbitration Demand ¶ 98; and Amended Demand Exhibit 7.

concern,' [then] the failure of the chosen forum [will] preclude arbitration."  Order, pp. 2-3

(citing *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000)).  The Court

noted that the FAA "does not operate to force the parties to arbitrate before one forum when they

have explicitly agreed to arbitrate before a different forum."  Order, p. 5.  "Plaintiff has made a

showing that the arbitration forum specified in the subject arbitration agreement is not available."

*Id.*  The Court noted that the loan agreement stated disputes were to be resolved by arbitration by

the Tribe; with a choice of a Tribal Elder or a panel of three members of the Tribal Council; and

"arbitration will be conducted pursuant to tribal laws and consumer dispute rules. Based on these

factors, it is clear that the choice of the tribal forum was integral to the parties' agreement to

arbitrate."  Order, pp. 6-7.  The Order found that per the loan agreement, arbitration "shall be

conducted by the Cheyenne River Sioux Tribal Nation."  Order, p. 7.  "Given the repeated,

specific, and exclusive references to the tribe's role throughout the arbitration agreement, the

Court concludes that the choice of arbitrator was as important a consideration as the agreement

to arbitrate itself."  *Id.*[11]

**G.  CashCall's Renewed Motion to Compel Arbitration.**

On April 23, 2013, Defendant renewed its motion to compel arbitration.  (Docket No.

53).  It argued that "arbitration in accordance with the arbitration provision is, in fact, possible –

and CashCall's has submitted the appropriate Demand for Arbitration to a Tribal Elder of the

Cheyenne River Sioux Tribal Nation."  (*Id.*, pp. 1-2).[12]

---

[11] Plaintiff contends this Order was correct and should be reinstated.  The Court filed a second April 1 Order granting the Plaintiff's motion to file a Second Amended Complaint. (Docket No. 46).  Plaintiff filed it on April 3.  (Docket No. 48).

[12] What CashCall did not tell this Court was that it selected Robert Chasing Hawk, unilaterally without Plaintiff's consent, to act as arbitrator.  The Tribe has neither licensed nor

Defendant also attached a second letter by Mediator/Magistrate Demery stating that arbitration as a matter of contract is permissible. (*Id.*, p. 2). Defendant also adds an incorrect representation that "after such an arbitration has been conducted, an 'Arbitration Award' will be issued under the auspices of the Cheyenne River Sioux Tribal Court." (*Id.*, p. 3). In fact, if this Court allows the arbitration before Mr. Chasing Hawk to proceed further, an award "under the auspices of the ... Tribal Court" will not be issued. Further, the purported "example of one such award" that Defendant attached was regarding a building project dispute on Tribal land that went to arbitration by party agreement on referral from the South Dakota Federal Court. (*Id.*). In fact there have never been any prior consumer arbitrations under CashCall/Western Sky loan agreements like this one, and it is clear from the transcript of the first hearing in this matter (which occurred shortly before Mr. Inetianbor retained the undersigned) that the arbitrator and CashCall are literally making up the rules as they go along.

On April 29, 2013, Plaintiff filed his brief opposing this renewed demand to arbitrate. (Docket No. 56). Plaintiff properly noted that he had not agreed to this procedure and that the Court should not reverse its prior decision. On May 9, CashCall filed its reply brief. (Docket No. 57). CashCall presented the purportedly Tribal-authorized arbitration as a *fait accompli* that was already taking place: "CashCall's arbitration demand has been accepted and the arbitration is in process." (*Id.*, p. 1). Defendant brushed off the fact that arbitration before three Tribal Council members (as provided for by the contract) was not possible, ignored the fact that there were no Tribal arbitration rules, and simply insisted that because it already started an arbitration before Mr. Chasing Hawk, the Court's prior order did not matter. (*Id.*, see p. 7 claiming "the arbitration is in process"). Defendant also attached a purported letter from Mr. Chasing Hawk

---

authorized Mr. Chasing Hawk as an arbitrator; and what Plaintiff had requested as arbitration before three Tribal Council members.

dated May 1, signed May 3 and purporting to state that he had agreed to be the arbitrator and had "no preexisting relationship with either party in this case." (Docket No. 57-1).[13]

**H.  May 17, 2013 Order Compelling Arbitration.**

On May 17, 2013 (Docket No. 59), the Court filed its Order granting Defendant's new motion to compel arbitration.  The Court specifically relied on the letter from Mr. Chasing Hawk Order, p. 3.  The Court found that "Tribal Elder Robert Chasing Hawk, Sr., has agreed to arbitrate the case and is in the process of scheduling a hearing on preliminary matters…."  Order, p. 5.  The Court found that "CashCall has properly submitted this action to arbitration, and that the designated forum is available to conduct arbitration."  Order, p. 5.  The Court further found, relying on representations by CashCall, that "Plaintiff has not given the Court any reason to believe that the selection process would lead to a biased arbitrator."  Order, p. 8.   Further the Court found that "there is no evidence that the tribal arbitrators were trained by or have any other connection with CashCall."  Order, p. 8.

The actual facts, however, contradict the Court's findings.  The "no relationship" letter Chasing Hawk purportedly wrote was actually written for him by CashCall/Western Sky.  Contrary to Mr. Chasing Hawk's assertion that no relationship with either party exists, his daughter works for Western Sky.  Nowhere was that fact mentioned by Mr. Chasing Hawk in "his" letter.  Contrary to CashCall's representations, there is no "forum" available because the Tribe does not conduct arbitration, there are no tribal rules to govern arbitration, and Mr. Chasing Hawk holds no Tribal Government position.  Rather, he is simply an acquaintance of

---

[13] As explained further in the amended arbitration demand, Plaintiff later discovered that **this letter was secretly written for the supposedly impartial arbitrator by Western Sky and CashCall's in-house counsel. Plaintiff also discovered that Mr. Chasing Hawk's daughter is a loan officer for Western Sky.**  *See* Amended Arbitration Demand ¶¶ 97-99, 106.

Mr. Webb, the President of Western Sky. Finally, Mr. Chasing Hawk does not hold a license to arbitrate and does not have any training or qualifications to arbitrate.

### I. Plaintiff's Motion to Reconsider.

On May 21, Plaintiff filed motions to reconsider and to re-open the case calling the Court's attention to evidence that Mr. Chasing Hawk's daughter worked for the lender's enterprise. (Docket Nos. 61, 62). On June 6, 2013, Defendant filed briefs in opposition to the motions, asserting that the arbitrator's daughter's employment simply made no difference. (Docket No. 65, 66).   On June 10, Plaintiff filed reply briefs calling to the Court's attention the fact that Western Sky had ghostwritten Mr. Chasing Hawk's letter and that he admitted this fact. (Docket No. 67, 69).   Further, Plaintiff attached documentary evidence proving Defendant's involvement – someone at Western Sky-associated entity "Lakota Cash" had emailed the letter to Mr. Chasing Hawk on May 3, 2013 with instructions that he send it to the Plaintiff.  This email is attached in redacted form to Plaintiff's brief at Docket No. 67, p. 7 of 13.

### J. June 20, 2013 Order Denying Motion to Reconsider.

On June 20, 2013 (Docket No. 70), the Court filed its Order denying the Plaintiff's motion that it reconsider its prior May 17 Order requiring arbitration.   The Court noted that the purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence.  Order, p. 4.  The Court concluded that Plaintiff essentially argued the arbitrator was biased, which was premature since it should be raised on a motion to vacate an arbitration award once it was entered.   Order, pp. 6-7.

### III.   LEGAL STANDARD.

The legal standard on a motion to reconsider the Court's May 17, 2013 Order is set forth in this Court's June 20, 2013 Order (Docket No. 70).  As noted there, the May 17 Order is not a

final order. Therefore, it is subject to revision at any time before the entry of a final judgment. Order, pp. 3-4 (citing Fed. R. Civ. P. 54(b); *Coty Inc. v. C Lenu, Inc*., Case No. 10-21812, 2011 U.S. Dist. LEXIS 14813, at *7 (S.D. Fla. Feb. 15, 2011) ("A district court, in its discretion, can modify or vacate a non-final order at any point prior to the entry of a final judgment.")).

The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present new evidence.  Order, p. 4 (citing *Burger King Corp. v. Ashland Equities, Inc*., 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002); Z.*K. Marine, Inc. v. M/V Archigetis,* 808 F. Supp. 1561, 1563 (S.D. Fla. 1992)).  Grounds that justify reconsideration include the availability of new evidence; and the need to correct clear error or prevent manifest injustice.  June 20, 2013 Order, p. 4.  Proper issues the Plaintiff may raise at this stage include "whether the parties entered into a valid arbitration agreement." Order, pp. 5-7.  "Therefore, in order to meet his burden for reconsideration, Plaintiff must show a change in controlling law, newly-available evidence, or a need to correct clear error that pertains to the threshold questions of arbitrability."  Order, p. 5.

## IV.   ARGUMENT.

At the outset, it should be noted that up until recently, Plaintiff has proceeded *pro se*. Plaintiff recently retained undersigned counsel to represent him in this matter.  Upon review of the file, it appears that sufficient new evidence exists in this case to warrant reconsideration of the Court's May 17, 2013 Order granting arbitration (and its June 20 Order denying reconsideration).  These new facts not only correct factual errors forming the basis of the Court's prior Orders but also shed light on the threshold question of arbitrability.  Simply stated, the loan agreement sets forth a purported arbitration procedure that does not exist and misrepresents the existence of Tribal consumer arbitration rules and other relevant facts.  Further, newly-available evidence in the form of the transcript of the preliminary arbitration hearing plainly reflects that

the so-called "arbitration" is nothing more than a "Kangaroo Court" with no governing rules or procedures.

Plaintiff contends that the subject loan violates Florida's usury statute and a host of other laws. The loan also violates the Tribe's own usury statute. (*See* amended arbitration demand, Exhibits 11 (Florida law), 19 (Tribal law)). Defendant contends that under the "severability doctrine," the Plaintiff must show fraud and illegality infecting not just the contract as a whole, but the arbitration provisions in particular. The facts reflect such fraud and illegality.

Specifically the "Agreement to Arbitrate" states as follows: "You agree that any Dispute, except as provided below, will be resolved by Arbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement." (Agreement, p. 3). First, the arbitration to date has <u>not</u> been "conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative…." To the contrary, the Tribe does not conduct arbitration and has not authorized Mr. Chasing Hawk (or anyone else) to conduct arbitrations on its behalf. This in itself renders the agreement fraudulent and unenforceable.

Second, the subject arbitration has <u>not</u> been conducted "in accordance with its consumer dispute rules." In fact there are no Tribal "consumer dispute rules." The representation that there are such rules is just another part of Defendant's attempt to mislead consumers and regulators that somehow its loans are protected by Tribal law. Nothing could be further from the truth.[14] Therefore, the arbitration part of the loan agreement is fraudulent and void along with the rest of the agreement.

---

[14] In fact the loans violate the Tribe's own criminal usury statute (Notice of Filing Exhibit 21). Defendant conspicuously avoids making loans to Tribal members or anyone on the Tribal reservation or indeed anywhere else in South Dakota for precisely this reason.

Plaintiff never agreed to allow Mr. Chasing Hawk to be the arbitrator.  CashCall picked him on its own.  Mr. Chasing Hawk has never arbitrated a consumer dispute like this one, and he is not licensed or qualified as an arbitrator by the Tribe or any known authority.  When Plaintiff asked CashCall what it is paying Mr. Chasing Hawk to be the arbitrator, he was told it was none of his business.  Despite requests for this information, CashCall has produced a copy of the contract they have with Mr. Chasing Hawk or records of what it is paying him.

Mr. Chasing Hawk's daughter works for Western Sky.  Although Mr. Chasing Hawk stated in his purported May 1, 2013 letter that he had no prior connection to any of the parties, this statement is inaccurate.  First his daughter works for the lender.  Second, the company actually wrote the letter he sent.  Neither of these facts was disclosed.  Indeed it was solely by happenstance that Plaintiff discovered that Mr. Chasing Hawk's letter was written by CashCall.[15] Mr. Chasing Hawk has admitted he did not write the letter.  He has said it was written for him by Tawny Lawrence, who is employed by Martin Webb.  In fact Ms. Lawrence is a Human Resources manager for Webb's payday loan business.  Thus, Mr. Chasing Hawk falsely stated that he did not have a relationship with any of the parties.

The "preliminary hearing" in this arbitration occurred by telephone on Friday, June 21, 2013.  Plaintiff was still representing himself *pro se* at the time of this hearing.  The undersigned had not yet been retained.  Mr. Inetianbor called in, and asked if he could tape-record the hearing.  Mr. Chasing Hawk said that he, too, was tape-recording the hearing.  Plaintiff is aware

---

[15] Mr. Chasing Hawk emailed him the letter on Friday May 3.  But when Plaintiff clicked to open the letter, it was not signed.  It was simply a Microsoft Word document.  Plaintiff noticed that Mr. Chasing Hawk was actually forwarding him another email that someone at a Lakota Cash email address had sent.  The email was sent from a Lakota Cash "HR" (human resources) email address.  The email was copied to the Bogue law firm, which has filed corporate papers for Webb's companies and responded to consumer complaints for him, and to Dan Baren, who is the in-house counsel for CashCall.

of no rule requiring these arbitration proceedings be held in secrecy (and not aware indeed of any

Tribal arbitration rules at all); nor would this be fair given that this arbitration affects not only

this case but other cases pending against Defendants in other jurisdictions.  Because there was no

court reporter for this proceeding, it had to be recorded to preserve any record of what transpired

for this Court. Plaintiff is entitled to have these proceedings be just as much in the public record

as Court proceedings are.  Plaintiff has requested that any future arbitration hearings be recorded

and transcribed by a court reporter.

A copy of the transcript is filed with a notice of filing herewith.  Plaintiff directs the

Court to the following sections of interest in the transcript:

- Page 4 – Mr. Inetianbor explains how he has not been provided with the arbitration rules and does not know what they are.

- Page 10 – Mr. Chasing Hawk asserts that Tribal law applies because "Western Sky is located on the reservation."  First, this is improper as the parties have not even briefed the issue of governing law to the arbitrator.  Second, CashCall is a California corporation not on the reservation.  Third, numerous court and state agency orders have found that tribal law does not apply and that state law applies.  (Fourth, even under the Tribal law itself, the loans are criminal usury).

- Pages 11-12 – Mr. Chasing Hawk admits that his daughter works for Western Sky/CashCall, "giving out the loans."

- Page 14 – After the arbitrator claims that a "tribal license" gives Western Sky the right to claim tribal law governs, Mr. Inetianbor again asks for a copy.  None has been produced.

- Pages 14-15 – Mr. Chasing Hawk admits he is not licensed by the American Arbitration Association (AAA or "Triple A").  He claims "as a tribal elder anyone can become an arbitrator as long as you know the rules and regulations of the procedures" – however to date no such rules or procedures have been produced.  Mr. Chasing Hawk also claims none of this is relevant.

- Page 17 – Mr. Chasing Hawk admits the owner of Western Sky asked him to be the arbitrator.  Mr. Chasing Hawk also says he has been on the Tribal Council for 20 years. However Plaintiff can finds no listing on the Tribe's website confirming that Mr. Chasing Hawk is currently on the Tribal Council.

- Pages 18-19 – Mr. Inetianbor asks Mr. Chasing Hawk to provide a written disclosure of all facts regarding his connections with Mr. Webb (who owns Western Sky) and his daughter's connections.  (To date, none has been received).[16]

- Page 20 – Mr. Chasing Hawk threatens Mr. Inetianbor ("if I was in your shoes I wouldn't ask what you're asking") after Mr. Inetianbor describes his discomfort at facts including that Chasing Hawk's daughter works for Western Sky.

- Pages 27-28 – After Mr. Inetianbor complains again about there being no rules to govern the arbitration, the arbitrator states that "you don't have to really follow rules" and "we'll agree we don't have to follow this and that because if we follow all the rules and regulations we're going to be jammed up here."  (In fact, Plaintiff has never agreed he will arbitrate without any governing rules).

---

[16] Arbitration agencies specifically require disclosure of such facts.  *See* 2013 FINRA Arbitration Rules Manual, p. 16 (arbitrator must disclose "immediate family member's employment, job functions or clients … 'immediate family member' is defined as: (i) a person's parent, stepparent, child or stepchild….") (**Exhibit 2**); ABA, Code of Ethics for Arbitrators in Commercial Disputes (arbitrator "should also disclose any such relationships involving their families or household members or their current employers…."); NASD Code of Arbitration Procedure (arbitrators must disclose "[a]ny existing or past financial, business, professional, family, social, or other relationships or circumstances that are likely to affect impartiality or might reasonably create an appearance of partiality or bias" and "must also disclose any such relationship or circumstances involving members of their families…."); AAA Consumer Due Process Protocol (same); AAA Code of Ethics for Arbitrators in Commercial Disputes (same). *See Morelite Constr. Co. v. New York City District Council Carpenters Benefit Fund*, 748 F.2d 79, 82 (2nd Cir. 1984) (arbitrator's father was the vice-president of union, and it was the union local that appeared in arbitration); *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 150 (1968) (improper where arbitrator was discovered to have an undisclosed business relationship with party; arbitrator must avoid even the "appearance of bias"); *Middlesex Mutual Ins. Co. v. Levine*, 675 F.2d 1197, 1201 (11th Cir. 1982) (adopting the "reasonable impression of partiality" standard); *Crow Constr. v. Jeffrey M. Brown Assocs., Inc.*, 264 F.Supp.2d 217, 220 (E.D. Pa. 2003) ("evident partiality" is established when an arbitrator fails to disclose "any dealings that might create an impression of possible bias"); *Gianelli Money Purchase Plan & Trust v. ADM Investor Servs., Inc.,* 146 F.3d 1309, 1312-13 (11th Cir. 1998) (award will be vacated due to "evident partiality" where arbitrator fails to disclose "information which would lead a reasonable person to believe that a potential conflict exists"); *Fed. Vending, Inc. v. Steak & Ale of Fla., Inc.*, 71 F. Supp. 2d 1245, 1246 (S.D. Fla. 1999) (same); *Woods v. Saturn Distrib. Corp.*, 78 F.3d 424, 427 (9th Cir. 1996) ("In nondisclosure cases, *vacatur* is appropriate where the arbitrator's failure to disclose information gives the impression of bias in favor of one party."); *Nationwide Mut. Ins. Co. v. Home Ins. Co*., 429 F.3d 640, 647 (6th Cir. 2005) (nondisclosure of a material relationship is evident partiality); *Montez v. Prudential Sec., Inc*., 260 F.3d 980, 983 (8th Cir. 2001) (arbitrator must disclose substantial relationships); *Schmitz v. Zilveti*, 20 F.3d 1043, 1046 (9th Cir. 1994) (arbitrator failed to disclose that his law firm previously had represented the parent company of one of the parties to the arbitration).

Plaintiff respectfully shows that this amended claim and its contents, and the hearing transcript, are relevant to the Plaintiff's motion asking that this Court reconsider its order allowing arbitration.  Further they clearly show that the arbitration is not proceeding under the required provisions of the loan agreement.

- The loan agreement requires applying the Tribe's "consumer dispute rules."  There are no such rules and the arbitrator has now confirmed he is applying no rules.

- The loan agreement requires arbitration "conducted" by the Tribe.  The Tribe has not authorized this arbitration nor is Mr. Chasing Hawk an Official with the Tribe nor has the Tribe authorized him to arbitrate.

- The loan agreement requires the consumer to have a choice of three Tribal Council members or a Tribal Elder.  Mr. Inetianbor asked for the former but was told it was not available.  He is not getting what he bargained for.

- Because there are no consumer dispute rules governing and the proceedings are thus "lawless," obviously improper conduct has been taking place:  the arbitrator sent a ghostwritten letter with false information; he hid the fact that his daughter works for the lender; he has prejudged the issue of whether Tribal law applies; he has refused to disclose information routinely provided by arbitrators in other matters bearing on bias and conflict of interest.  Plaintiff has no consumer dispute rules to point to in order to ensure fairness – he did not agree to arbitration such as is now occurring.

- Finally, as reflected by the procedural history of this case, CashCall in fact waived its ability to request arbitration by litigating the case for months when it was well aware that the matter involved a Western Sky loan agreement.

The bottom line is, Plaintiff has been forced to comply with an unfair arbitration proceeding, which has no set rules or procedures, a fact that became more apparent once the arbitration process began.[17]

---

[17] Numerous other defects in the loan agreement and arbitration clause are outlined in the amended arbitration demand.  For instance, the agreement states that CashCall will pay the "filing fee" for the arbitration, making it again sound as if the Tribe has an established procedure. (Agreement, p. 4).  In fact, because the Tribe does not have any arbitration rules or procedures there is, upon information and belief, no such "filing fee."  The agreement defines "disputes" broadly and says they all must be arbitrated, but then states that any disputes regarding the purported class action ban must be litigated before the Tribal Court.  (*Id.*, pp. 3-5).  Yet the

After this preliminary hearing, the Plaintiff retained counsel. On July 3, 2013, Plaintiff, through counsel, promptly submitted an amended demand to the arbitrator with a request for an immediate hearing. It is now 13 days later, and Plaintiff has not received a response from the arbitrator. Since there are no consumer dispute rules to govern this arbitration, Plaintiff has no recourse, absent this Court's intervention.

There are now (along with ongoing State Agency and FTC proceedings) consumer class actions pending against Western Sky and/or CashCall in North Carolina, Illinois, and South Dakota.[18] The Defendants routinely raise this purported arbitration clause and associated choice of law and forum clauses as a defense. This Court is currently presiding over the only known consumer arbitration to actually have commenced under the arbitration clause. The Plaintiff asks that the Court order the stay in this case lifted and allow the Plaintiff to begin discovery in this matter and to litigate his case in Court.

The Plaintiff requests that this Court hold the arbitration agreement unenforceable. In the alternative, the Plaintiff requests the Court find there are genuine issues of material fact regarding the enforceability of the arbitration clause, and allow discovery on this issue.

---

Tribal Court lacks subject matter jurisdiction over these loans, which are never issued to Native Americans, tribal members, reservation dwellers, or persons living in South Dakota. Rather, the loans were offered via the internet to consumers thousands of miles away who never entered the reservation and who are protected by their States' consumer protection laws. The agreement purports to force Tribal venue, law, and arbitration on the consumer when in fact the real lender is a California non-tribal corporation, *i.e.* CashCall, which has no right to shield itself from suit by virtue of the provisions in this contract. To date neither CashCall nor Mr. Chasing Hawk has provided the "consumer dispute rules" that are supposedly governing the arbitration.

[18] *Brown v. Western Sky Financial LLC, et al.*, Case No. 1:2013-cv-00255, M.D.N.C., Complaint filed March 28, 2013, *Jackson v. Payday Financial, LLC*, Case No. 1:11-cv-09288, N.D. Ill., Complaint filed December 29, 2011; *Heldt v. Payday Financial, LLC, et al.*, Case No. 3:13-cv-03023-RAL, D.S.D., Complaint filed July 11, 2013.

## <u>CONCLUSION</u>

Plaintiff respectfully requests that the Court allow his motion to reconsider the Order allowing arbitration and to re-open the case.

Respectfully submitted, this the 16th day of July, 2013.

<u>s/Cathy Williams</u>
Cathy Williams (licensed in NC and Florida)
WALLACE & GRAHAM, P.A.
525 N. Main St.
Salisbury, NC 28144
704-633-5244 Telephone
cwilliams@wallacegraham.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2013, I served the foregoing document on all counsel of record, by ECF filing, email and/or regular mail, as follows:

Christopher Stephen Carver, Esq.
Andrew Mikel Shapiro, Esq.
Akerman Senterfitt
One Southeast Third Avenue
25th Floor
Miami, FL 33131
christopher.carver@akerman.com
andrew.shapiro@akerman.com

This the 16th day of July, 2013.

s/Cathy Williams
Cathy Williams (licensed in NC and Florida)
WALLACE & GRAHAM, P.A.
525 N. Main St.
Salisbury, NC 28144
704-633-5244 Telephone
cwilliams@wallacegraham.com

## LIST OF EXHIBITS

1. Proposed Order.
2. Selected Arbitration Agency Rules.