UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 13-60066-CIV-COHN/SELTZER

| | |
|---|---|
| ABRAHAM INETIANBOR, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CASHCALL, INC., | ) |
| | ) |
|     Defendant. | ) |
| _____ | ) |

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION REQUESTING DISCOVERY ON ARBITRATION CLAUSE AND RELATED ISSUES**

Plaintiff, Abraham Inetianbor, through counsel, hereby respectfully submits his brief in support of his motion pursuant to Fed. R. Civ. P. 26 requesting that the Court allow discovery.

**I.    NATURE OF THE MATTER BEFORE THE COURT.**

Plaintiff on July 16, 2013 moved the Court to reconsider its order requiring arbitration of this matter and requested that the Court re-open the case, and filed a related Notice of Filing with exhibits, and a request for a hearing (Docket Nos. 72-74). Plaintiff supplements that submission with the instant motion requesting that the Court allow discovery on issues raised by the arbitration clause and the Defendant's demands that this matter must proceed before an arbitrator and not in this Court. Should the Court not find that the arbitration clause is void, the Court should at minimum reopen the case to permit discovery. Plaintiff requests that this motion be heard at oral argument on August 16, 2013, along with the motion to reconsider filed July 16.

**II.   ARGUMENT.**

The key factual issues going toward the arbitration clause in this case include:

- Mr. Inetianbor's loan agreement states that the arbitration will be "<u>conducted by</u> the Cheyenne River Sioux Tribal Nation" (the "Tribe") (See his loan agreement, Docket

1

No. 73-3, page 5 of 8, emphasis added).  However all information to date is that the Tribe does not "conduct" arbitrations nor is the currently ongoing arbitration being "conducted" by the Tribe as his loan agreement promised.  Plaintiff is entitled to discovery including seeking information and/or testimony on whether the Tribe has ever "conducted" arbitrations. If the Tribe does not conduct arbitrations, this reflects that this arbitration agreement is unenforceable.

- Mr. Inetianbor's loan agreement states that the arbitration will be "conducted" under the Tribe's "<u>consumer dispute rules</u>." (Docket No. 73-3, page 5 and page 6, emphasis added). Plaintiff cannot locate any such rules and does not believe any exist.  If there are no such rules, it shows the agreement is unenforceable.  Plaintiff is entitled to discovery on whether the consumer dispute rules exist, and on why Defendant put this language in the arbitration/loan agreement when no such rules existed.

- Mr. Inetianbor's loan agreement states that he had the option of demanding arbitration before "a panel of three (3) members of the Tribal Council." (Docket No. 73-3, page 6 of 8).  Yet when he sought that after this Court ordered arbitration, he was rebuffed and instead, CashCall unilaterally chose Mr. Chasing Hawk, who is not a member of the Council.  Plaintiff is entitled to discovery on whether this option which the loan agreement expressly promises, in fact exists.

- Plaintiff is entitled to discovery regarding whether the Tribal laws and rules are readily accessible for consumers.  This is an issue that the Seventh Circuit has found important in the *Jackson* lawsuit, discussed below.  If the laws are not readily accessible, this tends to reflect how the contract provisions are unconscionable.

- Plaintiff is entitled to discovery on whether the Tribe licensed, approved or authorized Mr. Chasing Hawk to be an arbitrator for the Tribe or on this case, and what is the meaning, if any, of his asserted status as a "Tribal Elder."  Mr. Chasing Hawk asserts that as a "Tribal Elder" he is entitled to arbitrate this matter despite having no apparent qualifications, licensing or experience as an arbitrator of consumer disputes.

- Plaintiff is entitled to discovery on the contract and payment arrangements between Mr. Chasing Hawk and Defendant or other interested parties.  To date Defendant and Mr. Chasing Hawk refuse to provide this information.  Plaintiff is entitled to information on what the arbitrator is being paid for this very arbitration and what his arrangements are with the Defendant or other interested parties.

- Plaintiff is entitled to discovery on Mr. Chasing Hawk's education, qualifications, licensing and authorization as an arbitrator, and information on potential conflicts and bias.  Plaintiff never agreed for Mr. Chasing Hawk to be the arbitrator and is entitled to all relevant information about the arbitrator.  So far, neither CashCall nor Mr. Chasing Hawk has agreed to provide such disclosures.  Accordingly, Plaintiff requests that this Court order them to do so.  Without this discovery, Plaintiff is

stymied in his effort to build a record for this Court on the issue of arbitrator bias, conflict of interest, qualifications, and competence.

- Plaintiff is entitled to discovery on facts regarding any of Mr. Chasing Hawk's family members working for the CashCall/Western Sky enterprise, who his family members and relatives are, and whether any of them have affiliations with the enterprise. Under the basic arbitration rules and ethical rules that normal arbitration organizations apply, these are all facts that should have been disclosed and that Mr. Inetianbor had a right to know before this arbitration ever began.

- Plaintiff is entitled to discovery on facts regarding "ghostwritten" communications that the arbitrator Mr. Chasing Hawk sent out as his own. Mr. Chasing Hawk admits his May 1, 2013 letter, which was sent out under his signature, was not written by him. (The letter is found at Docket No. 73-9). In fact the letter was written by someone affiliated with Western Sky/CashCall. Docket No. 73-9 shows how someone at the email address of HR@LakotaCash.com sent Mr. Chasing Hawk the letter to send as his own. But for the fact that Mr. Chasing Hawk neglected to clean up the email first, Plaintiff never would have learned of this fraud – none of this was voluntarily disclosed by Defendant at any time. This email was copied on the in-house counsel for CashCall (Dan.Baren@CashCall.com), and the Bogue law firm (Boguelaw@yahoo.com) (known to file corporate filings for Western Sky and to write letters responding to consumer complaints for them). The letter states that "I have no preexisting relationship with either party in this case." The letter fails to note that his own daughter (Shannon Chasing Hawk) works for Western Sky making the very loans this case is about. (See Docket No. 73-8). The letter also fails to note that Western Sky/CashCall wrote the letter for him thereby showing an obvious "preexisting relationship." The impropriety of this letter is a very serious matter and violates the basic ethical standards of all reputable arbitration agencies. (Docket No. 72-3). In itself it is grounds to void any arbitration, and depending on what discovery shows, it may give rise to other claims against CashCall and/or to other sanctions and remedies.

- Plaintiff is entitled to depose Mr. Chasing Hawk's adult daughter, Shannon Chasing Hawk, who apparently still works as a loan officer for Western Sky. Plaintiff is also entitled to depose whoever wrote or was involved in writing Mr. Chasing Hawk's May 1 letter for him. Mr. Chasing Hawk said it was written by Tawny Lawrence, a human resources manager for Western Sky. (Docket No. 73-10). Plaintiff is entitled to depose Ms. Chasing Hawk, Ms. Lawrence, Martin Webb, Dan Baren and Mr. Chasing Hawk himself. Defendant has clearly opened the door on this issue and this discovery by continuing to this day to insist that the arbitration go forward.

- Plaintiff is entitled to discovery on whether the Tribe has laws that would govern these instant small internet loans made to non-Tribal Members in States outside South Dakota and off the Reservation. Thus far, Plaintiff has located a criminal usury statute in the Tribal Code under which these loans appear illegal. (See selected Tribal laws, Docket No. 73-21). However, the Tribal laws and court decisions also indicate

3

> that the Tribal Courts do not have jurisdiction over a loan made over the internet to a borrower in Florida, and that Florida law may apply. It would greatly facilitate Plaintiff's ability to contact, obtain information from, and obtain affidavits or deposition testimony from appropriate Tribal representatives to have this Court order the discovery.

- Whether CashCall was aware when Plaintiff first brought his lawsuit in State Court on July 12, 2012, that it involved a Western Sky loan with the purported arbitration language.

- CashCall's six month delay – until January 24, 2013 – to demand arbitration.

A.  **Developments in Other Cases Show Why Discovery Would Assist.**

In other actions brought against the CashCall/Western Sky organization, issues have arisen that reflect the appropriateness of discovery in this case. First, there is a pending consumer class action captioned as *Jackson v. Payday Financial, LLC*, N.D. Ill., case no. 1:11-CV-9288. The District Court in an Opinion dated July 9, 2012 granted the Defendants' motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3). *Jackson v. Payday Financial, LLC*, No. 11-cv-9288, 2012 U.S. Dist. LEXIS 94095 (N.D. Ill. July 9, 2012). Plaintiffs appealed. During the appeal, issues emerged concerning whether the tribal law is readily available to the public and whether the Tribe has a mechanism for arbitration. On May 22, 2013, the Seventh Circuit remanded the case for findings on these issues. (Exhibit 1). As stated therein:

> This case is currently under advisement. By letters submitted under Rule 28(j), the parties have raised two significant factual issues which may have bearing on the outcome of this case.
>
> First, by letters dated January 31 and February 4, 2013, the parties dispute whether the applicable tribal law is readily available to the public and, if so, under what conditions.
>
> Second, by letters dated April 3 and 5, 2013, the parties indicate that the governing authority of the Cheyenne River Sioux Tribe may not have an authorized arbitration mechanism available to the parties, thus making it uncertain whether the arbitrator and method of arbitration required under the contract is actually available.

(*Id.*)

More recently on June 25, 2013, the *Jackson* plaintiffs filed a submission in the district court with evidence going toward these issues. (Exhibit 2). In fact some of the evidence being offered in *Jackson* comes from the instant case. Plaintiff is entitled to discovery on the issues in this case going toward the enforceability of the arbitration clause and other provisions of the Western Sky loan agreement. Discovery is as relevant here as it was in *Jackson.*

Another pending case supporting discovery is *Brown v. Western Sky Financial LLC, et al.*, Case No. 1:2013-cv-00255, M.D.N.C., Complaint filed March 28, 2013. In that case (in which the undersigned's law firm is counsel), the Plaintiffs have alleged that one reason why the venue and arbitration clauses are unenforceable is because the applicable tribal law, if any, is not readily available. The *Brown* Plaintiffs have also alleged that the arbitration clause is void and unenforceable. Defendants (including CashCall) have argued there that since the instant Court sent this matter to arbitration here, so too should all other consumer claims in other courts be sent to arbitration. The issues in this case bear on other pending cases, and this Court is entitled to the development of a full record in order to decide these issues.

If the Tribe does not have an authorized arbitration mechanism, does not allow arbitrations to be "conducted" as Mr. Inetianbor's loan agreement represents, and does not have Tribal "consumer rules" for arbitration then there is no enforceable contract. Plaintiff believes there is already a clear enough record for this Court to strike the arbitration agreement and the other provisions in the contract, but in the alternative requests leave to conduct discovery.

**B.     Discovery is Appropriate in Light of the Legal Standard.**

Under Rule 26(b)(1):

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature,

5

> custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

This standard has been liberally construed.

Courts analyze arbitration issues under a summary judgment standard and many courts have allowed discovery on arbitration issues. This Court explained that a summary judgment-type standard applies in *Sims v. Clarendon Nat. Ins. Co.*, 336 F.Supp.2d 1311, 1314 (S.D. Fla. 2004): "The party opposing a motion to compel arbitration or to stay litigation pending arbitration 'has the affirmative duty of coming forward by way of affidavit or allegation of fact to show cause why the court should not compel arbitration.'" *Id.* (quoting *Aronson v. Dean Witter Reynolds, Inc*., 675 F.Supp. 1324, 1325 (S.D.Fla. 1987)). "This burden is not unlike that of a party seeking summary judgment." *Id.* (emphasis added, citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). Therefore, the party opposing arbitration should identify those portions of the pleadings, depositions, answers to interrogatories, and affidavits which support its contention. *Id.* (citing *Bertram v. Beneficial Consumer Discount Co.*, 286 F.Supp.2d 453, 456 (M.D.Pa. 2003) (on a motion to compel arbitration, "the court may consider the pleadings, documents of uncontested validity, and affidavits or depositions submitted by either party")).

Without discovery, the Plaintiff is unable to prepare a record including depositions, discovery responses, and so forth, for the Court. *See Guidotti v. Legal Helpers Debt Resolution, LLC*, No. 12-1170, Slip Opinion (3rd Cir. May 28, 2013) (allowing discovery on arbitration clause issues) (Exhibit 3), where the court noted that:

> But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in

> issue, <u>then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question</u>.

Slip op. at p. 23 (citations and internal quote marks omitted). The Third Circuit found that the plaintiff raised sufficient doubt about the existence of an arbitration agreement, and therefore the dispute should have been treated as one requiring discovery and a Rule 56 standard.

Here, Plaintiff has shown that the arbitration agreement states that arbitration is "conducted" by the Tribe – yet all evidence is the Tribe does not conduct arbitration. The agreement states Tribal "consumer dispute rules" will govern the arbitration. But consumer dispute rules do not appear to exist and the arbitrator has freely admitted he is applying no rules at all. (Docket 73-22, pp. 28-29).

In the present case, Mr. Inetianbor never agreed to arbitration in the manner in which it has proceeded thus far:

- Not being conducted by the Tribe although the loan agreement promised this;
- Proceeding under no consumer dispute rules although loan agreement promised this;
- Not proceeding before three Tribal Council members although loan agreement promised;
- No disclosure of arbitrator's contract or pay arrangements with Defendant although basic ethical standards for any arbitration require disclosure;
- No disclosure that arbitrator's own daughter worked as loan officer for the same lender Plaintiff got his loan from despite basic duty to disclose;
- No disclosure that company was ghostwriting arbitrator's letters;
- No response from the arbitrator to Plaintiff's demand over two weeks ago (July 3) for an immediate hearing.

Plaintiff never agreed to arbitrate before an unqualified arbitrator whose own daughter works for the companies associated with the company he has sued. He never agreed to arbitration with the company writing the letters the arbitrator signs as his own. Yet to date that is exactly what has been happening. If this Court does not grant Plaintiff's motion to stay arbitration at this time, then at least, as a matter of fundamental fairness the Court should allow Plaintiff discovery on these issues. <u>It is very important to note that the only reason Plaintiff</u>

7

<u>found out about the arbitrator's daughter working for Western Sky, or the ghostwritten letter, was through his own efforts. Defendant never voluntarily disclosed any of these facts</u>.

In addition, Plaintiff is entitled to discovery on the waiver issue. CashCall knew or should have known from commencement of the lawsuit against it that the clam involved a Western Sky loan agreement. Mr. Inetianbor complained to CashCall, before and after suing, about how the loan was unlawful and needed to come off his credit report. Yet instead of promptly moving for arbitration, CashCall waited over six months to demand it. During which time the (then *pro se*) Plaintiff had to respond to motions, go to hearings, and litigate all the while without any notice from the Defendant that it planned to rely on an arbitration clause.

Plaintiff believes discovery will confirm that CashCall knew from the beginning that when he first brought his lawsuit in State Court on July 12, 2012, it involved a Western Sky loan with the purported arbitration language. Yet it was not until January 24, 2013, more than six months after Plaintiff had brought the case, that CashCall moved this Court to order arbitration under the purported arbitration provisions. (Docket No. 16). Defendant also moved to stay discovery. (Docket No. 18). Thus Defendant waited until Plaintiff had endured months of litigation, which caused him great stress and prejudice. Then, Defendant strategically sought arbitration against the Plaintiff, at the same time seeking to bar any discovery that would allow him oppose the motion. This was unfair and Plaintiff is entitled to discovery on the waiver issue.

> *A party that substantially invokes the litigation machinery prior to demanding arbitration may waive its right to arbitrate*. Waiver occurs where a party substantially participates in litigation to a point inconsistent with an intent to arbitrate and this participation results in prejudice to the opposing party. Prejudice may be found if the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate. A court should examine the totality of the circumstances in determining whether there has been a waiver, including the length of delay in demanding arbitration.

*Dockeray v. Carnival Corp*., 724 F.Supp.2d 1216, 1221 (S.D. Fla. 2010) (emphasis added, quoting *Hodgson v. Royal Caribbean Cruises, Ltd*., 706 F.Supp.2d 1248, 1256-57 (S.D.Fla. 2010)). Here, Defendant waived its right to arbitrate by filing multiple court pleadings and documents and by taking months to demand arbitration. Meanwhile, the Plaintiff had to file numerous pleadings and was clearly prejudiced. Waiver "occurs where a party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate and this participation results in prejudice to the opposing party." *Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Assoc. (Luxembourg),* 62 F.3d 1356, 1366 (11th Cir. 1995) (citing *Price v. Drexel Burnham Lambert, Inc*., 791 F.2d 1156, 1158 (5th Cir. 1986)). Plaintiff is entitled to discovery on this issue.

Other courts have allowed discovery on arbitration issues. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 22 (1983) (in appropriate cases, a "restricted inquiry into factual issues" is necessary to properly evaluate agreement to arbitrate, and the non-movant "must be given the opportunity to conduct limited discovery"); *Champ v. Siegel Trading Co., Inc*., 55 F.3d 269, 276 (7th Cir. 1995) ("[I]n a proceeding under section 4, which consists of a preliminary determination on whether the parties intended an issue to be referred to arbitration, a district court could order discovery pursuant to Fed.R.Civ.P. 26 on matters relevant to the existence of an arbitration agreement."); *Parilla v. IAP Worldwide Servs., V.I., Inc*., 368 F.3d 269, 284 (3rd Cir. 2004) (allowing discovery on issue of whether an arbitration clause is unconscionable); *Deputy v. Lehman Bros., Inc.,* 345 F.3d 494, 511 (7th Cir. 2003) (discovery on the arbitration agreement); *Hicks v. Citigroup Inc*., No. C11-1984-JCC, 2012 WL 254254 (W.D. Wash. Jan. 26, 2012) (permitting limited discovery related to arbitration agreement); *Hesse v. Sprint Spectrum, L.P*., No. C06-0592 JLR, 2012 WL 37399 (W.D. Wash. Jan. 9, 2012) (pre-

arbitration discovery on issue of costs of arbitration); *Hooters of America, Inc. v. Phillips*, 173 F.3d 933, 939-40 (4th Cir. 1999) (noting evidentiary record in striking clause -- testimony by representatives of AAA, National Academy of Arbitrators and others in finding arbitration clause improper); *Application of Deiulemar Compagnia Di Navigazione S.p.A. v. M/V Allegra,* 198 F.3d 473, 482 (4th Cir. 1999) (court may order discovery on matters relevant to arbitration agreement); *Hopkins v. Newday Financial, LLC,* Case No. 07-3679 (E.D. Pa. June 30, 2008) (allowing discovery on arbitration issues);

Plaintiff submits that even the limited record currently available reflects the existence of significant factual issues (if not overwhelming evidence favoring Plaintiff) regarding whether the parties agreed to an enforceable arbitration agreement, whether representations in the agreement are false, whether Defendant waived any right to demand arbitration, whether the agreement is unconscionable and related issues.

The U.S. District Court for the Eastern District of Pennsylvania ordered the deposition of an arbitrator because of his prior undisclosed business relationships with both a party to the arbitration and that party's outside counsel.  *In re EquiMed, Inc*., No. Civ. A. 05-1815, 2005 WL2850373 (E.D. Pa. Oct. 28, 2005).  The dispute concerned an audit by Ernst & Young for EquiMed.  The parties each selected an arbitrator, and the third arbitrator was chosen by the two party-selected arbitrators.  After the arbitration panel found against it, EquiMed filed a petition to vacate on the basis that Ernst & Young's selected arbitrator failed to disclose his prior relationships with Ernst & Young.  EquiMed issued a subpoena to the arbitrator to appear for deposition.  The court ordered the arbitrator's deposition, so that the court would be better able to assess the undisclosed relationships.  Likewise, other courts have allowed the deposition of arbitrators where parties seeking discovery provided sufficient evidence regarding an arbitrator's

10

undisclosed contacts or failure to disclose social, business, and professional relationships with the parties or their associates. *See Elgin Sweeper Co. v. Powerscreen Int'l, PLC*, 158 F.R.D. 494, 495 (S.D. Ala. 1994) (deposition of the arbitrator); *Kauffman v. Haag,* 318 N.W. 2d 572, 573 (Mich. Ct. App. 1982) (allowing deposition of arbitrator in light of potential relationship between arbitrator, who served as township community developer, and contractor who was party to the proceedings); *McGann Plumbing, Inc. v. Chicago Journeymen Plumbers Local 130,* 532 F. Supp. 2d 1009, 1015 (ND. Ill. 2007) (allowing party to depose arbitrators);

### III.   CONCLUSION.

Based on the foregoing argument and legal authority, allowing discovery on material issues would assist the Court in resolving the outstanding issues. A proposed order is attached as **Exhibit 4.**

Respectfully submitted, this the 18th day of July, 2013.

>
> s/Cathy A. Williams
> Cathy Anne Williams
> Florida State Bar No: 88862
> NC State Bar No: 33534
> WALLACE & GRAHAM, P.A.
> 525 N. Main St.
> Salisbury, NC 28144
> 704-633-5244 Telephone
> cwilliams@wallacegraham.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2013, I served the foregoing document on all counsel of record, by ECF filing, email and/or regular mail, as follows:

    Christopher Stephen Carver, Esq.
    Andrew Mikel Shapiro, Esq.
    Akerman Senterfitt
    One Southeast Third Avenue
    25th Floor
    Miami, FL 33131
    christopher.carver@akerman.com
    andrew.shapiro@akerman.com

This the 18th day of July, 2013.

    s/Cathy A. Williams
    Cathy Anne Williams
    Florida State Bar No: 88862
    NC State Bar No: 33534
    WALLACE & GRAHAM, P.A.
    525 N. Main St.
    Salisbury, NC 28144
    704-633-5244 Telephone
    cwilliams@wallacegraham.com

## **LIST OF EXHIBITS**

1. *Jackson* case, May 22, 2013 Seventh Circuit remand order.
2. *Jackson* case, June 25, 2013 filing (without attachments).
3. Unreported cases.
4. Proposed order.