UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 13-60066-CIV-COHN-SELTZER

ABRAHAM INETIANBOR,           )
                              )
    Plaintiff,                )
                              )
vs.                           )
                              )
CASHCALL, INC.,               )
                              )
    Defendant.                )
_____)

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR COURT TO RECONSIDER ITS ORDER REQUIRING ARBITRATION**

Pursuant to Local Rule 7.1(c) the Plaintiff hereby replies to Defendant's Opposition to Plaintiff's Renewed Motion for Court to Reconsider its Order Requiring Arbitration filed August 5, 2013 (Doc. 81, "Def. Opp.").

Defendant contends that Plaintiff merely "reiterates arguments the Court has expressly rejected as irrelevant to the threshold issues of arbitrability and therefore not warranting reconsideration…." (Def. Opp. 1). This is incorrect. Plaintiff, who is now represented by counsel, has raised new arguments and developed new facts he did not have before. Critical facts have transpired since the prior briefing and Court's prior orders. Many of these facts arose during the June 21 preliminary hearing (see transcript filed at Doc. 73-22) including that Mr. Chasing Hawk admitted there are no set procedural rules for arbitration. This admission contradicts express language in the loan agreement, which states that "Arbitration . . . shall be conducted in accordance with the

1

Cheyenne River Sioux Tribal Nation's consumer dispute rules and the terms of this Agreement."  (Doc. 16-2).  Defendant has not provided any evidence to the contrary.  Tribal dispute rules are as much an integral part of the arbitration clause as the choice of arbitrator.  Absent any procedural rules governing arbitration, the arbitration clause in the parties' loan agreement is not enforceable.

Defendant contends that Plaintiff could have made his arguments earlier.  (Def. Opp. 5-6).  Contrary to Defendant's assertion, however, Plaintiff could not have made his detailed arguments based on the lack of any procedural rules because these facts were confirmed at the June 21 hearing.  Indeed, he did not receive a set of the Tribal Laws until after the June 21 hearing, even though he had requested them before.  (See Abraham Inetianbor Affidavit, Exhibit 1).  The Tribal Laws do not contain any consumer dispute rules.  Moreover, it was also not until he received the full set of laws and could review them that Plaintiff learned that the loan violates not only Florida law,[1] but also the Tribe's own laws.  (See Doc. 73-21, at p. 16 of 17, Tribal Code § 3-4-52 prohibiting usury).

Defendant spends a good part of its brief discussing its contention that Plaintiff's counsel sent the Company-chosen arbitrator, Mr. Chasing Hawk, "remarkably threatening" email correspondence.  (Def. Opp. 3).  The purpose of the communications were not to threaten or intimidate the arbitrator, as argued by Defendant, but rather to

---

[1] See Exhibit 2 (Feb. 14, 2012 letter from Florida Office of Financial Regulation to Plaintiff stating that "Most internet payday lending activities are illegal in this state.  In particular, many loans made by these internet payday lenders grossly exceed the interest rates allowed under the Florida Consumer Finance Act…. By operation of law, these loans are unenforceable and void in this state."); Doc. 73-13 (Florida laws); Doc. 73-18 (Florida Attorney General Opinion).

address Plaintiff's serious concerns over the arbitration process and his fear that he would not receive a fair hearing, as described in Plaintiff's submissions dated July 16 and 18 (Docs. 72-74, 77).  Mr. Inetianbor continues to have those concerns as outlined in his Affidavit.  (See Affidavit, Exhibit 1, ¶¶ 2-4, 6, 17(H)).

Defendant provides a chart purporting to show how Plaintiff re-makes prior arguments.  (Def. Opp. 7).  Conspicuously absent from Defendant's brief are any arguments responding to the "alleged facts."  Thus Defendant fails to address Plaintiff's concern over the lack of any consumer dispute rules, as mentioned in the loan agreement.  Nor has Defendant produced or cited to any such rules.  Further the arbitrator admitted at the June 21 hearing that no rules, in fact, exist.  (Exhibit 1, ¶¶ 5, 17).  Nor does Defendant begin to try to address other facts including that when Plaintiff was ordered to arbitrate, he tried to invoke his right under the clause to have three Tribal Council members arbitrate, only to be told by the Tribe that they do not authorize that. (*Id.* ¶ 13).[2]

Appearing to admit the deficiencies with the arbitrator it initially chose, Defendant now also proposes other arbitrators, and admitting the lack of rules, now offers

---

[2] In addition, CashCall has continued trying to collect on the illegal loan before the arbitrator, even while CashCall refuses to provide any legal basis authorizing the loan. CashCall's "Demand for Arbitration" (Doc. 55-1) fails to cite to any Tribal, Florida or other law to support its claim for payment.  Plaintiff's counsel wrote to defense counsel asking that CashCall either provide the Rule 11 basis for its claim, or withdraw the claim, on July 20, 2013 (Exhibit 3).  To date there has been no response. Thus, CashCall is proceeding before this Court and in the arbitration to demand more payment on its loan while refusing to provide any Rule 11 basis for its claim.  Plaintiff also notes that since the time of Plaintiff's prior filing (Doc. 73) reflecting the numerous States that have prosecuted WesternSky/CashCall, New York and Michigan have also started proceedings and this has led even the Native American Financial Services Association to issue a statement condemning Western Sky loans as illegal.  (Exhibit 4).

to conduct arbitration before the AAA or JAMS. (Def. Opp. 9-10). Defendant cannot be allowed to re-write the contract. Further it is clear under the FAA that arbitration clauses are subject to normal state-law contract defenses and here it has become very evident the clause is fraudulent,[3] unconscionable, impossible to perform[4] and unenforceable. It is unfair to Mr. Inetianbor to allow Defendant to change the arbitration language it drafted in its continued effort to avoid proceedings in a Court of Law. Further, it would also be unfair to the many other borrowers across Florida and across the country who are also

---

[3] Another new fact described in Plaintiff's Affidavit is that in fact Western Sky's president Webb has gone to the Tribal Council demanding that the Tribe authorize his business or change the law to somehow allow it, which the Tribe will not do. (Exhibit 1 ¶ 14). Further the company's hand-picked arbitrator went to the Tribal Court asking if it would after-the-fact adopt arbitration procedures, which it has not. (*Id.* ¶ 12). CashCall and Western Sky apparently knew the arbitration clause language was false when they instituted it. If the Court will not strike the clause based on the current record, it should allow discovery so Plaintiff can build a record to prove the common-law contract defenses that he has a right to prove. *See McKenzie Check Advance of Florida, LLC v. Betts*, 38 Fla. L. Weekly S223, 2013 WL 1457843 (Fla. April 11, 2013) (FAA permits arbitration agreements to be declared unenforceable based on generally applicable contract defenses, such as fraud, duress, or unconscionability).

[4] The clause specifies "Arbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules" and an option to choose three Tribal Council members to arbitrate (Doc. 16-2) but a) the Tribe will not conduct arbitration, b) the Tribal Council will not appoint members to arbitrate, and c) there are no consumer dispute rules. *See Crossman v. Life Care Ctrs of America, Inc.*, 738 S.E.2d 737 (N.C. App. 2013) (arbitration agreement impossible to perform since AAA refused to hear); *Amundsen v. Wright*, 240 P.3d 16 (Okla. 2010) ("The issues on appeal arise out of the parties' agreement in their Residential Construction Agreement to submit any and all disputes to binding arbitration pursuant to specific procedures that turned out not to exist. Because the parties only agreed to arbitrate pursuant to specific, but non-existent, procedures, we find that, under the circumstances of this case, arbitration cannot be compelled."); *Life Care Centers of America v. Smith,* 681 S.E.2d 182 (Ga. Ct. App. 2009) (noting trial court ruling that arbitration impossible when AAA refused to hear).

victims of these usurious loans, and whose ability to seek recourse in Court is chilled and cut off by these defective arbitration clauses.

    Date:  August 14, 2013.

                                          By:    s/Cathy Williams
                                                    Cathy Williams
                                                    Florida Bar No. 88862
                                                    John Hughes
                                                    N.C. Bar. No. 22126 (admitted pro hac)
                                                    WALLACE & GRAHAM, P.A.
                                                    525 N. Main Street
                                                    Salisbury, NC 28144
                                                    Tel: (704) 633-5244
                                                    Fax: (704) 633-9434
                                                    cwilliams@wallacegraham.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed a true and correct copy of the foregoing PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR COURT TO RECONSIDER ITS ORDER REQUIRING ARBITRATION with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on parties as listed (through counsel or those reflected as appearing without counsel) in the below Service List via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

> Christopher S. Carver, Esq.
> Andrew M. Shapiro, Esq.
> AKERMAN SENTERFITT
> 1 S.E. Third Avenue – Suite 2500
> Miami, FL 33131
> Tel. 305-374-5600
> Fax. 305-374-5095
> christopher.s.carver@akerman.com
> andrew.shapiro@akerman.com
> Attorneys for Defendant CashCall, Inc.

This the 14th day of August, 2013.

By:   s/Cathy Williams
Cathy Williams
Florida Bar No. 88862
John Hughes
N.C. Bar. No. 22126 (admitted pro hac)
WALLACE & GRAHAM, P.A.
525 N. Main Street
Salisbury, NC 28144
Tel: (704) 633-5244
Fax: (704) 633-9434
cwilliams@wallacegraham.com

LIST OF EXHIBITS

1. Abraham Inetianbor Affidavit dated August 14, 2013.
2. Feb. 14, 2012 letter from Florida Office of Financial Regulation to Plaintiff.
3. Email dated July 20, 2013
4. News articles.