UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-60066-CIV-COHN/SELTZER

ABRAHAM INETIANBOR,

    Plaintiff,

v.

CASHCALL, INC.,

    Defendant.

_____/

## ORDER GRANTING PLAINTIFF'S RENEWED MOTION FOR COURT TO RECONSIDER ITS ORDER REQUIRING ARBITRATION

**THIS CAUSE** is before the Court upon Plaintiff's Renewed Motion for Court to Reconsider Its Order Requiring Arbitration [DE 72]. The Court has considered the motion, Defendant's response [DE 81], Plaintiff's reply [DE 86], the representations of counsel at the August 16, 2013 hearing, the record in this case, and is otherwise fully advised in the premises.

## I. BACKGROUND

On January 5, 2011, Plaintiff Abraham Inetianbor entered into a consumer loan agreement with Western Sky Financial, LLC ("Western Sky"), for $2,525.00, with an annual interest rate of 135%. DE 16-2 at 3-4. Defendant CashCall, Inc. ("CashCall"), is the servicer, handler, and collector on the loan. DE 16 at 2. Plaintiff claims that he has paid off the loan in full, but that CashCall has continued to report to credit bureaus that he has upcoming or late payments. DE 1-3 at 2. On July 12, 2012, Plaintiff brought suit in the Seventeenth Judicial Circuit Court, Broward County, Florida, alleging that CashCall had defamed Plaintiff's character by misrepresenting his creditworthiness to credit reporting agencies. See DE 1-2 at 3-4. On December 17, 2012, Plaintiff filed an

Amended Complaint in state court.  CashCall then removed the action to this Court on January 11, 2013.  DE 1 at 2-3.

The subject loan agreement requires that all disputes arising out of the agreement "be resolved by Arbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement."  DE 16-2 at 5.  The agreement further provides that

> Arbitration shall be conducted in the Cheyenne River Sioux Tribal Nation by your choice of either (i) a Tribal Elder, or (ii) a panel of three (3) members of the Tribal Council, and shall be conducted in accordance with the Cheyenne River Sioux Tribal Nation's consumer dispute rules and the terms of this Agreement. . . . The party receiving notice of Arbitration will respond in writing by certified mail return receipt requested within twenty (20) days.  You understand that if you demand Arbitration, you must inform us of your demand of the Arbitrator you have selected.  You also understand that if you fail to notify us, then we have the right to select the Arbitrator.

Id. at 6.  Accordingly, on January 24, 2013, CashCall filed a Motion to Compel Arbitration and Dismiss or Stay Case [DE 16].  On February 15, 2013, the Court issued an Order ("February 15 Order") granting the motion to compel, and directing the parties to submit the claims to arbitration.  See DE 33 at 8.

Then, on March 12, 2013, Plaintiff filed a Motion to Reopen Case [DE 37], in which he advised the Court that, subsequent to the February 15 Order, he attempted to submit the case for arbitration to the Cheyenne River Sioux Tribal Nation ("the Tribe"). However, the Tribe, through Judge Mona R. Demery, responded with a letter dated March 8, 2013, stating that "the Cheyenne River Sioux Tribe . . . does not authorize Arbitration as defined by the American Arbitration Association ("AAA") here on the Cheyenne River Sioux Reservation located in Eagle Butte, SD 57625."  DE 37 at 5.

2

Plaintiff argued that arbitration before the designated forum was unavailable, and requested that the Court reopen the case.  CashCall responded that arbitration could still be conducted by Tribe members on the reservation, but failed to clarify how this contention was consistent with the letter from the Tribal court.  See DE 39.  The Court determined that the arbitral forum designated in the loan agreement was unavailable, and that the choice of forum was integral to the agreement to arbitrate.  Thus, the Court found that the arbitration agreement failed, and reopened the case.  See DE 45 ("April 1 Order").

Subsequently, CashCall served a Demand for Arbitration [DE 53-1] requesting that arbitration be conducted before a Tribal Elder.  See DE 53-1, DE 53 at 1-2.  Then, on April 23, 2013, CashCall filed a Renewed Motion to Compel Arbitration and Dismiss or Stay Case [DE 53] ("Renewed Motion to Compel"), arguing that the arbitral forum was in fact available.  CashCall attached a letter from Robert Chasing Hawk, Sr., a Tribal Elder of the Cheyenne River Sioux Tribal Nation, stating that he agreed to serve as arbitrator for the case, and that he "[has] no preexisting relationship with either party in this case."  See DE 57-1.  CashCall also submitted a letter from Judge Demery, dated April 4, 2013, in which she stated that:

> The [Tribal] Court does not provide arbitration.  Arbitration, as in a contractual agreement, is permissible.  However, the Court does not involve itself in the hiring of the arbitrator or setting dates or time for the parties.  After there is an arbitration award, the parties may seek to confirm the award in Tribal Court.

DE 53-3 at 2.  Based on this evidence, the Court determined that the forum was available, and granted the Renewed Motion to Compel on May 17, 2013.  See DE 59 ("May 17 Order").

On May 21, 2013, Plaintiff filed a Motion to Reconsider and Report Regarding the Status of the Case [DE 61] and a Motion to Reopen Case [DE 62], each asking the Court to reconsider the May 17 Order compelling arbitration. As grounds for relief, Plaintiff asserted that he had uncovered two new pieces of evidence indicating that Mr. Chasing Hawk is biased toward CashCall. First, Plaintiff claimed that Mr. Chasing Hawk's daughter, Shannon Chasing Hawk, is employed by Western Sky. Plaintiff attached a printout of Ms. Chasing Hawk's Facebook profile page, listing "Western Sky Financial" as her employer. See DE 61 at 9. Second, Plaintiff alleged that CashCall and Mr. Chasing Hawk colluded in the initiation of arbitration proceedings. Plaintiff attached a purported email chain between Mr. Chasing Hawk and an employee of Lakota Cash, LLC ("Lakota Cash"), a subsidiary of Western Sky, showing that Lakota Cash prepared the letter for Mr. Chasing Hawk. See id. at 7-8. The Court denied reconsideration, finding that:

> [I]t is well-established that "reviews [of an arbitrator's alleged bias] are confined under the [FAA] to judicial decisions to confirm, modify, or vacate an arbitration award *after* a final arbitration decision has been made." Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc., 203 F.R.D. 677, 687 (S.D. Fla. 2001) (emphasis in original); see also Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co., 304 F.3d 376, 490 (5th Cir. 2002) (holding that "where arbitrator bias is at issue, the FAA does not provide for removal of an arbitrator from service prior to an award, but only for potential vacatur of any award."). Indeed, the section of the FAA cited by Plaintiff, § 10(a), provides the grounds for vacating an arbitration award, not for avoiding arbitration altogether. See 9 U.S.C. § 10(a). Accordingly, Plaintiff's bias argument is not relevant to whether arbitration was properly compelled. Rather, this argument is more properly raised on a motion to confirm, modify, or vacate an award after the parties have completed arbitration.

DE 70 at 6-7.

On July 16, 2013, Plaintiff filed the instant motion, asserting numerous grounds

4

for reconsideration of the May 17 Order.  CashCall opposes the motion.

## II. RECONSIDERATION STANDARD

The May 17 Order was not a final order.  Therefore, pursuant to Federal Rule of Civil Procedure 54(b), it is subject to revision at any time before the entry of a final judgment.  See Fed. R. Civ. P. 54(b); Coty Inc. v. C Lenu, Inc., Case No. 10-21812-CIV-HUCK/O'SULLIVAN, 2011 U.S. Dist. LEXIS 14813, at *7 (S.D. Fla. Feb. 15, 2011) ("A district court, in its discretion, can modify or vacate a non-final order at any point prior to the entry of a final judgment.").  While Rule 54(b) does not specify a standard for reconsideration, "the Advisory Committee Notes make clear that 'interlocutory judgments . . . are left subject to the complete power of the court rendering them to afford such relief as justice requires.'"  Grupo Televisa v. Telemundo Communs. Group, Inc., Case. No. 04-20073-CIV, 2007 U.S. Dist. LEXIS 95914, at *3 (S.D. Fla. Oct. 11, 2007) (quoting Fed. R. Civ. P. 54(b), advisory committee's note).

Generally, the "purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence."  Burger King Corp. v. Ashland Equities, Inc., 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002) (citing Z.K. Marine, Inc. v. M/V Archigetis, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992)).  There are three major grounds that justify reconsideration: "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice."  Burger King, 181 F. Supp. 2d, at 1369.  A motion for reconsideration should not be used to present authorities that were available at the time of the first decision, or to reiterate arguments previously made.  Z.K. Marine, 808 F. Supp. at 1563; see also  Reyher v. Equitable Life Assur. Soc., 900 F. Supp. 428, 430

(M.D. Fla. 1995) ("The Court will not reconsider when the motion . . . only relitigates what has already been found lacking."). Rather, the movant "must demonstrate why the court should reconsider its prior decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." Reyher, 900 F. Supp. at 430.

Here, Plaintiff asks the Court to reconsider an order compelling arbitration. As the Court previously explained,

> The Court's role in deciding a dispute is quite limited when there is an agreement to arbitrate. "[T]he threshold questions a district court must answer when determining whether a case may be properly referred to arbitration are: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the specific dispute falls within the scope of the agreement." Viamonte v. Biohealth Techs., No. 09-21522-CIV-GOLD/McALILEY, 2009 U.S. Dist. LEXIS 119200, *6 (S.D. Fla. Nov. 24, 2009).

DE 59 at 4. Therefore, in order to meet his burden for reconsideration, Plaintiff must show a change in controlling law, newly-available evidence, or a need to correct clear error that pertains to the threshold questions of arbitrability.

The Court has previously held that the availability of the Tribal forum is an integral part of the agreement to arbitrate, and that the unavailability of that forum would void the agreement. See DE 45 at 5-7. Indeed, the primary factor guiding the Court's reasoning in both the April 1 Order and the May 17 Order was the availability of the forum described in the parties' agreement. Thus, a showing of new evidence or a need to correct clear error regarding the existence or availability of the Tribal forum would support reconsideration of the May 17 Order.

6

## III. ANALYSIS

Here, the parties agreed to a very specific manner of arbitration. The loan agreement provides that arbitration will be conducted 1) by the Tribe, through an authorized representative, and 2) in accordance with the Tribe's consumer dispute rules. Plaintiff asserts that the Tribe does not conduct arbitrations through an authorized representative. Plaintiff further asserts that the Tribe does not have any consumer dispute rules. Therefore, Plaintiff argues that the agreed upon arbitral forum is not available. As described below, the Court agrees, and will grant reconsideration of the May 17 Order.

### A. Whether the Tribe Conducts Arbitration

Plaintiff claims that he has new evidence concerning whether the Tribe, through an authorized representative, conducts arbitrations. Plaintiff represents that, on June 21, 2013, the parties in this action attended a preliminary arbitration hearing before Mr. Chasing Hawk. Plaintiff has attached a transcript of that hearing as an exhibit to this motion. See DE 73-22. At the hearing, Plaintiff inquired into who was responsible for selecting Mr. Chasing Hawk as an arbitrator, asking as follows:

> Mr. Inetianbor:   Your Honor, who selected you to be an arbitrator, the Tribe or CashCall?
>
> Mr. Chasing Hawk:   The Western Dakota owner.
>
> . . . .
>
> Mr. Inetianbor:   So the owner of Western Sky asked you to be an arbitrator for this case . . . ?
>
> Mr. Chasing Hawk:   Yes because I've been on the Tribal Council for 20 years.

7

        Mr. Inetianbor:       Yeah, is the Tribe aware of this selection process?

        Mr. Chasing Hawk:  [Inaudible] . . . because again this is a private business deal. The Tribe has nothing to do with any of this business.

DE 73-22 at 18. Based on this exchange, Plaintiff argues that Mr. Chasing Hawk is not an authorized representative of the Tribe, and the Tribe does not conduct arbitrations.

    The Court's previous determinations on this issue have been based principally on three pieces of evidence. First, in the April 1 Order, the Court relied upon the letter from Judge Demery in which she stated that "the Cheyenne River Sioux Tribe . . . does not authorize Arbitration. . . . " DE 37 at 5. As Defendant failed to provide any evidence to the contrary at that time, the Court found that the forum was not available. Then, in filing its motion to reconsider the April 1 Order, CashCall submitted a second letter from Judge Demery, issued as a clarification of the previous letter, stating that "[t]he [Tribal] Court does not provide arbitration. Arbitration, as in a contractual agreement, is permissible." DE 53-3 at 2. CashCall also provided a letter from Mr. Chasing Hawk in which he represented that he "[had] received the Demand for Arbitration from CashCall, Inc. [. . . ] and will be serving as the arbitrator for this dispute." DE 57-1 at 2. Thus, the basis for the Court's April 1 Order – Judge Demery's initial letter – was undermined by her subsequent letter. Moreover, while it was not clear that Mr. Chasing Hawk was an authorized representative of the Tribe, there was no evidence to rebut CashCall's assertion that the forum was available. Accordingly, the Court compelled arbitration.

    Now, however, the Court has evidence before it that Mr. Chasing Hawk is not an authorized representative of the Tribe for the purpose of conducting this arbitration, and

that the Tribe "has nothing to do with any of this business." Conspicuously, CashCall does not directly answer Plaintiff's charge. Instead, CashCall argues that, even if Mr. Chasing Hawk could not serve as an arbitrator, CashCall has located several other Tribal Elders that would be available. DE 81 at 9. However, CashCall does not specify whether these Elders would be conducting arbitration *as authorized representatives of the Tribe*, as required by the arbitration agreement. At the August 16, 2013 hearing on the motion, counsel for CashCall stated that the Tribe authorizes arbitrations, but offered no factual basis for this contention.

Therefore, based on the record evidence, the Court makes two findings. First, the Court finds that Mr. Chasing Hawk is not, and does not purport to be, conducting arbitration as an authorized representative of the Tribe. Second, having failed to select an arbitrator who is an authorized representative, CashCall has further failed – despite numerous opportunities – to show that the Tribe is available through an authorized representative to conduct arbitrations. Accordingly, the Court concludes that Plaintiff has provided new evidence showing that the agreed upon arbitral forum is not available, and that reconsideration is appropriate.

### B. Existence of Tribal Consumer Dispute Rules

Second, Plaintiff contends that he has obtained new evidence showing that the Tribe does not have any consumer dispute rules. Plaintiff submits an affidavit stating that, after the June 21, 2013 preliminary hearing, CashCall sent him a copy of the Tribal legal code, but that it did not contain any consumer dispute rules. DE 86-1 at 2-3. He further claims that he had previously asked CashCall for a copy of the consumer dispute rules and the Tribal laws, but that he was rebuffed. Id.

9

In its Response to the present motion, CashCall does not respond to the merits of Plaintiff's argument.  Instead, CashCall argues that Plaintiff has already raised this argument before the Court and the Court has rejected it.  Specifically, CashCall contends that Plaintiff raised this argument at paragraph eight of his reply brief in support of his Motion to Reconsider and Report Regarding the Status of the Case [DE 67].  This is plainly incorrect.  In that reply brief, Plaintiff asserted that Mr. Chasing Hawk would not follow tribal arbitration rules, and would instead follow arbitration procedures as dictated by this Court.  DE 67 at 3.  However, that argument is entirely different from his present contention that tribal consumer dispute rules simply do not exist.  While the former assertion implicates the conduct of the arbitrator and the fairness of the proceeding, the latter goes to the availability of the forum, and therefore affects the validity of the arbitration agreement.

At the August 16, 2013 hearing, CashCall conceded that, while the Tribe has rules concerning consumer relations – e.g., usury statutes – it does not have any consumer dispute rules.  Without such rules, it is obvious that arbitration cannot be conducted "in accordance with [Tribal] consumer dispute rules" as required by the arbitration agreement.  Accordingly, the Court concludes that Plaintiff has provided new evidence demonstrating that 1) the arbitral forum does not exist, and 2) rules governing the purported forum do not exist.[1]  Moreover, for the reasons stated in the April 1 Order, the selection of the Tribe as arbitrator was integral to the agreement to arbitrate.

---

[1] Indeed, the lack of any Tribal rules governing these types of disputes only bolsters the Court's conclusion that the Tribe does not conduct arbitrations concerning such disputes.

10

Because the Tribe is not available to arbitrate the parties' claims in this action, the arbitration agreement is void. Therefore, Plaintiff's motion will be granted and the case will be reopened for further proceedings.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Renewed Motion for Court to Reconsider Its Order Requiring Arbitration [DE 72] is **GRANTED**;

2. The Order Compelling Arbitration [DE 59] is **VACATED**;

3. The stay in this case is **LIFTED** and the Clerk of Court is directed to **REOPEN** this case;

4. Plaintiff's Motion Requesting Discovery on Arbitration Clause and Related Issues [DE 77] is **DENIED as moot**;

5. CashCall's Motion for Extension of Time to Respond to Plaintiff's Motion Requesting Discovery on Arbitration Clause and Related Issues [DE 82] is **DENIED as moot**; and

6. The Court will enter a separate Order concerning the scheduling of this case.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 19th day of August, 2013.

Copies provided to:
Counsel of record via CM/ECF.

JAMES I. COHN
United States District Judge