UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-60066-CIV-COHN/SELTZER

ABRAHAM INETIANBOR, on behalf of himself
and a class of persons similarly situated,

    Plaintiff,

v.

CASHCALL, INC.,

    Defendant.

_____/

## ORDER REGARDING CHOICE OF LAW

**THIS CAUSE** is before the Court upon the parties' Supplemental Briefs on the Issue of Governing Law [DE 151 & 153] ("Supplemental Briefs") filed in response to the Court's June 29, 2015 Order Denying Motion to Dismiss and Staying Case in Part [DE 140]. The Court has reviewed the Supplemental Briefs, the parties' responses [DE 156 & DE 157], and the record in this case, and is otherwise advised in the premises. For the reasons discussed herein, the Court concludes that the choice-of-law provision in Plaintiff's Loan Agreement does not bar Plaintiff's claims alleging violations of federal and Florida law.

## I. BACKGROUND

This case involves a loan that Plaintiff Abraham Inetianbor applied for and received from Western Sky Financial, LLC ("Western Sky") in January 2011. DE 151-1 ¶ 19 & Ex. 4 ("Loan Agreement").[1] Western Sky is a South Dakota company licensed

---

[1] Pursuant to the Court's June 29 Order, the parties completed discovery on the issue of governing law and produced Stipulated Facts Relating to Threshold Issue [DE 151-1] ("Stipulation"), which lays out

by the Cheyenne River Sioux Tribe ("Tribe" of "CRST") to do business within the exterior boundaries of the Cheyenne River Indian Reservation ("Reservation").  Id. ¶¶ 1, 10.  From 2010 to 2013, Western Sky offered unsecured installment loans over the Internet and telephone to borrowers in forty-seven states and the District of Columbia.  Id. ¶ 2.  From its incorporation until February 1, 2011, Western Sky's managing member was Payday Financial, LLC ("Payday Financial").  Id. ¶ 4.  Payday Financial's sole member is Martin Webb, an enrolled member of the Tribe.  Id. ¶ 5.  Upon Payday Financial's dissociation from Western Sky, Webb became Western Sky's sole member.  Id. ¶ 7.

In late 2009, Western Sky entered into formal agreements with Defendant CashCall, Inc. ("CashCall") and its wholly owned subsidiary WS Funding, LLC ("WS Funding").  Id. ¶¶ 16, 47, 51.  CashCall is a California corporation, and WS Funding is a Delaware limited liability company.  Id. ¶¶ 14–15.  The principal place of business for both CashCall and WS Funding is California, and neither company is owned or operated by the Tribe.  Id.

Pursuant to the agreements, WS Funding was obligated to purchase the promissory notes obtained by Western Sky, and CashCall was responsible for servicing those loans.  Id. ¶¶ 26, 47, 51.  In order to fund the promissory notes, CashCall set up, funded, and maintained a specified balance in a "Reserve Account" in California in Western Sky's name.  Id., Exs. 16–18.  CashCall agreed to fully indemnify Western Sky for all costs arising or resulting from any civil, criminal, or administrative claims or actions related to the business arrangement.  Id., Exs. 16–18.  In addition, "CashCall

---

certain undisputed facts related to Plaintiff's loan from Western Sky.  The facts are admitted only for purposes of determining the threshold issue of choice of law.

provided email accounts, services, and administration for Western Sky loan agents on CashCall's Microsoft Exchange email servers," and hosted Western Sky's website.  Id. ¶¶ 58–59.  Western Sky's loan agents primarily used CashCall loan-origination software, which ran on CashCall servers.  Id. ¶¶ 56–57.  CashCall reviewed the loan applications for underwriting requirements.  Id., Exs. 19–20.  CashCall also created and distributed print, Internet, television, and radio advertisements and other promotional materials for Western Sky and reimbursed Western Sky for all advertising and marketing expenses.  Id. ¶¶ 59–62.

Inetianbor, a resident of Broward County, first learned about Western Sky through a television advertisement that he observed at his home in Broward County, Florida.  Id. ¶¶ 17, 23.  On January 1, 2011, he applied for a Western Sky loan electronically from a computer in Florida.  Id. ¶¶ 25, 37.  When he first called Western Sky about the loan, he was routed to a CashCall employee.  Id. ¶ 27.  A CashCall employee then ran a credit check on Inetianbor.  Id. ¶ 28.  On January 2, 2011, a CashCall employee left Inetianbor a voicemail asking him to submit additional information, and when Inetianbor returned the call, he was routed to a CashCall agent. Id. ¶¶ 27–29.  In the loan's transaction history log, a CashCall employee is listed beside the entry for "loan origination."  Id. ¶ 34.  The loan was approved by Kelcey Maher, an employee of Payday Financial.  Id. ¶ 33.  Other than Maher, all other individuals listed on the loan transaction logs through January 18, 2011, were CashCall employees.  Id.

On January 5, 2011, Western Sky funded Inetianbor's loan from a bank account in California by transferring the money to Inetianbor's bank account in Florida.  Id. ¶¶ 35–36 & Ex. 10 (sealed).  The loan was for $2,525, plus a $75 origination fee, and it

carried an interest rate of 139.31%.  Id. ¶ 20.  The Loan Agreement contains a choice-of-law clause that states: "This Loan Agreement is subject solely to the exclusive laws and jurisdiction of the Cheyenne River Sioux Tribe, Cheyenne River Indian Reservation."  Id., Ex. 4.  The agreement also contains a clause designating CRST courts as the selected forum.  Id.

On January 8, 2011, Inetianbor received notice that his loan had been assigned to WS Funding and would be serviced by CashCall.  Id. ¶ 38.  Inetianbor repaid approximately $3,252 on the loan, making all loan payments to CashCall.  Id. ¶¶ 41, 44.  However, Inetianbor claims that CashCall continued to try to collect on the loan and reported negative information regarding Inetianbor's credit.  DE 116 ¶¶ 25–26.

In his Third Amended Complaint, Inetianbor asserts that over the course of his resulting loan dispute with CashCall, he learned that CashCall used Western Sky as a front for its lending activities, as part of a scheme to evade federal and state consumer-protection laws. [2]  Id. ¶¶ 24–47.  On the basis of these allegations, Inetianbor has asserted the following causes of action against CashCall: (1) violation of Florida's usury statute; (2) violation of Florida's consumer finance statute; (3) violation of Florida's Unfair and Deceptive Trade Practices Act; (4) a claim under the Florida Civil Remedies for Criminal Practices Act; (5) fraud; (6) punitive damages; (7) violation of the Fair Credit Reporting Act; (8) defamation; and (9) a claim for a declaratory judgment "that tribal law and forum does not apply, that arbitration clause is void, and that any purported class action bar is void."  Id. ¶¶ 65–141.  Inetianbor seeks to proceed not only on his own

---

[2] On June 30, 2015, Inetianbor filed a Fourth Amended Complaint that is substantively similar to the Third Amended Complaint but adds another Defendant, John Paul Reddam.  See DE 141.  On July 13, 2015, the Court approved the parties' stipulation to stay all briefing on the Fourth Amended Complaint until after the Court rules on the threshold issue of governing law.  DE 144 ¶ 3(b).

4

behalf, but also on behalf of a class of similarly situated individuals.  Id. ¶¶ 142–49.

On March 13, 2015, CashCall filed a Motion to Dismiss Inetianbor's Third Amended Complaint.  DE 122.  In addition to attacking the merits of Inetianbor's claims, the Motion argued that the choice-of-law and forum-selection clauses in the Loan Agreement are dispositive of this action.  Id.  On June 29, 2015, this Court denied the Motion without prejudice, concluding that "further development of the factual record is necessary" for the Court to resolve CashCall's threshold arguments that Inetianbor's claims are all barred by the choice-of-law clause and that the proper venue for this case is the CRST courts.  DE 140 at 7.  The Court ordered the parties to engage in limited discovery and file supplemental briefs on the choice-of-law and tribal jurisdiction issues. Id. at 7–8.  To expedite discovery and narrow the issues to be resolved at this stage, CashCall dropped its argument that Inetianbor's claims should be heard in tribal court.  DE 146 at 2.  Accordingly, the instant Order is limited to the threshold issue of governing law.

## II.  LEGAL STANDARD

A district court sitting in diversity applies the choice-of-law rules of the state in which it sits—in this case, Florida.  David v. Am. Suzuki Motor Corp., 629 F. Supp. 2d 1309, 1315 (S.D. Fla. 2009).  Under Florida law, contractual choice-of-law provisions are presumptively enforceable.  Default Proof Credit Card Sys., Inc. v. Friedland, 992 So. 2d 442, 444 (Fla. 3d DCA 2008).  "Florida courts will recognize a choice of law provision provided by the parties so long as the jurisdiction chosen in the contract has a normal relationship with the transaction."  Cont'l Mortg. Investors v. Sailboat Key, Inc., 395 So.2d 507, 509 (Fla.1981); see also Morgan Walton Props., Inc. v. Int'l City Bank &

5

Trust Co., 404 So. 2d 1059, 1062–63 (Fla. 1981) (enforcing choice-of-law provision where facts reflected "normal and reasonable relation" between transaction and forum of chosen law).

A party may overcome this presumption by showing that a provision contravenes the strong public policy of Florida or is unjust or unreasonable. Default Proof Credit Card Sys., Inc., 992 So. 2d at 444. At least where a loan agreement "provid[es] for interest legal where made," Florida's public policy against usury is "not so strong as to overcome the policy in favor of giving effect to the expressed intentions of contracting parties, even though as a factual matter the designation may indeed have been motivated by a desire to 'evade.'" Morgan Walton Props., Inc., 404 So. 2d at 1062–63 (citing Cont'l Mortg. Investors, 395 So. 2d 507). The party seeking to avoid enforcement of the provision bears the burden of proof. Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co., 761 So. 2d 306, 311 (Fla. 2000) (citation omitted).

### III. DISCUSSION

Inetianbor has met his burden of establishing that his loan transactions with Western Sky did not have a "normal and reasonable relation" to the CRST forum, and therefore the choice-of-law provision is unenforceable as to Inetianbor's loan. Additionally, Inetianbor has demonstrated that it would be unjust and unreasonable to enforce the choice-of-law provision at this stage of the litigation. This finding is based not on Florida's public policy against usury, but rather on Plaintiff's substantial showing that Western Sky is merely a front company for CashCall.

#### A. Lack of "Normal and Reasonable Relation"

Discovery to date shows that Western Sky's loan-financing operations, at least

as they relate to Inetianbor's loan, did not have a normal and reasonable relationship to the Tribe or the Reservation.  Western Sky is a South Dakota LLC, not a member of the Tribe.  Although Western Sky's principal place of business was on the Reservation, the evidence presented thus far shows that little work relevant to the loan took place there.  CashCall, a California corporation, created and distributed the television advertisement that Inetianbor saw.  CashCall provided hosting and support services on the website where Inetianbor applied for the loan.  CashCall took Inetianbor's phone calls when applying for the loan.  CashCall ran Inetianbor's credit report.  CashCall reviewed the application and called to request additional information.  CashCall maintained the Reserve Account in Western Sky's name from which Western Sky could fund loans, and Inetianbor's loan was distributed to him from a bank account in California, where CashCall is located.  Three days after receiving the loan, Inetianbor was notified that the loan had been assigned to CashCall's subsidiary and would be serviced by CashCall.  All of Inetianbor's payments were to CashCall.  CashCall bore all the risk of loss on the loan and agreed to indemnify Western Sky for any liability associated with their business arrangement.  Although Maher approved the loan on behalf of Western Sky, she was actually an employee of Payday Financial.

      Because Western Sky appears to have had only nominal involvement in the loan, the company's ownership by a member of the Tribe and the routine business license that it obtained to operate on the Reservation are insufficient to establish a "normal and reasonable relation" to the transaction.  Additionally, Inetianbor's actions did not establish some "normal and reasonable relation" to the Tribe or the Reservation.  It was in Florida where he saw the advertisement, applied for the loan, contacted loan agents,

sent additional information, received the loan, and made repayments.  He also is not a member of the Tribe.

### B. Enforcement Would Be Unjust and Unreasonable

Without full discovery, the Court does not decide whether CashCall was indeed the true lender of Inetianbor's loan.  However, because Inetianbor has raised a genuine issue of material fact as to Western Sky's status as the actual lender, enforcement of the choice-of-law provision in the Loan Agreement would be unjust and unreasonable on a motion to dismiss.  See, e.g., Order, Meade v. Florida Infusion Servs., No. 00-CV-0821 (E.D. Pa. Nov. 14, 2000) [DE 128-1].

For the same reasons cited in the previous section, Plaintiff has made a substantial showing that CashCall was the de facto lender and Western Sky was merely CashCall's front company.  The Court also finds particularly persuasive the findings of the State of New Hampshire Banking Department regarding the arrangement between Western Sky and CashCall.  The Banking Department concluded:

> After detailed review of the [CashCall and WS Funding's] business scheme, it appears that Western Sky is nothing more than a front to enable CashCall to evade licensure by state agencies and to exploit Indian Tribal Sovereign Immunity to shield its deceptive business practices from prosecution by state and federal regulators.

In re CashCall, Inc., No. 12-308, 2013 WL 3465250, at *3 (N.H. Banking Dept. June 4, 2013).  In light of these strong findings, enforcing the choice-of-law provision at this stage of the litigation would create an unreasonable risk of rewarding and encouraging such a scheme.

Furthermore, the provision's relevant context supports a finding that its enforcement would be unjust and unreasonable.  The choice-of-law provision is part of

8

the agreement's problematic—and frankly, deceptive—dispute-resolution process.  See DE 151-1, Ex. 4.  The Court has already found, and the Eleventh Circuit has affirmed, that the same section of the Loan Agreement that contains the choice-of-law provision mandates a Tribal arbitration process that does not exist, under Tribal consumer rules that also do not exist.  See DE 90 & DE 109.  The Seventh Circuit went so far as to say that this section of Western Sky's loan agreements mandated "a process that is a sham from stem to stern."  Jackson v. Payday Fin., LLC, 764 F.3d 765, 779 (7th Cir. 2014).

### C. Florida Court of Appeals Decision Does Not Change Outcome

Finally, the Court's conclusions herein are not affected by the recent Florida Court of Appeals decision in CashCall, Inc. v. Office of Attorney Gen., Dep't of Legal Affairs, 2015 WL 4622722 (Fla. 2d DCA July 31, 2015), which overturned a temporary injunction against CashCall.  Florida's Second District Court of Appeals held that the Attorney General had failed to establish a clear legal right to avoid the choice-of-law provision in Western Sky loan agreements in order to obtain the extraordinary remedy of a temporary injunction.  Id. at *1.  However, the court did not decide the issues before the Court in the instant matter—that is, whether Western Sky's loans had a "normal and reasonable relation" to the Reservation or whether the choice-of-law provision was unjust and unreasonable to enforce on a motion to dismiss.  See id. at *1–2.  Although the court noted that "Western Sky "conducted its business from within the exterior boundaries of the [Reservation]," the court was particularly careful to "express no opinion on the ultimate ability of the Attorney General to prevail against CashCall" on its Florida-law claims.  Id.  Thus, contrary to CashCall's contention, the Florida court's decision does not dictate the outcome of the instant Order.

## IV. **CONCLUSION**

In sum, the Court finds that Plaintiff's loan transaction with Western Sky did not have a "normal and reasonable relation" to the Tribe or the Reservation. Furthermore, Plaintiff has demonstrated that enforcement of the choice-of-law provision would be unjust and unreasonable on a motion to dismiss. It is hereby

**ORDERED AND ADJUDGED** as follows:

1. On the threshold issue of governing law, the choice-of-law provision in the Loan Agreement between Plaintiff and Western Sky does not bar Plaintiff's claims under federal or Florida law;

2. Defendants Cashcall, Inc. and John Paul Reddam shall **RESPOND** to Plaintiff's Fourth Amended Complaint [DE 139] by **December 21, 2015**; and

3. The limited stay in this case is **LIFTED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 7th day of December, 2015.

*/s/ James I. Cohn*
JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF