UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-60066-CIV-COHN-SELTZER

ABRAHAM INETIANBOR,

    Plaintiff,

vs.

CASHCALL, INC.,

    Defendant.

_____/

**DEFENDANT CASHCALL, INC.'S
(I) MOTION FOR RECONSIDERATION OF ORDER REGARDING CHOICE OF LAW
AND, IN THE ALTERNATIVE,
(II) MOTION TO CERTIFY AN INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**

Pursuant to Federal Rule of Civil Procedure 54(b), Defendant CashCall, Inc. ("CashCall"), respectfully submits this motion for reconsideration of this Court's December 8, 2015, Order Regarding Choice of Law ("Order"; ECF No. 158). If the Court does not reconsider the Order and find the parties' Choice-of-Law Clause controlling, CashCall requests that the Court certify an interlocutory appeal under 28 U.S.C. § 1292(b).

The Order concluded that the parties' Choice-of-Law Clause was not enforceable at this stage of the proceedings because there was no "normal and reasonable relation" to the Cheyenne River Indian Reservation ("Reservation") or to the Cheyenne River Sioux Tribe ("CRST" or "Tribe"). Respectfully, the Order overlooked binding Florida, Eleventh Circuit, and U.S. Supreme Court caselaw, as well as several critical facts. Reconsideration is warranted or, alternatively, the issue should be certified for interlocutory appeal.

**I.      MOTION FOR RECONSIDERATION.**

The court may "revise[]" any non-final order, so long as it occurs before the entry of a judgment adjudicating all claims. Fed. R. Civ. P. 54(b). As this Court has previously recognized in this case, there are "three major grounds that justify reconsideration: '(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice.'" Order Granting Plaintiff's Renewed Motion for Court to Reconsider Its Order Requiring Arbitration (ECF No. 90) at 5 (quoting *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002)). For the reasons below, the Court should reconsider the Order and "correct clear error" in both the legal and factual framework of the case. *Id.*

    **A. The Order Overlooked Binding Florida Law.**

        **1. The Florida Supreme Court Expressly Prohibits "Counting Contacts" With Each Jurisdiction.**

The Order clearly erred by contradicting Florida Supreme Court caselaw holding that, when determining whether a transaction has a reasonable relation to a certain jurisdiction, courts may "*not count the number of contacts with each state.*" *Continental Mortg. Investors v. Sailboat Key, Inc.*, 395 So. 2d 507, 513 (Fla. 1981) (emphasis added); *accord OFS Equities, Inc. v. Conde*, 421 So. 2d 651, 653 (Fla. 3d DCA 1982) (same). There can be many jurisdictions with a reasonable relationship to a loan. But the only jurisdiction whose relationship is relevant is the jurisdiction that was actually selected in the parties' contract. Thus, as Judge Lenard has held, any "argument[] that Florida law should apply because the Agreements have more contacts with that state run[s] entirely contrary to the holding of the Florida Supreme Court [in *Continental Mortgage*]." *Land-Cellular Corp. v. Zokaites*, No. 05-cv-23168, 2006 WL 3039964, at *8 (S.D. Fla. Sept. 26, 2006).

Respectfully, the Order did precisely what *Continental Mortgage* prohibits: the Order recognizes the transaction's connections to the Reservation, including that Western Sky's principal place of business is on the Reservation and that Mr. Inetianbor's loan was approved there. *See* Order at 7; *see also* Part B, *infra*. However, the Order concluded that those connections were "insufficient" and too "little" to counteract the more numerous alleged connections to California. Order at 6-8. Under Florida law, the loan's connections to California (or Florida) are irrelevant; the only connections that matter are those to the Reservation, which—by the Court's own reckoning—exist. *See Continental Mortg.*, 395 So. 2d at 513. By counting the number of contacts and concluding that there were more with California than with the Reservation, the Order clearly erred in its application of binding Florida caselaw, warranting reconsideration.

### 2. The Order Failed To Defer To The Florida Second District's Recent Opinion Involving These Very Same Loans.

The only Florida case cited in the Order's "Discussion" section was the Florida Second District Court of Appeal's recent ruling, which *reversed* a trial court's conclusion that Florida law applied to Western Sky loans. Order at 9; *see CashCall, Inc. v. Office of Attorney Gen., Dep't of Legal Affairs*, 173 So. 3d 1056 (Fla. 2d DCA 2015), *reh'g denied* (Sept. 9, 2015) (the "*2d DCA Decision*"). However, the Order gave no weight to the Second District's published opinion. Even though the Second District did not issue a final ruling on whether Florida law applied, the baseline question of the existence of a reasonable relationship was front and center before that court. The Second District realized the Choice-of-Law enforceability question to be one with a very low threshold—indeed, other than decisions reversed on appeal, no Florida reported decision has ever refused to enforce a choice-of-law clause on these grounds. The

3

Second District correctly understood that this minimal standard was satisfied by Western Sky's undeniable role in the lending process.  *See 2d DCA Decision*, 173 So. 3d at 1057-58.

The mere fact that the Second District's opinion was issued in the context of a temporary injunction does not mean that it can be disregarded as irrelevant.  It is a directly-on-point opinion issued by a state court on a matter of state law involving these very same facts.  "In matters of state law, federal courts are bound by the rulings of the state's highest court. If the state's highest court has not ruled on the issue, a federal court must look to the intermediate state appellate courts." *Veale v. Citibank, F.S.B.*, 85 F.3d 577, 580 (11th Cir. 1996) (internal citations omitted). "Absent a decision by the highest state court or persuasive indication that it would decide the issue differently, federal courts follow decisions of intermediate appellate courts in applying state law." *Galindo v. ARI Mut. Ins. Co.*, 203 F.3d 771, 775 (11th Cir. 2000). The ruling by a Florida appellate court on this issue of Florida law regarding the very same Western Sky lending before this Court very strongly suggests that the Florida state courts would conclude there was a reasonable relation sufficient to validate the Choice-of-Law Clause.  Respectfully, the Order overlooked the import of the Second District's holding, as well as binding Eleventh Circuit precedent requiring this Court to heed the rulings of Florida's appellate courts in analyzing issues of Florida state law.

### 3.  Parties Are Permitted To Choose A Non-Florida Choice-Of-Law Clause, Even For The Purpose Of Evading Florida Consumer Law.

The Order concluded that enforcing the Choice-of-Law Clause would be "unjust and unreasonable" because it would "create an unreasonable risk of rewarding and encouraging" a "scheme" whereby CashCall "evade[s] licensure by state agencies."  Order at 8.  Although CashCall does not concede that it engaged in a "scheme" aimed at "evad[ing]" Florida law, even

4

had it done so, the Court's ruling was clearly erroneous because Florida law expressly permits "schemes" designed to "evade" Florida's usury statues.

The Florida Supreme Court expressly allows parties to avoid application of Florida consumer lending laws through a choice-of-law clause. In *Morgan Walton Properties, Inc. v. International City Bank & Trust Co.*, 404 So. 2d 1059 (Fla. 1981), the Florida Supreme Court held that a choice-of-law clause is valid even when "*as a factual matter the designation may indeed have been motivated by a desire to 'evade' Florida's usury law.*" *Id*. at 1062 (emphasis added). Thus, the Florida Supreme Court has made clear that a choice-of-law clause trumps any interest in enforcing state usury caps.

It cannot be "unjust or unreasonable" for parties to do precisely what the Florida Supreme Court has permitted. By elevating Florida's lending laws above the parties' freedom to choose their governing law, the Order contravened binding Florida law and Eleventh Circuit precedent requiring the application of the Florida Supreme Court's holding on this issue of state law. *Veale*, 85 F.3d at 580.

Moreover, the Second District's opinion involving this very same Choice-of-Law Clause never mentions the concept that a Florida court can refuse to enforce a choice-of-law clause on the grounds that its terms are "unjust or unreasonable." Indeed, if the Second District thought that the possibility of enforcing the Choice-of-Law Clause would be unjust or unreasonable, that court would not have reversed the injunction obtained by the Florida Attorney General, because the inapplicability of CRST law would have been clear. The Second District's ruling is entirely consistent with the principles established in *Continental Mortgage* and *Morgan Walton*. Respectfully, this Court's Order goes beyond those principles in a way not supported by Florida caselaw. *See Rhynes v. Branick Mfg. Co.*, 629 F.2d 409, 410 (5th Cir. 1980) (federal courts must

5

be extremely "chary" of extrapolating state-law principles beyond what the state courts themselves have announced).

### B.  The Order Overlooked Several Critical Facts.

In addition to its erroneous legal framework, the Order overlooked significant facts that affect the outcome of the decision.

*First*, the Order gave no weight to the fact that Inetianbor's loan was approved by Kelcey Maher because, even though she worked "on behalf of Western Sky, she was actually an employee of Payday Financial."  Order at 7.  Respectfully, this is a distinction with no difference.  As established by the Second District's decision, the inquiry here is whether the loan has a connection *to the Reservation*.  *See 2d DCA Opinion,* 173 So. 3d at 1057 (test is "reasonable relationship between the chosen jurisdiction and the transaction").  Regardless of whether Maher was technically working for Western Sky or Payday Financial, *the loan was still approved on the Reservation*, because it is undisputed that Payday Financial and Maher were operating on the Reservation (as both Western Sky and Payday Financial were owned by the same Tribal member, Butch Webb).  Stip. ¶¶ 4-6, 8, 33.  The Order recognizes that Western Sky's principal place of business is on the Reservation, Order at 8, and the parties stipulated that Maher worked on the Reservation and approved the loan there, Stip. ¶¶ 4-6, 8, 33.  The location of loan approval and formation is, as a matter of law, sufficient to form a reasonable relation between the loan and the Reservation.  *See Cont'l Mortg.*, 395 So. 2d at 508, 512-13; *Burroughs Corp. v. Suntogs of Miami, Inc.*, 472 So. 2d 1166, 1167 (Fla. 1985); *L'Arbalete, Inc. v. Zaczac*, 474 F. Supp. 2d 1314, 1322-23 (S.D. Fla. 2007) (Huck, J.).  By erroneously disregarding the loan approval location, the Order removed an extremely important fact from the reasonable-relationship calculus.

*Second*, the Order concluded that Western Sky is "not a member of the Tribe." Order at 7. The Second District's decision establishes that Florida law concerns the "chosen jurisdiction" – that is, the geographic location – and not the governing entity. Therefore, whether Western Sky is a member of the Tribe is irrelevant to the inquiry, just as a borrower's affiliation with his or her state's government is irrelevant. And in any event, the CRST Court of Appeals has expressly held that companies incorporated in South Dakota *are* considered members of the Tribe so long as they are owned by a member of the Tribe. *See Cheyenne River Tele. Co. v. Pearman*, No. 89-006-A, slip op. at 3 (CRST Ct. App. 1990) [ECF No. 122-7]. The CRST's decision to accord tribal status to member-owned companies is absolute and cannot be reviewed by this Court, because the Supreme Court has held that "Indian tribes retain their inherent power to determine tribal membership." *United States v. Montana*, 450 U.S. 544, 564 (1981). Since Mr. Webb is the sole member of Western Sky, the Order was incorrect to conclude that Western Sky is "not a member of the Tribe."

Ultimately, the Order itself acknowledges that Western Sky operated on the Reservation, that Inetianbor obtained his loan from Western Sky, and that Inetianbor's loan was approved on the Reservation—any one of which is sufficient to satisfy the *Continental Mortgage* test:

(1) "'Western Sky conducted its business from within the exterior boundaries of the [Reservation],'" Order at 9 (quoting *2d DCA Decision*, 173 So. 3d at 1057);

(2) Western Sky "offered" the loan that Inetianbor received, Order at 2;

(3) Inetianbor "received [the loan] from Western Sky Financial, LLC," Order at 1; and

(4) Inetianbor's loan was "approved by Kelcey Maher, an employee of Payday Financial," which was Western Sky's "managing member" and thus operated from the Reservation. Order at 3.

This series of findings is more than sufficient to show a reasonable relationship under binding Florida law. *See Cont'l Mortg.*, 395 So. 2d at 508, 512-13 (normal relationship exists

with the lender's location, as well as the location where loan approval occurred); *Burroughs*, 472 So. 2d at 1167 (normal relationship with party's residence); *Dep't of Motor Vehicles v. Mercedes-Benz of N. Am. Inc.,* 408 So. 2d 627, 629 (Fla. 2d DCA 1981) (normal relationship with location where financial terms of the transaction are set). Thus, the Order itself acknowledges facts that are more than sufficient to show that Florida law requires enforcement of the Choice-of-Law Clause.

\* \* \*

For each of these reasons, CashCall respectfully requests that the Court reconsider its Order and conclude that the Choice-of-Law Clause is enforceable. If the Court declines to reconsider its Order, CashCall alternatively requests that the Court certify an interlocutory appeal of this issue pursuant to 28 U.S.C. § 1292(b), as discussed next.

## II. ALTERNATIVE MOTION FOR CERTIFICATION UNDER § 1292(B).

CashCall respectfully requests that the Court certify the threshold question of the enforceability of the Choice-of-Law Clause for an interlocutory appeal under 28 U.S.C. § 1292(b). This question presents "a controlling question of law as to which there is substantial ground for difference of opinion," the resolution of which will "materially advance the ultimate termination of th[is] litigation," thereby satisfying § 1292(b)'s standard.

To meet the test for interlocutory review, an issue must present a "pure, controlling question of law" that can be resolved "without having to delve beyond the surface of the record in order to determine the facts." *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004). The enforceability of a choice-of-law clause is such a question. *See Robidoux v. Muholland*, 642 F.3d 20, 22 (1st Cir. 2011). Moreover, because of the parties' factual stipulation and because the case is at the motion-to-dismiss stage, there are no factual disputes that would prevent appellate review: the Order itself acknowledges that Western Sky is owned

by an enrolled tribal member, it operated on the Reservation, Inetianbor received his loan from Western Sky, and that his loan was approved on the Reservation. Order at 1-3, 9. The only question is the legal effect of these undisputed facts—in other words, a pure question of law. *See, e.g.*, *Cardona v. Chiquita Brands Int'l, Inc.*, 760 F.3d 1185, 1188 (11th Cir. 2014) (noting that Eleventh Circuit accepted § 1292(b) appeal of denial of motion to dismiss).

There also are "substantial ground[s] for difference of opinion" with respect to whether the Choice-of-Law Clause is valid and enforceable. Although this Court refused to enforce the Clause, the Florida Second District Court of Appeal concluded on appeal of a preliminary injunction that the state trial court had erred by concluding that it was clear that Florida law would apply. *2d DCA Decision*, 173 So. 3d at 1057-58. The Second District's summary reversal shows that there is a strong likelihood that Florida state courts would disagree with the Order and hold this very same Choice-of-Law Clause to be enforceable.

Additionally, as CashCall showed in its briefing to this Court and in the request for reconsideration in Section I above, numerous Florida state courts have upheld choice-of-law provisions in allegedly usurious contracts, based on the existence of facts whose presence is undisputed here. *See Cont'l Mortg.*, 395 So. 2d at 508, 512-13 (normal relationship exists with the lender's location, as well as the location where loan approval occurred); *Burroughs*, 472 So. 2d at 1167 (normal relationship with party's residence); *Mercedes-Benz,* 408 So. 2d at 629 (normal relationship with location where financial terms of the transaction are set); *see also Zaczac*, 474 F. Supp. 2d at 1322-23; *Morgan Walton Props. Inc.*, 404 So. 2d at 1062. Respectfully, given these cases, and given that no Florida court—state or federal—has ever refused to enforce a choice-of-law clause on these grounds (excepting courts that were

subsequently reversed), there are substantial grounds for difference of opinion with respect to whether the Order was correct in refusing to enforce the Choice-of-Law Clause.

Finally, an immediate appeal will materially advance the ultimate disposition of this litigation.  There is little point in the parties and the Court proceeding with motions to dismiss—and possibly summary judgment motions or even trial—when the most fundamental aspect of this case is still hotly debated and unresolved: which jurisdiction's law applies to this entire case.  The parties and the Court risk engaging in a substantial amount of briefing and motions practice for naught, in the event that the Eleventh Circuit ultimately concludes that the Choice-of-Law Clause is enforceable.  It makes sense to resolve the appeal of this question now, before the parties and Court risk expending even more resources than they already have.

Accordingly, if the Court does not grant and reverse the Motion to Reconsider, CashCall respectfully requests that the Court certify an interlocutory appeal to the Eleventh Circuit under § 1292(b).

## CONCLUSION

WHEREFORE, defendant CashCall, Inc., respectfully requests that the Court grant reconsideration of its Order Regarding Choice of Law or, in the alternative, certify the choice of law ruling for an interlocutory appeal under 28 U.S.C. § 1292(b).

Respectfully submitted,

Date:  December 14, 2015

**AKERMAN LLP**
1 S.E. Third Avenue – Suite 2500
Miami, FL 33131
Tel. 305-374-5600
Fax. 305-374-5095

By:   /s/ Christopher S. Carver
    CHRISTOPHER S. CARVER, ESQ.
    Florida Bar No. 993580
    christopher.carver@akerman.com

>STACY J. RODRIGUEZ, ESQ.
>Florida Bar No. 44109
>stacy.rodriguez@akerman.com
>
>Katya Jestin
>Neil M. Barofsky
>Brian J. Fischer
>Daniel T. Fenske
>R. Trent McCotter
>(Admitted *pro hac vice*)
>**JENNER & BLOCK LLP**
>919 Third Avenue
>New York, NY 10022-3908
>Tel.: 212-891-1681
>Fax: 212-909-0881
>KJestin@jenner.com
>NBarofsky@jenner.com
>BFischer@jenner.com
>DFenske@jenner.com
>TMccotter@jenner.com
>
>*Counsel for Defendant CashCall, Inc.*

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 14, 2015, I electronically filed a true and correct copy of *Defendant CashCall, Inc.'s (I) Motion for Reconsideration of Order Regarding Choice of Law and, in the Alternative, (II) Motion to Certify an Interlocutory Appeal Under 28 U.S.C. § 1292(b)* with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on parties as listed (through counsel or those reflected as appearing without counsel) in the below Service List via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

>/s/ Christopher S. Carver
>Attorney

## S<small>ERVICE</small> L<small>IST</small>

*Inetianbor v. CashCall, Inc.*
**CASE NO. 13-CV-60666-CIV-COHN/SELTZER**
**U.S. District Court, Southern District of Florida**

Christopher S. Carver, Esq.
Stacy J. Rodriguez, Esq.
AKERMAN LLP
1 S.E. Third Avenue – Suite 2500
Miami, FL 33131
Tel. 305-374-5600
Fax. 305-374-5095
christopher.carver@akerman.com
stacy.rodriguez@akerman.com

Katya Jestin
Neil M. Barofsky
Brian J. Fischer
Daniel T. Fenske
R. Trent McCotter
(Admitted *pro hac vice*)
**JENNER & BLOCK LLP**
919 Third Avenue
New York, NY 10022-3908
Tel.: 212-891-1681
Fax: 212-909-0881
KJestin@jenner.com
NBarofsky@jenner.com
BFischer@jenner.com
DFenske@jenner.com
TMccotter@jenner.com

*Attorneys for Defendant CashCall, Inc.*

Mona Lisa Wallace, Esq.
Cathy A. Williams, Esq.
John S. Hughes, Esq.
WALLACE AND GRAHAM, P.A.
525 North Main Street
Salisbury, North Carolina 28144
Tel. 800-849-5291
Fax 704-633-9434
cwilliams@wallacegraham.com
mwallace@wallacegraham.com
jhughes@wallacegraham.com

Brian W. Warwick, Esq.
Varnell and Warwick, P.A.
20 La Grande Boulevard
The Villages, FL 32159
Tel. 352-753-8600
Fax 352-753-8606525
bwarwick@varnellandwarwick.com

*Attorneys for Plaintiff Abraham Inetianbor*