UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-60066-CIV-COHN/SELTZER

ABRAHAM INETIANBOR,

      Plaintiff,

v.

CASHCALL, INC., and
JOHN PAUL REDDAM,

      Defendants.

_____/

## OMNIBUS ORDER ON MOTIONS TO DISMISS

**THIS CAUSE** is before the Court upon Defendants' Motion to Dismiss the Fourth Amended Complaint [DE 164], Defendant John Paul Reddam's Motion to Dismiss for Lack of Personal Jurisdiction [DE 165], and Plaintiff's Motion for Discovery with Regard to Personal Jurisdiction Issues [DE 183] (collectively, "Motions").  The Court has considered the Motions, the corresponding responses and replies, and the record in this case, and is otherwise advised in the premises.  For the reasons discussed below, the Court will grant in part and deny in part Defendants' Motion to Dismiss the Fourth Amended Complaint, deny the Motion to Dismiss for Lack of Personal Jurisdiction, and deny as moot Plaintiff's Motion for Jurisdictional Discovery.

## I.    BACKGROUND

This case involves a consumer loan that Plaintiff Abraham Inetianbor applied for and received from non-party Western Sky Financial, LLC ("Western Sky") in January 2011.  See DE 141 ¶ 3 (4th Am. Compl.).  Western Sky is a South Dakota company purportedly operating within the exterior boundaries of the Reservation of the Cheyenne

River Sioux Tribe ("Tribe" or "CRST").[1]  Id. ¶¶ 4, 16.  Western Sky offered unsecured installment loans over the Internet in amounts varying from approximately $300 to $3,000 and bearing annual interest rates from approximately 90 percent to over 300 percent.  Id. ¶¶ 40–41.  While the loan agreements were entitled "Western Sky Consumer Loan Agreements" and potential borrowers would sometimes speak with a Western Sky representative over the phone or Internet regarding the loans, Plaintiff argues that Defendant CashCall, Inc. ("CashCall"), a California corporation, was the real or *de facto* lender.  Id. ¶¶ 15, 38, 42.

According to Plaintiff, the whole Western Sky enterprise was merely a "front" to enable CashCall and its President and CEO, Defendant John Paul Reddam, to "evade licensure by state agencies and to exploit Indian Tribal Sovereign Immunity to shield its deceptive business practices from prosecution by state and federal regulators."  Id. ¶¶ 4, 9, 17 (citation omitted).  CashCall provided Western Sky with website hosting services; reimbursed Western Sky for costs associated with the server; reimbursed Western Sky for office, personnel, and postage expenses; provided Western Sky with a toll-free number, fax number, and "an array of marketing services," including television, radio, and Internet advertisements; reviewed loan applications to the Western Sky website; and funded a reserve account from which Western Sky could fund the loans.  Id. ¶ 33.  After a loan was funded, CashCall or WS Funding, LLC ("WS Funding"), a wholly owned subsidiary of CashCall, would purchase the promissory note from Western Sky.  Id. ¶¶ 18, 34, 39, 150.  CashCall was then responsible for servicing the loan, accepting all payments on the loan, tracking all consumer complaints regarding

---

[1] "[A] judge ruling on a defendant's motion to dismiss a complaint 'must accept as true all of the factual allegations contained in the complaint.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 572 (2007) (citations omitted).

the loan, and bearing all risk on the loan.  Id. ¶¶ 34, 39.  If borrowers missed payments or failed to repay their loans, CashCall or related entities, such as Delbert Services Corporation ("Delbert"), made the collection efforts, and CashCall agreed to indemnify Western Sky for any civil or criminal claims arising from the loans.  Id. ¶¶ 39, 47.

The Western Sky Loan Agreements stated that the loans were subject solely to the exclusive laws and jurisdiction of Tribe.  Id. ¶ 34.  They also included an arbitration agreement and class action ban that would require individual arbitration under the Tribe's "consumer dispute rules."  Id. ¶¶ 5, 7, 137.  However, Robert Chasing Hawk, the arbitrator unilaterally selected by Defendants to adjudicate Plaintiff's dispute, admitted that there were no consumer rules to govern the arbitration process; he had a daughter who worked for the lending enterprise; and he had other prior connections with CashCall and Western Sky's President, Martin Webb.  Id. ¶¶ 7, 49–63.

Defendant John Paul Reddam is a citizen of California.  Id. ¶ 17.  In addition to being CashCall's President and CEO, Reddam owned 100 percent of CashCall's corporate stock and controlled the company's day-to-day operations.  Id. ¶¶ 17, 146–47.  Reddam was also the President, manager, sole member, and sole owner of WS Funding, as well as the sole owner and director of Delbert.  Id. ¶¶ 18–19, 148, 150.  Reddam negotiated and signed the agreements between his companies and Western Sky that structured the alleged lending scheme, and he chose or approved the choice of Florida as a state where the loans would be advertised.  Id. ¶¶ 150, 152.

After seeing a Western Sky television advertisement from his home in Broward County, Florida, Plaintiff called Western Sky and applied for a loan.  Id. ¶¶ 20–21.  Plaintiff executed a Western Sky Loan Agreement and obtained a loan of $2,525 with

an interest rate of 139.31 percent.  Id. ¶¶ 22, 68, 134.  After Plaintiff had repaid

approximately $3,252, he learned that the interest rate on his loan far exceeded that

allowed by Florida law.  Id. ¶ 25.  After confronting CashCall about this, CashCall

continued to pursue collection on the loan and refused to remove negative information

about the purported debt from Plaintiff's credit report.  Id. ¶¶ 25–26.

On the basis of these allegations, Plaintiff has asserted the following causes of

action against CashCall in his Fourth Amended Complaint: (1) violation of Florida's

usury statute, Fla. Stat. § 687.02; (2) violation of Florida's Consumer Finance Act, Fla.

Stat. §§ 516.001–.36; (3) violation of Florida's Deceptive and Unfair Trade Practices Act

("FDUTPA"), Fla. Stat. §§ 51.201–.213; (4) violation of the Florida Civil Remedies for

Criminal Practices Act ("Florida RICO"), Fla. Stat. §§ 772.101–.19; (5) fraud; (6) punitive

damages; (7) violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et

seq.; (8) defamation; and (9) a claim for a declaratory judgment "that tribal law and

forum does not apply, that arbitration clause is void, and that any purported class action

bar is void."  Id. ¶¶ 65–141.  The Fourth Amended Complaint also asserts a Tenth

Count, which seeks to hold Reddam personally liable for the aforementioned claims.  Id.

¶¶ 142–56.  Plaintiff seeks to bring these claims not only on his own behalf, but also on

behalf of a class of similarly situated individuals.[2]  Id. ¶¶ 157–64.

Defendants responded by filing a Motion to Dismiss the Fourth Amended

Complaint, which challenges the applicability of Florida law to the current dispute and

attacks each claim as insufficiently pled.  DE 164.  In addition, Defendant Reddam

independently filed a Motion to Dismiss for Lack of Personal Jurisdiction, arguing that

---

[2] Plaintiff has moved to certify claims alleged in the Fourth Amended Complaint as a class action.  See
DE 169.  That Motion currently remains pending before the Court.

not only is he protected by the corporate shield doctrine but he also lacks sufficient minimum contacts with Florida for the Court to assert personal jurisdiction over him without violating the Due Process Clause of the Fourteenth Amendment.  DE 165.

## II.   LEGAL STANDARDS

### A.  Rule 12(b)(6)

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'"  Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting GSW, Inc. v. Long Cty., 999 F.2d 1508, 1510 (11th Cir. 1993)).  All "reasonable inferences" are drawn in favor of the plaintiff.  St. George v. Pinellas Cty., 285 F.3d 1334, 1337 (11th Cir. 2002).

To survive a Rule 12(b)(6) motion to dismiss, the complaint "does not need detailed factual allegations"; however, the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (2007) (internal citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . ."  Id.  The plaintiff must plead enough facts to "state a claim that is plausible on its face."  Id. at 570.

### B.  Rule 12(b)(2)

To withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff must plead sufficient facts to establish a prima facie case of

jurisdiction over the nonresident defendant.  Diamond Crystal Brands, Inc. v. Food

Movers Int'l, Inc., 593 F.3d 1249, 1257 (11th Cir. 2010).  "Where, as here, the defendant

challenges jurisdiction by submitting affidavit evidence in support of its position, 'the

burden traditionally shifts back to the plaintiff to produce evidence supporting

jurisdiction.'"  Id. (citation omitted).  On a motion to dismiss for lack of personal

jurisdiction, a court must accept the facts asserted in the complaint as true unless

controverted by the defendant.  Miami Breakers Soccer Club, Inc. v. Women's United

Soccer Ass'n, 140 F. Supp. 2d 1325, 1328 (S.D. Fla. 2001) (citations omitted).

A court must conduct a two-part analysis to determine whether it has personal

jurisdiction over a defendant.  Future Tech. Today, Inc. v. OSF Healthcare Sys., 218

F.3d 1247, 1249 (11th Cir. 2000) (citation omitted).  First, the court must determine

whether the applicable state long-arm statute is satisfied.  Id.  A federal court is required

to construe the state long-arm statute as would the state's supreme court.  Lockard v.

Equifax, Inc., 163 F.3d 1259, 1265 (11th Cir. 1998).  Second, if the state long-arm

statute is satisfied, the court must determine whether exercising jurisdiction over the

defendant comports with the Constitution's requirements of due process and traditional

notions of fair play and substantial justice.  Future Tech. Today, Inc., 218 F.3d at 1249.

III.   **DISCUSSION**

A. **Florida Choice of Law**

Plaintiff may bring claims under Florida law.  A district court sitting in diversity

applies the choice-of-law rules of the state in which it sits—in this case, Florida.  David

v. Am. Suzuki Motor Corp., 629 F. Supp. 2d 1309, 1315 (S.D. Fla. 2009).  "The law is

well settled that federal courts sitting in diversity cases must apply the forum state's

conflict of law rules in order to resolve substantive legal issues." <u>Johnson v. Occidental Fire and Cas. Co. of N.C.</u>, 954 F.2d 1581, 1583 (11th Cir. 1992).  Since <u>Bishop v. Fla. Specialty Paint Co.</u>, 389 So. 2d 999, 1001 (Fla. 1980), Florida has followed the "most significant relationship test" in resolving conflict-of-law issues in tort actions, rather than the *lex loci delicti* rule used for contract claims.  Under the most significant relationship standard, the Court should apply the law of the state that "has the most significant relationship to the occurrence [of] and the parties [to]" a tort claim.  <u>Id.</u> (citation omitted).  The significant relationship test requires the Court to consider "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."  <u>Id.</u>  These factors should be evaluated "according to their relative importance with respect to the particular issue."  <u>Id.</u>  Under most circumstances, the state where the injury occurred will be the "decisive consideration" in determining the applicable choice of law.  <u>Mezroub v. Capella</u>, 702 So. 2d 562, 565 (Fla. 2d DCA 1997).

The Fourth Amended Complaint asserts tort or tort-style claims, and therefore, the most significant relationship test applies.  Turning to the first factor of the test, Plaintiff's injury clearly occurred in Florida, where Plaintiff saw the television ads deliberately targeted at Florida, applied for the allegedly usurious loan, made the allegedly excessive payments from his Florida bank account, and was subject to collection efforts.  Thus, the first factor, which carries great weight, favors the application of Florida law.  Second, the allegedly harmful conduct occurred in both California and Florida.  The false advertising and deceptive marketing was targeted at

Florida and its consumers, and the entrapment of borrowers in high-interest loans occurred in Florida.  However, CashCall primarily acted from its offices in California in soliciting and taking the loan application and servicing, collecting on, and otherwise administering the loan.  The third factor is neutral, as Plaintiff is a resident of Florida and Defendants are residents of California.  Finally, the parties' relationship was centered in Florida.  The parties had no relationship prior to Plaintiff seeing the Western Sky advertisements targeted at his state of residence.  In reliance on the ad which he saw in Florida, Plaintiff requested the loan from Florida, Plaintiff received the loan in Florida, CashCall drew payments from his bank account in Florida, and Plaintiff's injuries occurred in Florida.  Although CashCall's operations may have been centered in California, the relationship between the parties was not.  On balance, the most significant relationship test requires the application of Florida law,[3] and Plaintiff's state-law claims will not be dismissed on the basis of choice of law.

**B.  Sufficiency of the Claims**

**i.   Count One: Florida Criminal Usury**

Plaintiff's usury claim is appropriately grounded in state law.  Florida law imposes certain civil and criminal penalties on usurious transactions.  For obligations not exceeding $500,000, Fla. Stat. § 687.02(1) states that:

> All contracts for the payment of interest upon any loan, advance of money, line of credit, or forbearance to enforce the collection of any debt, or upon any obligation whatever, at a higher rate of interest than the equivalent of 18 percent per annum simple interest are hereby declared usurious.

---

[3] Florida applies a modified most significant relationship test to fraud claims. See Trumpet Vine Invs., N.V. v. Union Capital Partners I, Inc., 92 F.3d 1110, 1118 (11th Cir. 1996).  Because CashCall directed the allegedly false representations at Florida, and Plaintiff received those representations and acted on those representations in Florida, the Court reaches the same result that Plaintiff may bring his fraud claim under Florida law.

Fla. Stat. § 687.147(1) creates a civil right of action, providing that:

> Any borrower injured by a violation of this act may bring an action for recovery of damages.  Judgment shall be entered for actual damages, but in no case less than the amount paid by the borrower to the loan broker, plus reasonable attorney's fees and costs.  An award may also be entered for punitive damages.

A plaintiff may seek both monetary damages and declaratory relief for a usurious agreement.  See, e.g., Buckeye Ventures, Inc. v. Trafalgar Capital Specialized Inv. Fund Luxembourg, No. 09-60230CIVCOHN, 2009 WL 2477470, at *1–2  (S.D. Fla. Aug. 11, 2009).  A civil plaintiff's claim that a loan is criminally usurious, as opposed to civilly usurious, affects the monetary remedies that the plaintiff may pursue.  As the court explained in Atkins v. Snell & Wilmer, L.L.P., No. 1 CA-CV 12-0018, 2012 WL 6720355, at *6 (Ariz. Ct. App. Dec. 27, 2012):

> Under Florida law, the remedy for civil usury, which involves a loan of $500,000 or less and an interest rate of greater than 18% but less than 25%, is an award of double the interest paid . . . . When a debt has an interest rate of greater than 25%, it is criminally usurious, and the remedy is cancellation of the debt and a return of the amounts paid by the borrower to the lender.  Fla. Stat. § 687.071; Velletri v. Dixon, 44 So.3d 187, 189 (Fla. Dist. Ct. App. 2010).  In addition, pursuant to Fla. Stat. § 687.147, a borrower who is "injured" by a criminally usurious loan "shall" be entitled to an award of reasonable attorneys' fees.

Defendants maintain that Plaintiff's criminal usury claim must fail because Plaintiff did not explicitly cite to Fla. Stat. § 687.147(1), the provision establishing the private right of action.  See DE 184 at 4.  The Court disagrees.  As explained above, it is clear that Chapter 687 creates a private right of action for a borrower injured by a usurious loan, and by claiming that the loan was criminally usurious, Plaintiff has put Defendants on notice of the monetary damages that he intends to pursue.  Although a citation to § 687.147(1) perhaps would have added clarity to the claim, the Court finds that the Fourth Amended Complaint adequately sets forth Plaintiff's grounds for entitlement to relief under Florida's usury statute.

**ii.**   **Count Two: Florida Consumer Finance Act**

In his Response to Defendants' Motion, Plaintiff voluntarily withdrew his Consumer Finance Act claim as a separate cause of action.  DE 167 at 9.  Plaintiff noted, however, that the allegations remain proper supporting predicates for his FDUTPA claim.  Id.  Plaintiff is correct that conduct considered to be a deceptive or unfair for the purposes of a FDUTPA claim may be defined by "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive or unconscionable acts or practices."  Fla. Stat. § 501.203(3)(c).  Therefore, the Court will construe Count Two as asserting a factual predicate for the FDUTPA claim rather than a separate cause of action.

**iii.**   **Count Three: FDUTPA**

Plaintiff has sufficiently pled his FDUTPA claim.  FDUTPA is a consumer protection law intended to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the course of any trade or commerce."  Fla. Stat. § 501.202(2).  "Courts must liberally construe FDUPTA." Lombardo v. Johnson & Johnson Consumer Cos., Inc., 124 F. Supp. 3d 1283, 1287 (S.D. Fla. 2015) (citation omitted).  A consumer claim under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. Id.  Defendants' objection focuses on the second element, arguing that Plaintiff has failed to plead facts sufficient to establish that their allegedly deceptive and unfair acts directly and proximately caused any damage to Plaintiff.  See DE 164 at 10.

To prove the causation element of a FDUTPA claim, the "causation must be direct, rather than remote or speculative." Hennegan Co. v. Arriola, 855 F.Supp.2d 1354, 1361 (S.D. Fla. 2012). However, "a plaintiff need not prove reliance on the allegedly false statement . . . but rather a plaintiff must simply prove that an objectively reasonable person would have been deceived." Fitzpatrick v. Gen. Mills, Inc., 635 F.3d 1279, 1283 (11th Cir. 2011).

The Fourth Amended Complaint sets forth sufficient factual allegations to establish causation. Plaintiff alleges that Defendants' use of Western Sky as a front company enabled them to offer extremely high-interest loans under the guise of Tribal law compliance. DE 141 ¶¶ 31–32. Acceptance of one of these loans caused Plaintiff to pay back significantly more than he had borrowed in less than a year, as well as a "finance charge" that would have been illegal under Florida law. Id. ¶¶ 58, 71–72, 79, 81. Plaintiff also alleges that after he complained to CashCall about the excessive interest rate on his loan, CashCall continued to engage in aggressive collection efforts, harassed him, and reported him to a collection agency, which not only caused him stress but also damaged his credit report. Id. ¶¶ 25–27. Such allegations were incorporated by reference into Plaintiff's FDUTPA claim and represent only a sample of the alleged "unconscionable, deceptive, or unfair acts or practices" causing Plaintiff monetary loss and other tangible harm. See id. ¶ 83. Such causation is sufficiently direct to support Plaintiff's FDUTPA claim.

### iv.   Count Four: Florida RICO

Plaintiff has not sufficiently pled a claim under the Florida RICO Act. Florida RICO makes it unlawful for any person "[e]mployed by, or associated with, any

11

enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of criminal activity or the collection of an unlawful debt."  Fla. Stat. § 772.103(3). Florida RICO has a distinctiveness requirement, meaning that in order to impose liability, "it must be shown that the person was employed by, or associated with a distinct enterprise 'that is not simply the same 'person' referred to by a different name.'" Fla. Evergreen Foliage v. E.I. Dupont De Nemours & Co., 336 F. Supp. 2d 1239, 1260 (S.D. Fla. 2004) (quoting Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001)).  "[T]he distinctness requirement cannot be circumvented by alleging a RICO enterprise that consists merely of a corporate defendant [person] associated with its own employees or agents carrying on the regular affairs of the defendant."  Palmas Y Bambu, S.A. v. E.I. Dupont De Nemours & Co., 881 So. 2d 565, 575 (Fla. Dist. Ct. App. 2004) (citation & quotation omitted); see also Fla. Evergreen Foliage, 336 F. Supp. 2d at 1260 (holding that distinctiveness requirement was not met where alleged enterprise consisted of corporation, employees, outside counsel, agents, and consultants).

Plaintiff argues that for purposes of proving an enterprise, Western Sky and its President Martin Webb are distinct from CashCall, its owner Reddam, and its affiliates WS Funding, LLC and Delbert.  See DE 167 at 15.  However, the central thrust of the Fourth Amended Complaint is that Western Sky was merely a "front" for CashCall, that CashCall "controlled and supported" Western Sky, and that the activities of Western Sky therefore may be attributed to CashCall.  See DE 141 ¶¶ 4, 9, 16, 24, 32, 38.  Because CashCall cannot engage in an illegal enterprise with itself, Plaintiff has failed to plead facts sufficient to establish the distinctiveness requirement of his Florida RICO claim. Therefore, Count Four shall be dismissed.

### v.   <u>Count Five: Florida Common-Law Fraud</u>

The Fourth Amended Complaint adequately states a claim for common-law fraud.  For a claim of fraud under Florida law, a plaintiff must prove: (1) misrepresentation of material fact; (2) by someone who knew or should have known of the statement's falsity; (3) with intent that the representation would induce another to rely and act on it; and (4) injury suffered in justifiable reliance on the representation. <u>Fla. Evergreen Foliage</u>, 336 F. Supp. 2d at 1284.

Claims for fraud are also subject to Rule 9(b) heightened pleading requirements, which require that a party "must state with particularity the circumstances constituting the fraud or mistake."  Fed. R. Civ. P. 9(b).  Under Eleventh Circuit precedent:

> Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

<u>Tello v. Dean Witter Reynolds, Inc.</u>, 494 F.3d 956, 972 (11th Cir. 2007) (quotation marks omitted).

Defendants maintain that Plaintiff has neither alleged fraud with particularity nor established all elements of his claim.  However, Plaintiff need not prove every element of his claim in his Complaint, and the Court is satisfied that Plaintiff has met the pleading requirements of Rule 9(b).  The Fourth Amended Complaint identifies statements in Defendants' advertisements and loan agreements that Western Sky was making the loan, the omission that CashCall was the *de facto* lender, and the representations in the Loan Agreement that any disputes could be adjudicated in a Tribal arbitration system, which Defendants knew was a sham.  DE 141 ¶¶ 102–03.

13

Plaintiff identifies CashCall as the entity responsible for making the statements or omissions, and states that he was misled by these statements into taking out a usurious loan.  Id. ¶¶ 101–03.  And as a result, Defendants collected greater interest from Plaintiff than would have been legal under Florida law.  Id. ¶ 72.  Count Five, therefore, will not be dismissed.

### vi.   Count Six: Punitive Damages

"[P]unitive damages, like other relief, 'are not an independent cause of action. Rather, punitive damages are merely a remedy . . . asserted in conjunction with a substantive claim.'"  MI Windows & Doors, LLC v. Liberty Mut. Fire Ins. Co., 123 F. Supp. 3d 1332, 1341 (M.D. Fla. 2015) (quoting Philip Morris USA, Inc. v. Hallgren, 124 So.3d 350, 355 (Fla. 2d DCA 2013)). Therefore, the Court will construe Count Six not as an independent claim but as a request for relief under the other applicable Counts.

### vii.   Count Seven: FCRA

Plaintiff has not stated a claim upon which relief may be granted under the FCRA.  Plaintiff alleges that CashCall is a furnisher of credit information under the FCRA.  See DE 141 ¶ 114.  Therefore, the Court construes Plaintiff's FCRA claim as arising under 15 U.S.C. § 1681s–2, "the only part of the FCRA that governs the duties of furnishers of information to the credit reporting agencies."  See Jackson v. Genesys Credit Mgmt., No. 06-61500-CIV, 2007 WL 4181024, at *2 (S.D. Fla. Nov. 21, 2007).

The FCRA imposes two duties on furnishers.  First, § 1681s–2(a) requires furnishers to submit accurate information to credit reporting agencies ("CRAs").  But § 1681s–2(a) does not create a private cause of action.  See Liste v. Cedar Fin., No. 8:13-CV-3001-T-30AEP, 2015 WL 439442, at *3 (M.D. Fla. Feb. 3, 2015) (citing Green

v. RBS Nat. Bank, 288 Fed. App'x 641, 642 (11th Cir. 2008)).  Second, § 1681s–2(b) requires furnishers of credit information to investigate the accuracy of said information once they receive notice of a dispute.  Section 1681s–2(b) may be enforced through a private right of action, but only if the furnisher received notice of the consumer dispute from a CRA.  Peart v. Shippie, 345 F. App'x 384, 386 (11th Cir. 2009).

Applying these principles to the instant case, Plaintiff's FCRA claim cannot rest on the allegation that CashCall furnished inaccurate information to a CRA, as prohibited by § 1681s–2(a).  Nor does the Fourth Amended Complaint support a claim for violating § 1681s–2(b) because nowhere does it allege that CashCall received notice of a dispute from a CRA.  Rather, Plaintiff alleges that he personally "informed CashCall that no negative information should be reported to the CRAs" and requested that CashCall reinvestigate the matter.  DE 141 ¶¶ 114–15.  Because Plaintiff has not stated an FCRA claim upon which relief may be granted, the claim will be dismissed.

      **viii.**    **Count Eight: Florida Defamation**

Plaintiff's state-law defamation claim is not preempted by the FCRA, as Defendants contend.  The FCRA states that "no consumer may bring any action or proceeding in the nature of defamation . . . with respect to the reporting of information against . . . any person who furnishes information to a consumer reporting agency," unless the "false information [was] furnished with malice or willful intent to injure such consumer."  15 U.S.C. § 1681h(e).  A statement is malicious when made "with knowledge that it was false or with reckless disregard of whether it was false or not."  Hunt v. Liberty Lobby, 720 F.2d 631, 642 (11th Cir. 1983) (citing N.Y. Times Co. v. Sullivan, 376 U.S. 254, 279–80 (1964)).  "Malice . . . and other conditions of a person's

mind may be alleged generally."  Fed. R. Civ. P. 9(b); see also Embrey v. First Franklin

Fin. Corp., No. 12-61233-CIV, 2013 WL 1289401, at *5 (S.D. Fla. Mar. 12, 2013)

(denying motion to dismiss defamation claim as preempted by FCRA where plaintiff

alleged that defendants "exhibited a knowing disregard for the truth").

 Defendants maintain that Plaintiff's state-law defamation claim is preempted by

the FCRA because Plaintiff does not assert that CashCall's misreporting of information

was malicious or made with willful intent to injure Plaintiff.  See DE 164 at 14.  However,

Plaintiff clearly alleges that "CashCall knew or should have known that the underlying

loan was usurious, criminal and void," and therefore that Plaintiff did not owe money on

the debt as reported.  DE 141 ¶¶ 120–21.  This, together with the incorporated factual

allegations that CashCall created the Western Sky lending scheme with the intent of

charging higher interest rates and avoiding regulation, is enough for purposes of

pleading knowledge of falsity or reckless disregard for the truth.  Because Plaintiff has

sufficiently alleged that Defendants acted with malice, his defamation claim is not

preempted by the FCRA.

  **ix.** **Count Nine: Declaratory Relief**

 Count Nine seeks a declaration that: (1) the choice of law and forum selection

clauses in the Loan Agreement do not apply; (2) the arbitration clause is void; and (3)

the class action bar is void.  Id. ¶¶ 124–41.  The Fourth Amended Complaint states that

these dispute resolution provisions should not be enforced because the Loan

Agreement is, among other things, "riddled with false, fraudulent and unfair and

deceptive provisions" and "impossible to perform."  Id. ¶ 141.  Defendants state only

that Count Nine should be dismissed "to the extent its requests for declaratory relief depend upon claims that have been dismissed . . . ."  DE 164 at 14.

Defendants are correct that Plaintiff can no longer seek declaratory judgment as a remedy for a dismissed claim.  However, the Court must construe all ambiguity in favor of Plaintiff, and Count Nine could reasonably be construed as a remedy for Plaintiff's FDUTPA claim, which the Court has allowed to proceed.  Moreover, it appears to the Court that Count Nine is an independent claim for declaratory judgment regarding the enforceability of Loan Agreement provisions, rather than merely a remedy for claims previously asserted.  Because Defendants only challenge Count Nine to the extent that it relies on dismissed claims, Defendants' motion to dismiss Count Nine is denied.

### x.   Count Ten: Personal Liability of Reddam

Count Ten seeks to hold Reddam personally liable for all claims asserted in the Fourth Amended Complaint.  Defendants argue that Count Ten must be dismissed because none of Plaintiff's other claims are valid.  See DE 164 at 14–15.

To the extent that this Order has dismissed any of Plaintiff's claims, Plaintiff may not seek to hold Reddam personally responsible for them.  However, Count Ten shall not be dismissed in its entirety.  The Fourth Amended Complaint sufficiently pleads numerous claims, and because Defendants have not raised additional Rule 12(b)(6) challenges to Count Ten, Plaintiff may seek to hold Reddam liable for said claims.

## C. Personal Jurisdiction Over Reddam

A federal court sitting in diversity may exercise jurisdiction over a defendant only if: (1) the applicable state long-arm statute is satisfied, and (2) asserting personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment.

Posner v. Essex Ins. Co., 178 F.3d 1209, 1214 (11th Cir. 1999).  As explained below, this Court's exercise of jurisdiction over Defendant Reddam is permissible under both Florida's long-arm statute and the Due Process Clause.

### i.   Florida's Long-Arm Statute

Florida's long-arm statute provides for both general and specific personal jurisdiction.  See Fla. Stat. § 48.193(1)–(2).  Specific personal jurisdiction allows a court to exercise jurisdiction over causes of action arising from or related to a defendant's actions within Florida and concerns a nonresident defendant's contacts with Florida only as they relate to the plaintiff's claims.  Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1352 (11th Cir. 2013).  Section 48.193(1)(a)(2) of Florida's long-arm stature provides that a nonresident defendant is subject to specific personal jurisdiction in Florida "for any cause of action arising from . . . [c]omitting a tortious act within [Florida]."  Fla. Stat. § 48.193(1)(a)(2).  Under Florida law, "a nonresident defendant commits 'a tortious act within [Florida]' when he commits an act outside the state that causes injury within Florida."  Louis Vuitton, 736 F.3d at 1353 (alteration in original) (emphasis & citation omitted).

Reddam contends that the Court lacks jurisdiction under Florida's long-arm statute because the corporate shield doctrine protects him from personal liability.  Under the corporate shield doctrine, the acts of a corporate employee performed in his corporate capacity generally cannot form the basis for jurisdiction over the corporate employee in his individual capacity.  Schwartzberg v. Knobloch, 98 So.3d 173 (Fla. 2d DCA 2012); Doe v. Thompson, 620 So.2d 1004, 1006 (Fla. 1993).  Importantly, however, a nonresident corporate officer is subject to personal jurisdiction where the

officer is a "primary participant" in fraud or intentional misconduct aimed at the forum state. Rensin v. State, 18 So.3d 572, 574 (Fla. 1st DCA 2009).

The Fourth Amended Complaint asserts as a basis for jurisdiction that Reddam "marketed, offered, made, serviced and/or collected on loans in Florida." DE 141 ¶ 12. In support of Reddam's Motion to Dismiss, he submitted an affidavit refuting these allegations. See DE 165-1. Reddam's affidavit expressly disavows that he helped create a business structure to "enable [him] to collect usurious interest rates while avoiding regulatory detection." DE 165-1 ¶ 15. He also attests that he has never interacted or communicated with a Florida resident who borrowed money from Western Sky, nor was he personally involved in the servicing and collection efforts of CashCall, WS Funding, or Delbert other than to instruct employees to comply with the law. Id. ¶ 10. This was enough to shift the burden to Plaintiff.

The Court finds that, although Plaintiff did not file new counter-affidavits, he cited to previously filed evidence sufficient to support his position that Reddam was a "primary participant" in directing fraudulent or intentional misconduct at Florida residents. Plaintiff advances several arguments why Reddam was a "primary participant," but his most convincing is that, by signing documents establishing the relationship between CashCall, Western Sky, and WS Financial, Reddam was a primary participant in creating and setting up a usurious lending operation. The evidence is clear that Reddam signed the "Assignment and Purchase of Promissory Notes" [DE 138-3] and "Promissory Note" and "Agreement of Service" [DE 138-4]. The findings of the New Hampshire Banking Department provide evidence of intentional misconduct— specifically, that this arrangement was merely "a front to enable CashCall to evade

19

licensure by state agencies and to exploit Indian Tribal Sovereign Immunity to shield its deceptive business practices from prosecution by state and federal regulators."  In re CashCall, Inc., No. 12-308, 2013 WL 3465250, at *3 (N.H. Banking Dept. June 4, 2013) [DE 138-7].  Finally, Plaintiff's testimony that he saw a Western Sky ad at his home [DE 151-4] indicates that the loans were specifically aimed at Florida, and his Western Sky Consumer Loan Agreement [DE 164-1] establishes that these loans were indeed made to Florida residents.  Plaintiff therefore has met his burden to establish that the corporate shield doctrine does not apply and that Florida's long-arm statute allows this Court to assert personal jurisdiction over Reddam for Plaintiff's claims of fraud and tortious misconduct.

> ii.  **Due Process Analysis**

The inquiry does not end there, however.  The Court must determine whether assertion of personal jurisdiction will comport with due process.  This analysis requires the Court to consider whether: (1) the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) the nonresident defendant "purposefully availed" itself of the privilege of conducting activities within the forum state; and (3) the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."  Louis Vuitton, 736 F.3d at 1355 (citations omitted). "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, 'a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.'"  Id. (quoting Diamond Crystal Brands, Inc., 593 F.3d at 1267).

Turning to the first element of the due process analysis, Plaintiff has established that his claims arise out of Reddam's alleged contacts with Florida.  The Eleventh Circuit has "not developed or adopted a specific approach to determining relatedness; instead, [the Eleventh Circuit has] heeded the Supreme Court's warning against using mechanical or quantitative tests."  Mighty Men of God, Inc. v. World Outreach Church of Murfreesboro Tenn., Inc., 102 F. Supp. 3d 1264, 1272 (M.D. Fla. 2015) (citing Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1222 (11th Cir. 2009)).  The Fourth Amended Complaint states that as a result of Reddam setting up, implementing, and running at least some of the day-to-day operations of the Western Sky loan program, fraudulent loans were marketed and issued to Plaintiff and other Florida residents.  DE 141 ¶ 153.

Second, Reddam purposefully availed himself of the privilege of conducting business in Florida.  Where the underlying claims involve intentional torts, purposeful availment can be determined through application of the "effects test," which was developed in Calder v. Jones, 465 U.S. 783 (1984).  See Louis Vuitton, 736 F.3d at 1356–57 (holding that, in intentional tort cases, courts may apply either effects test or traditional minimum contacts test to determine whether personal jurisdiction satisfies Due Process Clause).  Under the effects test, a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state.  See Licciardello v. Lovelady, 544 F.3d 1280, 1285 (11th Cir. 2008).  This occurs when the tort: "(1) [was] intentional; (2) [was] aimed at the forum state; and (3) caused harm that the defendant should have anticipated

would be suffered in the forum state."  Id. at 1286.  All three elements are clearly satisfied in this case.

Finally, the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."  This inquiry requires consideration of the following factors: (1) "the burden on the defendant"; (2) "the forum's interest in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; and (4) "the [interstate] judicial system's interest in resolving the dispute."  Lovelady, 544 F.3d at 1288 (citing World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)). Because Plaintiff satisfied the first two factors in the due process analysis, Reddam had the burden to establish that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.  He did not do so.  All factors indicate that exercising personal jurisdiction over Reddam would not be unreasonable.  First, there is no suggestion that requiring Reddam to adjudicate this case in Florida would be an unfair burden.  Second, "Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida."  Id. Third, Plaintiff has an interest in adjudicating this case in the forum where he resides and where his injury occurred.  See id.  Finally, the judiciary system has an interest in efficiently adjudicating related claims against Reddam and CashCall in the same forum, and Reddam has not identified a compelling countervailing interest.  Therefore, the exercise of personal jurisdiction over Reddam comports with the Due Process Clause.

### D.  **Jurisdictional Discovery**

Having found that the Court may exercise personal jurisdiction over Reddam, Plaintiff need not conduct additional discovery on this issue.  Accordingly, Plaintiff's

Motion for Jurisdictional Discovery shall be denied as moot.

IV.   **CONCLUSION**

For the reasons set forth herein, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss the Fourth Amended Complaint [DE 164] is

    **GRANTED in part** and **DENIED in part** as follows:

    a.  Counts Four and Seven are **DISMISSED** for failure to state a claim.

    b.  The Court will construe Count Two as laying a predicate for Count III,

        rather than as an independent claim.

    c.  The Court will construe Count Six as a prayer for relief, rather than an

        independent claim.

    d.  Plaintiff may proceed on the remainder of the claims asserted in the

        Fourth Amended Complaint [DE 141] to the extent that they comply

        with this Order.

2.  Defendant John Paul Reddam's Motion to Dismiss for Lack of Personal

    Jurisdiction [DE 165] is **DENIED**.

3.  Plaintiff's Motion for Discovery with Regard to Personal Jurisdiction Issues

    [DE 183] is **DENIED as moot**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, on this 5th day of April, 2016.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of Record via CM/ECF

23