UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 13-60066-CIV-COHN-SELTZER

| | |
|---|---|
| ABRAHAM INETIANBOR, JOHNNY FRETWELL, LAUREN BROWN, THOMAS PETERSON, VIRGINIA FRY, AND NELS PATE, JR., on behalf of themselves and a class of persons similarly situated, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | )<br>) |
| CASHCALL, INC. and JOHN PAUL REDDAM, | )<br>)<br>) |
| Defendants. | )<br>) |

**PLAINTIFFS' UNOPPOSED MOTION AND INCORPORATED BRIEF IN SUPPORT OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

PLEASE TAKE NOTICE that on May 15, 2017, at 9:00 a.m., or on such date as may be specified by the Court, before the Honorable James I. Cohn, United States District Court for the Southern District of Florida, in Courtroom 203E, 299 East Broward Boulevard, Fort Lauderdale, Florida, the Plaintiffs, Johnny Fretwell, Lauren Brown, Thomas Peterson, Virginia Fry and Nels Pate, Jr.,[1] through counsel, shall request Court approval of their instant motion for an award of attorneys' fees, costs and service awards.

This motion is made pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, Local Rules 7.1 and 23.1, paragraphs 3.4, 3.5 and 3.6, of the parties' Settlement

---

[1] Original Plaintiff Abraham Inetianbor was dismissed pursuant to stipulation of dismissal filed Jan. 3 and Court Order filed Jan. 4, 2017 (Docs. 319, 320). The remaining five Plaintiffs, Fretwell, Brown, Peterson, Fry and Pate, are Class Representatives pursuant to the Court's Order of preliminary approval filed Dec. 30, 2016 (Doc. 318, ¶ 4).

i

Agreement filed December 23, 2016 (Doc. 316-1), and paragraph 21 of the Court's Order of Preliminary Approval dated December 30, 2016 (Doc. 318).

At the Final Fairness Hearing scheduled for May 15, 2017, at 9:00 a.m., the Plaintiffs, on behalf of themselves and the Class, will request the entry of an order, pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2), granting the following relief:

1) Awarding Class Counsel $4,175,000.00 in attorneys' fees, costs and litigation expenses (representing 14% of the total gross value of the settlement, and 29% of the fund for cash restitution standing alone);

2) Awarding $150,000.00 for payment for costs of notice and class administration to Dahl Administration; and

3) Awarding incentive payments to the five Class Representatives, of $10,000 each.

Plaintiffs show that if their motion is approved, it will result in a net settlement fund available for purposes of sending cash restitution to eligible borrowers in an amount of approximately $10,042,810.00. This amount was specified in the class notice herein.

This motion will be heard concurrent with Plaintiffs' Motion for Final Approval of Class Action Settlement, which shall be separately briefed and filed no later than May 5, 2017 (ten days before the Final Fairness Hearing). *See* Order, Doc. 318, ¶ 22. This motion is based on this notice; the incorporated Memorandum of Law; the Declarations of Counsel filed concurrently herewith; the Settlement Agreement (previously filed at Doc. 316-1); and on such further evidence as may be submitted or as the Court may receive.

Pursuant to Rule 23(h), Class Counsel file this Motion 30 days in advance of the March 30, 2017 deadline for objecting to the Settlement. *See* Order, Doc. 318, ¶¶ 15, 18. A copy of this Motion will be posted to the Settlement Website, https://secure.dahladmin.com/FLCALL/Index, where it can easily be accessed by class members.

Plaintiffs request that the Court consider this motion at the final approval hearing which has been scheduled for May 15, 2017. In further support, Plaintiffs provide below their incorporated memorandum of law under Local Rule 7.1(a)(1).

Dated: February 28, 2017                **VARNELL AND WARWICK, P.A.**

By: ___/s/ Janet Varnell___
JANET VARNELL, ESQ., FBN: 0071072
janet@varnellandwarwick.com
BRIAN W. WARWICK, ESQ.
bwarwick@varnellandwarwick.com
P.O. Box 1870
Lady Lake, FL
Tel. 352-753-8600
Fax 352-504-3301

**WALLACE AND GRAHAM, P.A.**
MONA LISA WALLACE, ESQ.
mwallace@wallacegraham.com
JOHN S. HUGHES, ESQ.
jhughes@wallacegraham.com
525 North Main Street
Salisbury, North Carolina 28144
Tel. 800-849-5291
Fax 704-633-9434

*Attorneys for Plaintiffs*

**INCORPORATED MEMORADUM OF LAW**

**1. INTRODUCTION.**

After years of contentious litigation, the parties have finally arrived at a settlement that delivers substantial monetary relief to thousands of Florida borrowers. The settlement compares favorably to similar settlements in other jurisdictions. It includes both monetary payments for eligible class members, and cancellation of millions worth of debt. Under the structure of the settlement, there is no need for class members to file a claim in order to obtain their benefits. Furthermore, there is no reversion of unclaimed proceeds to Defendants. Rather, any residual funds for which class member recipients cannot be found, will instead be directed to an appropriate nonprofit organization with this Court's approval.

The matter was zealously contested for multiple years. At the outset of class counsel's participation, the matter was extremely risky and the outcome was uncertain. The matter required time-consuming litigation, briefing of numerous motions on threshold and merits issues, engaging in written and deposition discovery, reviewing thousands of pages of documents, and arguing an interlocutory appeal to the Eleventh Circuit. This effort led to a string of rulings, both in this Court and on appeal, which were cited by other courts and which ultimately facilitated positive results in other cases around the country.

In short, Class Counsel overcame significant risks and created significant value in the form of debt relief and a substantial settlement fund for the benefit of the class. Under Rule 23's attorney fee standards, awards in an amount equal to 30 to 33% of the value of the common fund have been made in numerous class actions. Here, Class Counsel request an award of attorneys' fees representing 14% of the total gross value of the settlement (including cash refunds and the value of debt cancelation), or 29% of the cash restitution fund, standing alone. For the reason set forth below, this fee request is amply supported and should be granted.

1

The reasonability of the fee sought is further supported by the fact that Class Counsel do not separately seek an order reimbursing them for their litigation costs and expenses. The case involved numerous depositions, significant travel expenses as well as retention of experts. However, Class Counsel have included the costs and expenses within their percentage of common fund amount sought, as opposed to seeking 14% of the total fund <u>plus</u> litigation costs.

Class Counsel also seek approval of service awards in the amount of $10,000 each for the five named class representatives. Each of these individuals was actively involved in the class proceedings, participated in written and document discovery, and prepared for and gave a deposition under oath in which they were exhaustively questioned. By the nature of this payday loan litigation, the Plaintiffs were not high-income individuals, yet they put in the time and commitment necessary to assist in the case and to represent the class.

Finally, Plaintiffs request payment from the common fund for the services of the Class Administrator. The administrator, Dahl Administration, has overseen the mailing of thousands of class notices, set up the class action website, and has responded to inquiries and requests for information. Dahl is now poised to distribute the class benefits as under the Settlement Agreement.

2. **<u>LEGAL STANDARD.</u>**

There is a strong judicial policy favoring the pretrial settlement of class actions. *See, e.g., In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits."); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."); *Lee v. Ocwen Loan Servicing, LLC*, No. 0:14-cv-60649-JG, 2015 U.S. Dist. LEXIS 121998, *14 (S.D. Fla. Sept. 14, 2015) (same). A class settlement should be approved if

it is "fair, reasonable, and adequate," Fed. R. Civ. P. 23(e)(2), and "not the product of collusion." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

***Federal Rule 23*** -- Under Fed. R. Civ. P. 23(h), in a certified class action, the court may award reasonable attorney's fees and costs as authorized by law or by the parties' agreement:

> (h) Attorney's Fees and Nontaxable Costs. In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply:
>
> (1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.
>
> (2) A class member, or a party from whom payment is sought, may object to the motion.
>
> (3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a).
>
> (4) The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D).

***Terms of the Settlement Agreement*** -- The Settlement Agreement, Doc. 316-1, § 3.4(2)(a)(1), provides that the settlement fund shall be distributed to pay *inter alia* the costs of class notice and settlement administration, Class Counsel's attorneys' fees and litigation costs, and Named Plaintiffs' service awards, all as approved by the District Court. The proposed class notice attached as Exhibit B to the Settlement Agreement contemplates that after such disbursements, the net cash fund available for restitution to class members will be approximately $10,042,000.

Section 3.6 of the Settlement Agreement provides that Plaintiffs will file the instant motion with the Court at least 30 days prior to the deadline for filing objections to the settlement. Section 3.5 provides that Plaintiffs will apply to the Court for service payments in the total

amount of no more than $10,000 to each of the five class representatives, for a cumulative total of $50,000, to be paid from the fund in an amount approved by the Court.

Paragraph 21 of the Court's Order of Preliminary Approval dated December 30, 2016 (Doc. 318) instructs that this motion be filed by February 28, 2017; this motion is timely filed.

*__Case law on fee calculation__* – "Attorneys representing a class action are entitled to an attorneys' fee based solely upon the total benefits obtained in or provided by a class settlement." *Hamilton v. SunTrust Mortgage Inc*., No. 13-cv-60749, 2014 U.S. Dist. LEXIS 154762, at *20, 2014 WL 5419507 (S.D. Fla. Oct. 24, 2014) (Cohn, J.); *cf. Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980) (noting that "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole").

"[A]ttorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Hamilton,* 2014 U.S. Dist. LEXIS 154762, at *20-21 (quoting *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991)); *see also Pinto v. Princess Cruise Lines, Ltd*., 513 F.Supp.2d 1334, 1339 (S.D. Fla. 2007); *In re Sunbeam Sec. Litig*., 176 F.Supp.2d 1323, 1333 (S.D. Fla. 2001).The percentage of common fund attorneys' fee may range from 20% to 50% of the common fund.  *David v. Am. Suzuki Motor Corp*., No. 08-CV-22278, 2010 U.S. Dist. LEXIS 146073, *26 n.15, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) (noting "the customary fee in class actions that result in substantial benefits for the class (i.e., 20% - 50% of the common fund's value)"); *Waters v. Int'l Precious Metals Corp*., 190 F.3d 1291, 1295-96 (11th Cir. 1999) (affirming fee award of 33 1/3 % of total amount made available to class).

The court may consider other factors including the response of the class to the proposed settlement, the difficulty of the litigation, and whether the settlement was brokered by an experienced mediator. *See Poertner v. Gillette Co.,* No. 14-13882, 618 Fed. Appx. 624, 630, 2015 U.S. App. LEXIS 12318, 2015 WL 4310896 (11th Cir. July 16, 2015) (noting how "the parties settled only after engaging in extensive arms-length negotiations moderated by an experienced, court-appointed mediator").

3. **BACKGROUND OF THE LITIGATION.**

Plaintiffs alleged, *inter alia*, the following claims for classwide relief: (1) violation of the Florida usury statute, Fla. Stat. § 687.02 *et seq.*; (2) violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.*; (3) a claim for a declaratory judgment; and (4) a claim alleging the direct personal liability of Mr. Reddam.

After years of diligent and zealous litigation and representation, with summary judgment cross-motions pending, and under the supervision of an experienced mediator, the parties reached a settlement. The Settlement Class is defined as: "All individuals identified as Florida residents in Western Sky loan agreements dated on or after February 11, 2011." *See* Order, Doc. 318, ¶ 2.[2]

---

[2] Included within this class definition are three subclasses originally defined when the case was certified as a litigation class. *See* Order, Doc. 318, ¶ 2 (including "FDUTPA Subclass: All individuals identified as Florida residents in Western Sky loan agreements dated on or after June 30, 2011;" "Usury Subclass 1: All individuals identified as Florida residents in Western Sky loan agreements who made payments on their loans on or after June 30, 2013;" and "Usury Subclass 2: All individuals identified as Florida residents in Western Sky loan agreements who made payments on their loans on or after February 11, 2013").

Based on a review of Defendants' records, the Settlement Class consists of approximately 29,631 Settlement Class Members.[3]

Prior to settlement, the parties vigorously litigated this case. The Court is well-aware of the intensity and the thoroughness with which many key issues, both threshold and merits, were discovered, advanced, briefed, heard and ruled on over that time. The case led to issuance of multiple Orders by this Court[4] which have been widely cited both by other courts[5] and legal commentators.[6] It also led to an appeal to the Eleventh Circuit resulting in a reported panel decision and a subsequent petition for certiorari to the United States Supreme Court.[7] Two more recent appeal petitions are pending but have been stayed pending the final approval of this settlement. There is no question that the significant effort was necessary to obtain the settlement.

---

[3] *See* Settlement Agreement, Doc. 316-1, § 3.2 (so stating). Further information in this regard such as number of class notices sent and other information from the Class Administrator, Dahl, will be provided in advance of the final approval hearing.

[4] *E.g.*, *Inetianbor v. CashCall, Inc.*, 923 F.Supp.2d 1358 (S.D. Fl. Feb. 15, 2013);, 2013 U.S. Dist. LEXIS 46802 (S.D. Fl. April 1, 2013); 2013 U.S. Dist. LEXIS 70450 (S.D. Fl. May 17, 2013); 2013 U.S. Dist. LEXIS 86842 (S.D. Fl. June 20, 2013); 962 F.Supp.2d 1303 (S.D. Fl. Aug. 19, 2013); 314 F.R.D. 535 (S.D. Fl. April 19, 2016); 2016 U.S. Dist. LEXIS 125050 (S.D. Fl. Aug. 18, 2016); 2016 U.S. Dist. LEXIS 125051 (S.D. Fl. Aug. 18, 2016); 2016 U.S. Dist. LEXIS 114804 (S.D. Fl. Aug. 26, 2016).

[5] For example, according to Lexis, *Inetianbor v. CashCall, Inc.*, 768 F.3d 1346 (11th Cir. 2014) has been cited 34 times.

[6] *E.g.,* Eleventh Circuit Survey of Recent Decisions, 45 Cumb. L. Rev. 663 (2014-15); Nicole Wanlass, No Longer Available: Critiquing the Contradictory Ways Courts Treat Exclusive Arbitration Forum Clauses when the Forum Can No Longer Arbitrate, 99 Minn. L. Rev. 2005 (May 2015); Cameron Lincoln, *Inetianbor* and *Green*: how two payday loan disputes illustrate the integrality rule's incompatibility with the FAA, Journal of Dispute Resolution 2015 pp. 437-53 (Fall 2015); Daniel Sito, "Integral" Decisionmaking: Judicial Interpretation of Predispute Arbitration Agreements Naming the National Arbitration Forum, University of Chicago Law Review, 81 U. Chi. L. Rev. 1991 (Jan. 2014).

[7] *Inetianbor v. CashCall, Inc.*, 768 F.3d 1346 (11th Cir. 2014), *cert. denied*, 135 S. Ct. 1735 (2015).

The case began with a *pro se* complaint filed in the state court in 2012.[8] After removal, issues regarding arbitration, choice of forum, choice of law, jurisdiction and Rule 12 motions were repeatedly briefed leading to several decisions.[9] Meanwhile, in June-July 2013, the original Plaintiff retained the undersigned counsel.[10] The complaint was amended several times, to include additional claims, a putative class action claim, and to join the individual Defendant.

The parties engaged in extensive discovery. Thousands of pages of documents were produced. The parties served interrogatories under Rule 33, requests for document production under Rule 34, and requests for admission under Rule 36. Responses to interrogatories and requests for admission were served. In addition, the parties negotiated and filed one or more detailed factual stipulations with the Court on various issues.[11]

There was motions practice involving discovery filed by both sides.[12] Depositions were taken including of several corporate representatives of CashCall in California, including Dan Baren, Delbert Meeks and others; Defendant Mr. Reddam was deposed; as were original Plaintiff Mr. Inetianbor and the five subsequently joined Plaintiffs.[13]

---

[8] On July 12, 2012, Mr. Inetianbor, acting *pro se*, filed his original Complaint against CashCall, Inc. in the Broward County Court. (*See* Doc. 1-4, p. 4 of 63).

[9] See discussion in Plaintiffs' brief in support of preliminary approval filed Dec. 23, 2016, Doc. 317, at pp. 3-5.

[10] See notice of appearance filed July 8, 2013 (Doc. 71).

[11] See the 62-paragraph stipulation of facts relating to the threshold issue of choice of law issues, dated Oct. 5, 2015, a copy of which was filed at Docs. 151-1 and 153-1.

[12] See motion to compel filed by CashCall at Doc. 229; motion for personal jurisdiction discovery filed by the Plaintiffs at Doc. 183.

[13] Depositions included: Mr. Inetianbor, deposed on June 8, 2016; Mr. Reddam, deposed on June 16, 2016; CashCall executives/ representatives Shawna Parks, Sean Bennett and Dan Apke, deposed on Aug. 19, 2016 and Ethan Post on Aug. 22, 2016; CashCall in-house counsel Dan Baren, deposed on Sept. 22, 2016; CashCall-related executive Delbert Meeks, deposed on Sept. 16, 2016; and new Plaintiffs Thomas Peterson deposed on July 8, 2016; Lauren Brown on July 8, 2016; Nels Pate on July 11, 2016; Johnny Fretwell on July 11, 2016 and Virginia Fry on July 14, 2016.

The extensive discovery and litigation allowed all parties to assess the relative strengths and weaknesses of their claims and defenses. This led to multiple mediation sessions, including with Professor Eric Green of Resolutions, LLC in June 2016; and with former U.S. District Judge Layn R. Phillips of Phillips ADR Enterprises in October 2016. This painstaking, repeated mediation in turn led to additional arm's-length settlement negotiations, and ultimately to this Settlement, which was finalized under the watchful eye of Judge Phillips.

At the same time that this case proceeded through litigation, a series of settlements were reported with Attorneys General and other state agencies outside of Florida. These resolutions pertained to similar issues involving the Western Sky lending program in those other states. They provide a useful benchmark against which the instant class settlement can be measured. The relief provided to Florida borrowers in this settlement compares favorably with those other resolutions.[14]

As this litigation proceeded, the Plaintiffs communicated with the Attorney General and Office of Financial Regulation ("OFR") of the State of Florida, who were involved in proceedings regarding CashCall relating to similar issues. The Plaintiffs filed amicus materials in state court to support the Attorney General's lawsuit. An Attorney General representative appeared at the September 9, 2016 hearing on the renewed motion for class certification in this matter. (Doc. 271). The proposed class action settlement has been carefully coordinated with the resolution of the Attorney General and OFR proceedings so that early borrowers, who are not encompassed by the defined class, will receive comparable benefits via the Attorney General proceedings.[15]

---

[14] See discussion in Plaintiffs' preliminary approval brief filed at Doc. 317, pp. 20-22.
[15] See preliminary approval brief, Doc. 317, pp. 10-11.

Plaintiffs have set out the history of this case in greater detail in their Motion for Preliminary Approval, Doc. 317, pages 3 through 10.

## 4. ARGUMENT.

### A. The Court Should Award Attorneys' Fees in the Amount Requested.

The efforts of Class Counsel have contributed to an excellent settlement. The gross cash payment portion of the settlement if one views all three combined proceedings (this case, the Attorney General case, and the OFR matter) exceed $16 million.[16]

The claims brought by the Attorney General/OFR were resolved for consideration of over $2 million, from which $1,032,190 will create a restitution fund to be distributed by the Attorney General to Western Sky borrowers not encompassed by the class herein. That benefit supplements the class restitution fund of $14,417,810.00 herein.

In addition, Class Counsel negotiated more than $15 million in debt relief for class members. *See* Settlement Agreement § 3.4(1)(a), pp. 8-9. Adding together the cash restitution and debt forgiveness yields a total settlement value of nearly $30 million -- $29,417,810.00.[17]

---

[16] Mr. Inetianbor, who originally brought the action but was not a certified class representative, resolved his individual claims against Defendants under a confidential settlement agreement. His claims were then dismissed with prejudice. *See* Docs. 319-320.

[17] *See, e.g., Cullen v. Whitman Medical Corp.*, No. 98-CV-4076, 197 F.R.D. 136, 146-47 (E.D. Pa. Oct. 3, 2000) (class settlement in case involving student loans included $5.97 million in cash and $1.3 million in loan forgiveness; attorneys' fee of approximately $2.4 million represented one-third of the total amount; court found it proper to include both the cash and loan forgiveness in valuing the settlement – "I find it reasonable to include debt forgiveness in the total settlement value."); *Cosgrove v. Citizens Automobile Finance, Inc.*, No. 5:09-cv-01095, 2011 U.S. Dist. LEXIS 95656, *20-24 (E.D. Pa. Aug. 25, 2011) (court considered value of debt relief in approving fee); *Desantis v. Snap-On Tools Co., LLC*, 2006 WL 3068584, at *9 (D.N.J. Oct. 27, 2006) (court considered fees as a percentage of $125 million total settlement which included $25 million in cash payments and $61 million in debt forgiveness); *Swift v. Direct Buy, Inc.*, 2013 WL 5770633, at *8 (N.D. Ind. Oct. 24, 2013) (awarding attorneys' fees based on total value of the settlement which included $1.9 million in cash and $3 million in debt forgiveness); *cf. Hall v. AT&T Mobility LLC*, 2010 WL 4053547, at *15-*24 (D.N.J. Oct. 13, 2010) ($6 million fee was

Courts reviewing fee applications in class action settlements have included the value of loan or debt relief in addition to cash restitution in calculating the total value of the "common fund" for attorney fee calculations.

Looking beyond the monetary relief, significant and valuable injunctive relief was also obtained. For example, the terms of the settlement provide *inter alia* that Defendants will contact credit bureaus to remove negative reporting of the loans of all Class Members Settlement Agreement § 3.4(1)(c). And, Defendants are enjoined from engaging in future lending activities within the state of Florida. *Id*. § 3.4(1)(d).

The attorney fee sought by Plaintiffs is $4,175,000.00. Using the "percentage of the recovery" analysis, this figure is 14% of the total value of the class settlement of $29,417,810.00 with both cash restitution and debt relief included. It is 29% of the $14,417,810.00 cash restitution fund considered on its own. Both figures are below the average percentage sought in class action settlements which ranges from 30 to 33%.[18]

These percentages are well within the range of class action attorneys' fees awarded in other cases both in the federal courts in Florida[19] and elsewhere.[20] The award sought is also in

---

one-third of $18 million total which included $16 million in cash and $2 million in pre-paid calling cards).

[18] "[E]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in the class actions average around one-third of the recovery." 4 Newberg on Class Actions § 14:6 (4th ed.); *In re Rite Aid Corp. Sec. Litig*., 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (review of 289 class settlements demonstrates "average attorney's fees percentage [of] 31.31%" with a median value that "turns out to be one-third."); Theodore Eisenberg & Geoffrey P. Miller, Attorney Fees in Class Action Settlements: An Empirical Study, 1 J. of Empirical Legal Studies 27, 31, 33 (2004) (a study of attorneys' fees in class action cases noted "a remarkable uniformity in awards between roughly 30% to 33% of the settlement amount").

[19] *Wolff v. Cash 4 Titles*, No. 03-cv-22778, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) (collecting cases, awarding 33% in class action); *Gutter v. E. I. DuPont De Nemours & Co*., No. 1:95-cv-02152-ASG, D.E. 626 at 7 (S.D. Fla. May 30, 2003) (awarding class counsel 33.3% of

the fund as fees because they expended significant time and resources in multi-year risky litigation on a purely contingent basis); *Bakalor v. Integrated Comm'n Network, Inc*., No. 96-2021-Civ-JLK, D.E. 108, (S.D. Fla. 1997) (awarding 33.3%); *Silver v. Sensormatic*, No. 93-8619-Civ-SM, Doc. 113 (S.D. Fla. 1996) (33.3%); *Tapken v. Brown*, No. 90-0691-Civ-SM, Doc. 362 (S.D. Fla. 1995) (33%); *Atkinson v. Wal-Mart Stores, Inc*., No. 8:08-CV-691-T-30TBM, 2011 WL 6846747, at *6 (M.D. Fla. Dec. 29, 2011) (33 1/3%); *Guarisma v. ADCAHB Medical Coverages, Inc*., 1:13-cv-21016, Doc. 95 (S.D. Fla. June 24, 2015) (one-third of fund plus costs); *Espinal v. Burger King Corp*., No. 09-20982 (S.D. Fla.) (Dkt. 65) (same); *Wegweiser v. Great Western*, No. 95-8543-Civ-DLK, Doc. 194 (S.D. Fla. 1997) (33.3%); *In re Home Shopping Network Sec. Litig*., No. 87-428-Civ-T-13(A) (M.D. Fla. Oct. 15, 1991) (awarding 33%); *In re Belmac Corp. Sec. Litig*., No. 92-1814-Civ-T-23 (M.D. Fla. 1994) (31%); *Golden v. U.S. Diagnostics, Inc*., No. 97-8010-Civ-ASG, Doc. 107 (S.D. Fla. 1998) (30%); *Ehrenreich v. Sensormatic Elec. Corp*., No. 95-6637-Civ-WJZ, Doc. 192 (S.D. Fla. 1998) (30%); *Lopez v. Checkers Drive-In Rests., Inc*., No. 94-282-Civ-T-17C (M.D. Fla. 1996) (30%); *Minnick v. Pages, Inc*., No. 95-277-Civ-T-21C (M.D. Fla. 1996) (30%); *Holloway v. Chapnick*, No. 89-6572-Civ-JCP, Doc. 441 (S.D. Fla. 1994) (30%); *In re Royce Lab., Inc. Sec. Litig*., No. 92-0923-Civ-KMM, Doc. 107 (S.D. Fla. 1993) (30%); *In re Perfumania, Inc. Sec. Litig*., No. 92-1490-Civ-SM, Doc. 74 (S.D. Fla. 1993) (30%); *In re Int'l Recovery Corp. Sec. Litig*., No. 92-1474-Civ-CCA, Doc. 63 (S.D. Fla. 1994) (30%); *In re Sound Advice, Inc. Sec. Litig*., No. 92-6457-Civ-UUB, Doc. 110 (S.D. Fla. 1994) (30%); *Kaser v. Swann*, No. 90-607-Civ-Orl-3A18 (M.D. Fla. 1993) (30%); *In re FPL Group Consol. Litig*., No. 90-8461-Civ-LCN, Doc. 75 (S.D. Fla. 1992) (30%).

[20] *See Waters Int'l Precious Metals Corp*., 190 F.3d 1291 (11th Cir. 1999) ($13.3 million in fees from $40 million fund; 33 1/3% of total recovery); *In re Heritage Bond Litig*., No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *16 (C.D. Cal. June 10, 2005) ("Accordingly, the Court concludes that the lack of significant objections to the requested fees justifies an award of one-third of the Settlement Fund); *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig*., 56 F.3d 295 (1st Cir. 1995) (30% of $220 million); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F.Supp.2d 254, 262 (S.D.N.Y. 2003) (33 1/3% of $1.5 million fund); *Maley v. Del Global Techs. Corp*., 186 F.Supp.2d 358, 370 (S.D.N.Y. 2002) (33.3%); *Temp. Servs., Inc. v. Am. Int'l Grp., Inc*., No. 3:08-cv-00271-JFA, 2012 WL 2370523, at *7-9 (D.S.C. June 22, 2012) ("A total fee of one-third of the class settlement for all work performed and to be performed in this case is well within the range of what is customarily awarded in settlement class actions. An award of fees in this range for work performed in the creation of a settlement fund has been held to be reasonable by many federal courts...."); *Anselmo v. W. Paces Hotel Grp*., *LLC,* No. 9:09-cv-02466, 2012 WL 5868887, at *3 (D.S.C. Nov. 19, 2012) (33%); *In re Airline Ticket Commission Antitrust Litig*., 953 F. Supp. 280, 285-86 (D. Minn. 1997) (33 1/3% of $86 million fund); *In re Capital One Tel. Consumer Prot. Act Litig*., 80 F.Supp.2d 781, 795 (N.D. Ill. 2015) (36%); *Kolinek v. Walgreen Co*., No. 13-4806, 2015 WL 7450759, at *17 (N.D. Ill. Nov. 23, 2015) (36%);  *In re Combustion, Inc*., 968 F.Supp. 1116, 1136 (W.D. La. 1997) (36% of $125 million); *In re Bancorp Litig*., 291 F.3d 1035, 1038 (8th Cir. 2002) (36%); *Kidrick v. ABC Television & Appliance Rental*, No. 3:97cv69, 1999 WL 1027050, at *1-2 (N.D. W. Va. May 12, 1999) (30.6%, noting that "[f]ees as high as 50% of the fund have been awarded").

accord with what Plaintiffs represented that they would seek in their Motion for Preliminary Approval. Awarding the requested fees to Class Counsel will result in a net amount for distribution to the class of approximately $10,042,000.00, which accords with the information provided in the class notice, and coordinates with the resolution obtained in the Attorney General/OFR proceedings.[21] In addition to the debt relief, the agreed allocation is as follows:

> $14,417,810.00 cash fund
> minus $4,175,000.00 attorney fee (costs and expenses are included)
> minus $150,000 for the class administrator, Dahl
> minus $50,000 in incentive awards to class representatives
> Equals $10,042,810.00 -- Net amount for restitution

This fee award is fair and reasonable. In addition, the Court may note:

- The settlement was only achieved after strenuous litigation and discovery and with cross-motions for summary judgment filed and pending. The fact that the case proceeded to such an extent allowed the parties to better assess the risks and strengths of their claims and defenses.

- The settlement compares favorably with settlements achieved and approved by state regulatory authorities and courts in other states involving Western Sky.

- To date, there has not been significant expression of opposition to the settlement in general, or the fee request in particular, by class members.

- As reflected by the declarations of Class Counsel, Janet R. Varnell, Esq. and John S. Hughes, Esq., filed herein, the estimated total number of attorney and paralegal time expended throughout this litigation is very significant and reflects lost opportunity costs in that the time and labor could not be expended on other matters.

- The case required unusual ancillary work such as intervening in a proposed national class action settlement in the District of South Dakota that was believed to be undervalued; and understanding various aspects of Cheyenne River Sioux Tribe law.

- The Defendants had dissolved or reduced the size of various corporate entities related to the enterprise and Western Sky itself shut down over a year ago; there was a real risk that if a judgment were obtained at trial, it could not be collected on in whole or part.

---

[21] See discussion in preliminary approval brief, Doc. 317, pp. 18-19.

- The Class Counsel law firms are recognized for effective and ethical representation of class action clients.

- As stated in the declarations of counsel, Class Counsel have been awarded percentage of fund attorney fees in a similar percentage in multiple prior similar class actions including class settlements involving payday lenders.

- The Settlement is not opposed by the Defendants.

- The terms of the settlement were reviewed with Florida Attorney General and OFR representatives and the Plaintiffs have worked to carefully coordinate the resolution herein with the concurrent resolutions of the Attorney General and OFR proceedings.

For all these reasons, the Court should award $4,175,000.00 in attorneys' fees to class counsel, to be paid out of the $14,417,810.00 settlement fund.[22]

**B.   The Court Should Approve the Payment Requested for the Class Administrator.**

In order to bring the benefits of this Settlement to Florida borrowers, Class Counsel retained the services of an experienced class administrator, Dahl Administration. Pursuant to the terms of the Settlement, the fees of the administrator are to be paid out of the fund. *See* Settlement Agreement, p. 10. The Court approved the retention of Dahl in its Order Granting Preliminary Approval. Class Counsel seeks a payment of $150,000.00 to Dahl for its services in mailing the thousands of class notices, following-up on stale addresses, running the settlement website,[23] taking calls and answering questions of class members and otherwise administering the settlement.

---

[22] Further reflecting the fairness of the fee, the Plaintiffs have not sought to separately recover their litigation costs and expenses. Those costs and expenses exceed $40,000 as reflected in the declarations of counsel. In class settlements litigation costs and expenses are often awarded in addition to attorneys' fees. Here, the Plaintiffs will reimburse their costs and expenses out of $4,175,000.00 attorney fee sought, meaning that the actual percentage of settlement the fee alone represents is even lower than the 29%/14% amount set forth above.

[23] See https://secure.dahladmin.com/FLCALL/Index.

Additional information regarding the work performed by Dahl shall be provided in advance of the Final Fairness Hearing. The payment of $150,000 to Dahl was contemplated by the parties in determining the net cash restitution fund in the amount of $10,042,810.[24]

### C. The Service Awards for the Class Representatives Should be Approved.

Traditionally, class representatives are compensated for the time and effort in bringing the litigation on behalf of others through what is termed a "service award" or "incentive award." Many courts have addressed incentive awards to class representatives as a means to fairly compensate the class representative for the work involved in being a named plaintiff.

Incentive awards are routinely awarded where, as here, a common fund has been created for the benefit of the class. Incentive awards compensate plaintiffs for the services they provide during the course of litigation. *See Allapattah Servs., Inc. v. Exxon Corp.*, 454 F.Supp.2d 1185, 1218-19 (S.D. Fla. 2006) (citing *In re Southern Ohio Corr. Facility,* 175 F.R.D. 270, 272-76 (S.D. Ohio 1997)). These awards incentivize the plaintiffs to participate actively. *Id.*[25]

---

[24] See the "long form" notice agreed to by the parties and found at the Dahl class settlement website, https://secure.dahladmin.com/FLCALL/content/documents/LongFormNotice.pdf. The notice states on page 4 that "[i]t is estimated that there will be a total of $10,042,810 funds remaining to distribute to the Class as restitution after deductions if the Court approves the requested amounts for the costs of notice and administration of the Settlement, service awards to the Named Plaintiffs and attorneys' fees and costs." Pursuant to the Order Granting Preliminary Approval (Doc. 318), amounts paid by Defendants directly to the Administrator to date shall be credited against this $150,000.00 amount.

[25] By definition, a class action often involves a factual situation in which the individual amount in controversy does not standing alone justify the cost of litigation. To prevent small but common claims from slipping through the cracks, Rule 23 allows class actions to be brought. In light of this context, it follows that the actual damages suffered by an individual plaintiff may not alone suffice to fairly compensate him or her for the burden, stress and time consumption of litigation. Accordingly, service awards are allowed.

The incentive awards sought of $10,000 for each of the five representatives fall within the range of awards approved in other class actions.[26] They are especially appropriate here given that these Plaintiffs, as one may expect for payday loan borrowers, are persons of limited means. It was a real inconvenience for them to work on this case, and each conscientiously helped with discovery, participated in important decisions, and sat for lengthly depositions. Accordingly, the full award of $10,000.00 for each of the five class representatives should be approved.

## CONCLUSION

For the reasons set forth above, this Court should grant the instant motion, award attorneys' fees in the amount of $4,175,000.00, approve an award of costs to the Class Administrator in the amount of $150,000.00, and approve the incentive awards to the Class Representatives in the total amount of $50,000.00.

## CERTIFICATE PURSUANT TO LOCAL RULE 7.1

Prior to filing the instant Motion, Plaintiffs' undersigned counsel avers she conferred with Defendants' counsel pursuant to Local Rule 7.1 and is authorized to represent that Defendant does not oppose the relief sought in this motion.

Dated:  February 28, 2017            **VARNELL AND WARWICK, P.A.**

By:___/s/ Janet Varnell_____
JANET VARNELL, ESQ., FBN:  0071072
janet@varnellandwarwick.com

---

[26] *See Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998) (award of $25,000 to named plaintiff); *Godshall v. Franklin Mint Co.,* 2004 WL 2745890, at *6 (E.D. Pa. Dec.1, 2004) (granting special award of $20,000 to each named plaintiff for their work as class representatives); *In re Linerboard Antitrust Litig.,* 2004 WL 1221350, at *18-19 (E.D. Pa. June 2, 2004) (awarding $25,000 for each of five class representatives); *Dornberger v. Metropolitan Life Ins. Co.*, 203 F.R.D. 118, 124-125 (S.D.N.Y.2001) ($10,000 for Dornberger and $1,500 for eight sub-class representatives); *In re Residential Doors Antitrust Litig.,* 1998 WL 151804, at *11 (E.D. Pa. Apr. 2, 1998) (award of $10,000 to each of four representatives).

        BRIAN W. WARWICK, ESQ.
        bwarwick@varnellandwarwick.com
        P.O. Box 1870
        Lady Lake, FL
        Tel. 352-753-8600
        Fax 352-504-3301

        **WALLACE AND GRAHAM, P.A.**
        MONA LISA WALLACE, ESQ.
        mwallace@wallacegraham.com
        JOHN S. HUGHES, ESQ.
        jhughes@wallacegraham.com
        525 North Main Street
        Salisbury, North Carolina 28144
        Tel. 800-849-5291
        Fax 704-633-9434

        *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify on February 28, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

s/Janet R. Varnell
Janet R. Varnell
